# EXHIBIT 1

**(Services Agreement)**

WEST\240660241.5

## AGREEMENT FOR SERVICES

This Agreement is entered between Orchard Supply Hardware Stores Corporation and related Chapter 11 filing entities (collectively "Customer") and BMC Group, Inc. ("BMC"). The services rendered by BMC pursuant to this Agreement will commence on the date first set forth above and will continue until the Agreement is terminated as set forth below.

### TERMS AND CONDITIONS

I. **SERVICES**

In accordance with the terms and conditions contained in this Agreement and in the Fee Schedule annexed hereto, BMC agrees to provide services as follows: (a) assisting the Customer, Customer's counsel "Counsel" and Office of the Court Clerk with noticing and claims docketing and (b) assisting Customer with the compilation, administration, evaluation and production of documents and information necessary to support a restructuring effort. At Customer's, Counsel's or the Clerk's Office's direction, as the case may be, and in accordance with any court orders or rules in the Chapter 11 case(s) (including any court order authorizing BMC's engagement), BMC will (1) prepare and serve those notices required in the bankruptcy cases; (2) provide public website and call center services; (3) receive, record and maintain copies of all proofs of claim and proofs of interest filed in the Chapter 11 cases; (4) create and maintain the official claims register(s); (5) receive and record all transfers of claims pursuant to Bankruptcy Rule 3001(e); (6) maintain an up-to-date mailing list for all entities who have filed proofs of claim and/or requests for notices in the bankruptcy cases; (7) assist Customer and Counsel with data management to support Customer's reconciliation and resolution of claims; (8) print, mail and tabulate ballots for purposes of plan voting; (9) assist with the preparation and maintenance of Customer's Schedules of Assets and Liabilities, Statements of Financial Affairs and other master lists and databases of creditors, assets and liabilities, (10) assist with the production of reports, exhibits and schedules of information or use by the Customer, Counsel or to be delivered the Court, the Clerk's Office, the U.S. Trustee or third parties; and (11) provide other technical and document management services of a similar nature requested by Customer or the Clerk's office; (12) facilitate or perform distributions, and (13) assist Customer with data and/or call center services to support analysis and/or collections of avoidance actions pursuant to Chapter 5 of the United States Bankruptcy Code.

II. **TECHNOLOGY SUPPORT**

BMC agrees to provide computer software support and to educate and train Customer in the use of the support software, provide BMC's standard reports as well as consulting and programming support for Customer requested reports, program modifications, database modification, and/or other features.

III. **PRICES, CHARGES AND PAYMENT**

A. BMC agrees to charge, and Customer agrees to pay, BMC's standard prices for its services and supplies at the rates or prices in effect on the day such services and/or supplies are provided to the Customer, in accordance with the Fee Schedule annexed hereto. Negotiated discounts will be applied at the invoice level. BMC raises its rates from time to time and generally does so each January.

B. Customer agrees to reimburse BMC for any customary and qualified out-of-pocket expenses necessarily incurred in support of the services provided under this Agreement.

C. Wire transfer information for the transmission of payments is as follows:

| | |
|---|---|
| Bank Name - | Bridge Bank, N.A. |
| ABA/Routing # - | 121143260 |
| Account Name - | BMC Group, Inc. |
| Account # - | 0101222545 |

D. In connection with high volume noticing, or publication services, Customer may be required to prepay BMC estimated postage or publication amounts with respect to each notice. Alternatively, Customer may authorize BMC to cause courier's charges (such as UPS or FedEx) to be stated to Customer's own account with such courier.

E. BMC agrees to regularly invoice Customer and Customer agrees that the amount invoiced is due and payable within thirty (30) days. If any amount is unpaid as of thirty (30) days from the receipt of the invoice, Customer further agrees to pay a late charge, calculated at one and one-half percent (1-1/2%) of the amount unpaid, accruing monthly from the invoice date. In the case of a dispute in the invoice amount, notice shall be given to BMC within twenty (20) days of receipt of the invoice by Customer. Interest shall not accrue on any amounts in dispute. The undisputed balance of the invoice amount is due and payable in the normal course.

## IV. RIGHTS OF OWNERSHIP

A. The parties understand that the software programs and other similar proprietary materials furnished by BMC pursuant to this Agreement and/or developed during the course of this Agreement by BMC are the sole property of BMC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, sub-routines, procedural manuals, and documentation. Customer agrees not to copy or permit others to copy for unauthorized use the source code from the support software or any other programs or similar proprietary materials furnished pursuant to this Agreement.

B. Customer further agrees that any ideas, concepts, know-how or techniques relating to data processing or BMC's performance of its services developed during the course of its Agreement by BMC shall be exclusive property of BMC.

C. Upon Customer's request at any time or times while this Agreement is in effect, BMC shall immediately deliver to Customer at Customer's sole expense, any or all of the non-proprietary data, information and records held or controlled by BMC pursuant to this Agreement, in the form requested by Customer. Any information, data and records, in whatever form existing, whether provided to BMC by Customer or developed by BMC for Customer under this Agreement, may be retained by BMC until all amounts due under this Agreement are paid in full, it being understood that neither party asserts rights of ownership in the official claims register or materials filed with BMC as an agent of the court.

D. Customer shall remain liable for all charges imposed under this Agreement as a result of data or physical media maintained by BMC. BMC shall dispose of the data and media in the manner requested by Customer. Customer agrees to pay BMC for reasonable expenses incurred as a result of the disposition of the data or media. After giving Customer thirty (30) days advance notice, BMC reserves the right to dispose of data or media maintained by BMC for Customer if Customer has not utilized the services provided herein for a period of at least ninety (90) days or if Customer has not paid all charges due to BMC.

## V. NON-SOLICITATION

Customer agrees that it shall not, directly or indirectly, solicit for employment, employ or otherwise retain staff of BMC during the term of this Agreement, nor for a period of twelve (12) months after termination of this Agreement unless mutually agreed upon by both parties.

## VI. CONFIDENTIALITY

BMC agrees to, and shall cause its servants, agents, employees, licensees, and subcontractors to, safeguard and keep confidential all data, records, information and communications of any sort or form, regardless of whether written, oral, visual or otherwise recorded or transmitted, with respect to Customer, but excluding such data, records, information and communications that exist in the public domain by reason other than a breach of BMC's obligations under this Section VI "Confidentiality" (the "Confidential Information"). BMC will use the Confidential Information only for the benefit of Customer in connection with the provision of services under this Agreement. Customer agrees to, and will cause its servants, agents, employees, licensees, and subcontractors to, keep all information with respect to BMC's system, procedures and software confidential; provided, however, that if either party is required to produce any such information by order of any governmental agency or other regulatory body, it may, upon not less than five business days' written notice to the other party, release the required information. The obligations set forth in this paragraph shall survive termination of this Agreement.

## VII. TERMINATION

A. This Agreement shall remain in force until terminated by Customer, or, by BMC upon thirty (30) days' prior written notice to the other party.

B. In the event that this contract is terminated, regardless of the reason for such termination, BMC shall cooperate with Customer to orderly transfer to Customer or its designee (or destroy, at Customer's direction) data, records and information in its possession or control and to effect an orderly transition of record-keeping functions. BMC shall provide all necessary staff, services and assistance required for an orderly transfer and transition. Customer agrees to pay for such services in accordance with BMC's then existing prices for such services.

## VIII. SYSTEM IMPROVEMENTS

BMC's policy is to provide continuous improvements in the quality of service to the Customer. BMC, therefore, reserves the right to make changes in operations procedures, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the BMC data center serving the Customer.

## IX. LIMITATIONS OF LIABILITY AND INDEMNIFICATION

Except with respect to breaches under Section VI "Confidentiality" above, Customer shall indemnify and hold BMC, its officers, employees and agents harmless against any losses, claims, damages, judgments, liabilities and expense (including reasonable counsel fees and expenses) resulting from action taken or permitted by BMC in good faith with due care and without negligence in reliance upon instructions or orders received from Customer as to anything arising in connection with its performance under this Agreement. Except with respect to breaches under Section VI "Confidentiality"

above, BMC shall be without liability to Customer with respect to any performance or non-performance, in accordance with the terms of this Agreement or instructions properly received pursuant hereto, if done in good faith and without negligence or willful or wanton misconduct. Except with respect to breaches under Section VII "Confidentiality" above, in no event shall liability to Customer for any losses or damages, whether direct or indirect, arising out of this Agreement exceed the total amount billed or billable to Customer for the portion of the particular work which gave rise to the loss or damage. Except with respect to breaches under Section VI "Confidentiality", in no event shall BMC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

X.   **NOTICES**

All notices in connection with this Agreement shall be given or made upon the respective parties in writing by facsimile or overnight courier and shall be deemed as given, if by facsimile, on the business day immediately following confirmed transmission, or if by courier, on the day it is delivered by such courier to the appropriate address set forth below:

| BMC Group, Inc.<br>Attn: Tinamarie Fell<br>600 1st Avenue<br>Suite 300<br>Seattle, WA 98104<br><br>Telephone 206.499.2169<br>Fax 206.516.3300 | **Customer**<br>Orchard Supply Hardware Stores Corporation<br>Attn: Michael W. Fox, SVP and General Counsel<br>6450 Via Del Oro<br>San Jose, California 95119<br><br>Telephone 408.361.2518<br>Fax 408.365.2799<br><br>-and-<br><br>DLA Piper LLP (US)<br>Attn: Rick Chesley<br>203 North LaSalle Street, Suite1900<br>Chicago, Illinois 60601-1293<br><br>Telephone 312.368.3430<br>Fax 312.630.5330 |
|---|---|

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

XI.  **APPLICABLE LAW**

This agreement shall be construed in accordance with the laws of the State of Washington and may be modified only by a written instrument duly executed by an authorized representative of Customer and an officer of BMC.

XII. **ENTIRE AGREEMENT/ MODIFICATIONS**

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings and other agreements, oral and written between the parties relating to the subject matter of this Agreement. The Agreement may not be modified or altered by

written instrument duly executed by both parties. Customer represents that it has the authority to enter into this Agreement, may be subject to bankruptcy court approval, and the Agreement is non-dischargeable under any applicable statute or law. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. In the event of any conflict between a term of this Agreement and any order of the court exercising jurisdiction over the Customer bankruptcy case, the term of the order shall govern.

### XIV. ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned by BMC to a wholly owned subsidiary of BMC.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement.

| BMC Group, Inc. | Orchard Supply Hardware Stores Corporation |
|---|---|
| By: *Tinamarie Feil* (signature) | By: *Michael W. Fox* (signature) |
| Name: Tinamarie Feil | Name: Michael W. Fox |
| Title: President, Client Services | Title: SVP, General Counsel and Secretary |
| Date: May 16, 2013 | Date: May 16, 2013 |



## Pricing

The total charge for BMC to support this project will be based on time spent plus payment of print/mail costs and any other out-of-pocket reimbursable items. The basic services we provide include acting as claims and notice agent (featuring our direct electronic claims filing system), schedules preparation, claims reconciliation, plan solicitation, distribution, and post-confirmation services. Our billing practices are transparent and we engage in constant communication so that there are no surprises in the cost of services rendered.

### Case Management — Average < $125/hour
- Data Entry/Call Center/ Admin Support — $25/45/45 per hour
- Analysts — $55 per hour
- Consultants — $125 per hour
- Project Managers — $175 per hour
- Principal/Directors — $205 per hour

No surcharge for overtime, weekends or holiday hours required to support your case

### Claims Data Management
- Claim Receipt, Process & Docketing — $2.50 per claim (no hourly rates)
- b-Linx Database & Systems Access — $0.085 per month / first three months waived
- Claim Status Updates — at applicable Case Management rates

### Print Mail and Noticing Services
- Copy/Print — $.08 per page subject to volume discount
- Finishing (Fold/Collate, Insert, Label, Envelope) — $.13 per standard or $.20 per catalog sized package
- Postage, Courier — At cost (includes optimization recommendations)
- *Certified* Electronic Noticing Service — $40 per 1000 (no per page charge; includes receipt tracking)
- *Certified* Fax Noticing Service — $0.15 per image (includes delivery acknowledgment)
- Processing of Undeliverables — $0.25 each + cost of re-mails as applicable
- Legal Notice Management — at applicable Case Management rates
- Legal Notice Experts / Publication — Quote (leverage BMC negotiated discounts with publishers)

### Document and Information Management
- Data per Field Import — Waived
- Document Imaging — $0.12 per image
- Live Operator Call Center — $45 per hour
- Automated (IVR) Call Center — Set up + $0.30/min IVR usage
- Website Hosting — Waived
- Secure Virtual Data Room — Set up + $0.15/page per month
- Physical Document Storage — $1.45 per box/month
- Document/Data Analysis & Call Center Management at applicable Case Management rates

### Distribution
- Distribution Consulting — at applicable Case Management rates
- Check Issuance or Tax Reporting(1099, W-2) — Quote
- Issuance Stock, Notes, Warrants — Quote
- Registrar of New Issue(s) — Quote