# EXHIBIT B

**APPROVAL ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| Orchard Supply Hardware Stores Corporation, | : | Case No. 13-11565 (_____) |
| *et al.*,[1] | : |  |
|  | : | (Jointly Administered) |
| Debtors. | : |  |
|  | : | **Re: Dkt. No. ___** |

-------------------------------------------------------------x

**ORDER APPROVING LIQUIDATION
AGREEMENT, STORE CLOSING SALES, AND RELATED RELIEF**

Upon the *Emergency Motion of the Debtors and Debtors in Possession for Orders Approving Auction Procedures, Agency Agreement, Store Closing Sales and Related Relief* (the "Motion");[2] and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this Motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2); and it appearing that venue of this proceeding and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of this Motion having been provided; and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FURTHER FOUND AND DETERMINED, AS FOLLOWS:

---

[1]    The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Orchard Supply Hardware Stores Corporation (4109), Orchard Supply Hardware LLC (3395) and OSH Properties LLC (3391).  The mailing address of each of the Debtors, solely for purposes of notices and communications, is 6450 Via Del Oro, San Jose, California 95119.

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      Notice of the Motion, and of the Sale Hearing was given in accordance with the directive of the Court and as otherwise required by applicable law, as evidenced by the affidavits of service on file with the Clerk of the Court.

D.      The notice provided of the Motion and of the Sale Hearing was adequate and sufficient under the circumstances, and any otherwise applicable requirement for notice is hereby waived and dispensed with.

E.      A reasonable opportunity to object or be heard regarding the relief requested in the Motion and the transactions provided for therein has been afforded to all interested parties, including, without limitation, the following: (i) the Office of the United States Trustee (the "US Trustee"); (ii) counsel to the DIP Lenders; (iii) counsel to any official committee(s) of unsecured creditors appointed by the US Trustee, (iv) those creditors holding the 20 largest unsecured claims against the Debtors' estates; (v) all parties known to be asserting a lien in the Debtors' Liquidation Assets in the Closing Stores; (vi) each of the Debtors' landlords; (vii) the California Attorney General; (viii) various federal and state tax and environmental authorities, including the Internal Revenue Service and the Environmental Protection Agency; (ix) all Potential Bidders; and (x) all entities entitled to notice pursuant to Local Rule 2002.

F.      Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Motion or the Agency Agreement between _____ (the "Agent") and the Debtors (the "Agency Agreement") a copy of which is attached hereto as Exhibit 2.

G.      As demonstrated by (i) the Newman Declaration, (ii) the testimony and other evidence proffered or adduced at the Hearing, and (iii) the representations of counsel made on the record at the Hearing, the Debtors have thoroughly marketed the Liquidation Assets and have conducted the bidding solicitation fairly, with adequate opportunity for parties that either expressed interest in acquiring or liquidating the Liquidation Assets, or who the Debtors believed may have an interest in acquiring or liquidating the Liquidating Assets, to submit competing bids.  The Debtors and the Agent have respectively negotiated and undertaken their roles leading to the Store Closing Sales and entry into the Agency Agreement in a diligent, noncollusive, fair, and good faith manner.

H.      The Debtors, its management, and its board of directors, and the Agent, its members and their respective officers, directors, employees, agents and representatives, actively participated in the bidding process and acted in good faith.  The Agency Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud.  The Debtors were free to deal with any other party interested in buying or selling on behalf of the Debtors' estates some or all of the Liquidation Assets.  Neither the Debtors nor the Agent have engaged in any conduct that would cause or permit the Store Closing Sales, the Agency Agreement, or any related action or the transactions contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code, or that would prevent the application of section 363(m) of the Bankruptcy Code.  The Agent has not violated section 363(n) of the

Bankruptcy Code by any action or inaction. Specifically, the Agent has not acted in a collusive manner with any person and was not controlled by any agreement among bidders. The Agent's prospective performance and payment of amounts owing under the Agency Agreement are in good faith and for valid business purposes and uses.

I.      The Agent is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code. No common identity of directors or controlling stockholders exists between the Agent and the Debtors.

J.      The offer of the Agent, upon the terms and conditions set forth in the Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Agreement, (i) is the highest and best offer received by the Debtors; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtors' creditors and estates. There is no legal or equitable reason to delay entry into the Agency Agreement, and the transactions contemplated therein, including, without limitation, the Store Closing Sales.

K.      The closing of the Closing Stores is in the best interest of the Debtors' estates. The Debtors' decision to (i) enter into the Agency Agreement and (ii) perform thereunder is a reasonable exercise of the Debtors' sound business judgment consistent with its fiduciary duties and is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

L.      The conduct of the Store Closing Sales at the Closing Stores will provide an efficient means for the Debtors to dispose of the Liquidation Assets located at the Closing Stores in accordance with the terms of the Agency Agreement.

M.      The Debtors have represented to this Court that they are neither selling nor leasing personally identifiable information as such term is defined in section 101(41A) (or assets

containing personally identifiable information) pursuant to the Motion, although the Agent will be authorized to distribute emails and promotional materials to the Debtors' customers through the Debtors' retained third party service provider.

N.      Time is of the essence in assuming and effectuating the Agency Agreement and proceeding with the Store Closing Sales contemplated therein without interruption.  Based on the record of the Hearing and the Motion, the Store Closing Sales must be commenced as soon as practicable after the Commencement Date to maximize the value that the Agent may realize from the Store Closing Sales and the value that the Debtors may realize from entering into the Agency Agreement.  Accordingly, cause exists to modify the stay to the extent necessary, as contemplated by Bankruptcy Rule 6004(h), and permit the immediate effectiveness of this Order.

O.      A sale of the Liquidation Assets other than one free and clear of liens, claims, encumbrances, defenses (including, without limitation, rights of setoff and recoupment) and interests, including, without limitation, security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, deeds of trust, hypothecations, liens, encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, ERISA, CERCLA, alter ego and other liabilities, causes of action, contract rights and claims, to the fullest extent of the law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether pre-petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or

unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded

or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory,

matured or unmatured, legal or equitable (collectively, "Encumbrances") and without the

protections of this Order would hinder the Debtors' ability to obtain the consideration provided

for in the Agency Agreement and, thus, would impact materially and adversely the value that the

Debtors' estate would be able to obtain for the sale of such Liquidation Assets.  But for the

protections afforded to the Agent under the Bankruptcy Code and this Order, the Agent would

not have offered to pay the consideration contemplated in the Agency Agreement.  In addition,

each entity with an Encumbrance upon the Assets, (i) has consented to the Store Closing Sales or

is deemed to have consented to the Store Closing Sales, (ii) could be compelled in a legal or

equitable proceeding to accept money satisfaction of such interest, or (iii) otherwise falls within

the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more

of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

Those holders of Encumbrances who did not object, or who withdrew their objections, to the

Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

Therefore, approval of the Agency Agreement and the consummation of the Store Closing Sales

free and clear of Encumbrances is appropriate pursuant to section 363(f) of the Bankruptcy Code

and is in the best interests of the Debtor's estate, its creditors and other parties in interest.

   P.  The consideration to be paid by the Agent under the Agency Agreement was

negotiated at arm's length and constitutes reasonably equivalent value and fair and adequate

consideration for the Merchandise under the Bankruptcy Code, the Uniform Fraudulent Transfer

Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state,

territory, possession thereof, or the District of Columbia.  The terms and conditions set forth in

the Agency Agreement are fair and reasonable under these circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Debtors or their creditors under any applicable laws.

Q.      The security interests and liens provided for in the Agency Agreement and this Order to secure the Debtors' obligations under the Agency Agreement to the Agent are necessary to induce the Agent to agree to terms for the Agency Agreement that maximize value for the Debtors' estates.  The absence of such protections would impact materially and adversely the value available to the Debtors in the liquidation of their stores in partnership with a liquidation agent.  But for the protections afforded to the Agent under the Bankruptcy Code, this Order, and the Agency Agreement, the Agent would not have agreed to pay the Debtors the compensation provided for under the Agency Agreement.  In addition, the DIP Lenders, who hold security interests in the property to which the Agent's security interests attach, has consented to the security interests provided for in the Agency Agreement, subject to the satisfaction of the conditions set forth in the Agency Agreement.

R.      No sale, transfer, or other disposition of the Liquidation Assets pursuant to the Agency Agreement entry into the Agency Agreement will subject the Agent to any liability for claims, obligations, encumbrances, or interests asserted against the Debtors by reason of such transfer under any laws, including, without limitation, any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories.  The Agent is not a successor to the Debtors or their estates.

S.      The Debtors (i) have full corporate or other power to execute, deliver and perform its obligations under the Agency Agreement and all other transactions contemplated thereby, and

entry into the Agency Agreement has been duly and validly authorized by all necessary corporate or similar action, (ii) has all of the corporate or other power and authority necessary to consummate the transactions contemplated by the Agency Agreement, and (iii) has taken all actions necessary to authorize and approve the Agency Agreement and the transactions contemplated thereby.  No consents or approvals, other than those expressly provided for herein or in the Agency Agreement, are required for the Debtors to consummate such transactions.

T.      Entry into and assumption of the Agency Agreement and the transactions contemplated thereby neither impermissibly restructure the rights of the Debtors' creditors, nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.  Entry into the Agency Agreement does not constitute a *sub rosa* chapter 11 plan.

IT IS HEREBY ORDERED AS FOLLOWS:

1.      The Motion is GRANTED.  All objections to the Motion to the extent not previously withdrawn or resolved or granted herein are denied.

2.      The Debtor is hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Store Closing Sales of the Liquidation Assets at the Closing Stores attached hereto in accordance with the Agency Agreement.  No bulk sale, "going -out-of-business," or similar law shall prohibit the Debtors or the Agent from taking any action contemplated by the Agency Agreement.

3.      The Debtors are hereby authorized and empowered to enter into the Agency Agreement, and the Agency Agreement is hereby approved in its entirety and is incorporated herein by reference, and it is further ordered that all amounts payable to the Agent under the Agency Agreement shall be payable to the Agent without the need for any application of the Agent therefor or a further order of the Court.

4.     Subject to the provisions of this Order, the Debtors and the Agent are hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Store Closing Sales in accordance with the Agency Agreement and the Sale Guidelines, which Sale Guidelines are hereby approved in their entirety.

5.     Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, the Agent, and each of their respective officers, employees, and agents are hereby authorized and directed to execute such documents and to do such acts as are necessary or desirable to carry out the Store Closing Sales and effectuate the Agency Agreement and each of the transactions contemplated therein, including but not limited to, reaching an agreement regarding the final reconciliation, which will be binding on all parties without further order of the Court.  The Agency Agreement is approved pursuant to section 363 of the Bankruptcy Code.  The Debtors are hereby authorized and empowered to and perform under the Agency Agreement, and the Agency Agreement (and each of the transactions contemplated therein) is hereby approved in its entirety and is incorporated herein by reference.  The failure to include specifically any particular provision of the Agency Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Agency Agreement and all of its provisions, payments and transactions, be authorized and approved in their entirety.  Likewise, all of the provisions of this Order are nonseverable and mutually dependent

6.     The Agent is authorized and directed to pay, as an Expense, retention and incentive bonuses ("Retention and Incentive Bonuses") (which bonuses shall be inclusive of payroll taxes, but as to which no benefits shall be payable), in the aggregate, up to a maximum of ten percent (10%), but no less than a minimum of five percent (5%), of base payroll for all Retained Employees, to such Retained Employees who do not voluntarily leave employment and

are not terminated "for cause," as Agent may determine in its discretion. The amount of such Retention and Incentive Bonuses to individual Retained Employees shall be in an amount to be determined by Agent, in its discretion, and shall be payable within thirty (30) days after the Sale Termination Date, and shall be processed through the Debtors' payroll system.

7.      This Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Liquidation Assets.

8.      This Order and the terms and provisions of the Agency Agreement shall be binding on all of the Debtors' creditors (whether known or unknown), the Debtors, the Agent, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an interest in the Liquidation Assets, notwithstanding any subsequent appointment of any trustee, party, entity or other fiduciary under any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity or other fiduciary, such terms and provisions likewise shall be binding.

9.      Subject to applicable state and local public health and safety laws ("Safety Laws"), and applicable tax, labor, employment, environmental, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"), but excluding GOB Laws (as defined herein), the Debtors and the Agent be, and they hereby are, authorized to take such actions necessary and appropriate to implement the

Agency Agreement and to conduct the Store Closing Sales without the necessity of a further

order of this Court as provided by the Agency Agreement, including, but not limited to,

advertising the Store Closing Sales through the posting of signs (including the use of exterior

banners), use of sign walkers and street signage, in accordance with the Agency Agreement and

as otherwise provided in the sale guidelines attached to the Agency Agreement (the "Sale

Guidelines"), which Sale Guidelines are hereby approved in the form attached hereto as

Exhibit 1.

       10.     Except as otherwise provided in the Agency Agreement, pursuant to

section 363(f) of the Bankruptcy Code, the Liquidation Assets, sold pursuant to the Agency

Agreement shall be sold free and clear of any and all mortgages, security interests, conditional

sales or title retention agreements, pledges, hypothecations, liens, judgments, encumbrances or

claims of any kind or nature (including, without limitation, any and all "claims" as defined in

section 101(5) of the Bankruptcy Code), including, without limitation, the liens and security

interests of the DIP Lenders, whether arising by agreement, any statute or otherwise and whether

arising before, on or after the date on which these chapter 11 cases were commenced

(collectively, the "Liens"), with such Liens, if any, to attach to the Guaranteed Amount, and any

other amounts payable to the Debtors under the Agency Agreement with the same validity, force

and effect as the same had with respect to the Liquidation Assets at issue, subject to any and all

defenses, claims and/or counterclaims or setoffs that may exist.  For the sake of clarity, however,

nothing in this paragraph is intended to diminish the liens in favor of the Agent, as reflected in

the Agency Agreement and this Order, that attach to, among other things, the Proceeds of the

Sale.

11.     Except as expressly provided for in the Agency Agreement, nothing in this Order or the Agency Agreement and none of the Agent's actions taken in respect of the Store Closing Sales shall be deemed to constitute an assumption by Agent of any of the Debtors' obligations relating to any of the Debtors' employees, nor shall Agent become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

12.     Entry into the Agency Agreement was undertaken by the parties thereto in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and the Agent shall be protected by section 363(m) of the Bankruptcy Code in the event that this Order is reversed or modified on appeal.  The reversal or modification on appeal of the approval provided herein to assume the Agency Agreement and consummate the transactions contemplated thereby shall not affect the validity of such transactions, unless such approval is duly stayed pending such appeal. The Agent is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.  The transactions contemplated by the Agency Agreement are not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

13.     The provisions of this Order shall be self-executing notwithstanding any restrictions in the Agency Agreement (other than the need for the Debtors' prior consent) on the Agent's ability to conduct the Store Closing Sales in compliance with applicable laws or Closing Stores leases.  All newspapers and other advertising media in which the Store Closing Sales may be advertised, and all Landlords are directed to accept this Order as binding authority so as to authorize the Debtors and the Agent to consummate the Agency Agreement and to conduct the Store Closing Sales at the Closing Stores, including, without limitation, conducting and advertising of the Store Closing Sales (at the contractual rates charged to the Debtors prior to the

Petition Date) in accordance with the Agency Agreement, the Sale Guidelines and this Order; and no further approval, license or permits of any governmental authority shall be required.

14.    If any person or entity that has filed financing statements, mortgages, construction or mechanic's liens, *lis pendens* or other documents or agreement evidencing liens on or interests in the Assets shall not have delivered to the Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of any Encumbrances which the person or entity has with respect to the Assets, each such person or entity is hereby directed to deliver all such statements, instruments and releases and the Debtors and the Agent are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity asserting the same and the Agent is authorized to file a copy of this Order which, upon filing, shall be conclusive evidence of the release and termination of such interest.  Each and every federal, state and local governmental unit is hereby directed to accept any and all documents and instruments necessary or appropriate to give effect to the Store Closing Sales and related transactions.

15.    All entities that are presently in possession of some or all of the Liquidation Assets or other property in which the Debtors hold an interest that are or may be subject to the Agency Agreement hereby are directed to surrender possession of such Liquidation Assets or other property to the Agent.

16.    If any parties or persons, including but not limited to Landlords, subtenants, utility companies, governmental agencies (except to the extent provided otherwise in this Order), sheriffs, marshals or other public officers, creditors and all those acting for or on their behalf, believe that cause exists to:  (a) prohibit the Agent from advertising the Store Closing Sales, to the extent same is consistent with the Agency Agreement; (b) in any way interfere with or

otherwise impede the conduct of the Store Closing Sales at the Closing Stores or the use or maintenance of the Liquidation Assets and other assets of the Debtors located at the Closing Stores; or (c) institute any action or proceeding in any court or other administrative body having as its objective the obtaining of an order or judgment against the Debtors, the Agent or a Landlord which might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales or other liquidation sales at the Closing Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease or sublease based upon any relief authorized herein, this Court shall retain exclusive jurisdiction to resolve such dispute, and such parties or persons shall take no action against the Debtors, the Agent, the Landlord or the Store Closing Sales until this Court has resolved such dispute.  This Court shall hear the request of such persons or parties with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

17.    Except as otherwise expressly provided for in the Agency Agreement, the Store Closing Sales at the Closing Stores shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closing Sales, the rejection of leases, abandonment of assets or "going dark" provisions, provided, however, that nothing in this Order shall impact any objection a Landlord may have to assumption, assignment or rejection of their respective lease or to any proposed cure amount or rejection damages claim in association with such assumption, assignment or rejection.  The Agent and landlords of the Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the Agent and any such landlords, provided that nothing in such Side Letters affects the

provisions of Paragraphs 20, 21 and 22.  In the event of any conflict between the Sale Guidelines and any Side Letter, the terms of such Side Letter shall control. In the event the Agent and any landlord is unable to resolve issues related to the Sale Guidelines, each such landlord shall file an objection with the Court by no later than _____, 2013 and this Court shall hold a hearing to resolve each such objection on _____, 2013.

18.    Except as may otherwise be specifically set forth in the Sale Guidelines, the Debtors and/or the Agent (as the case may be), are authorized and empowered to transfer the Liquidation Assets among the Closing Stores.

19.    The Debtors are authorized to exercise the Put Option, in their sole discretion subject to consent of the DIP Lenders, and execute an amendment to the Agency Agreement or a new agency agreement without further order of the Court provided that the Store Closing Sales are conducted in accordance with the Sale Guidelines.

20.    Nothing in this Order or the Agency Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Order.  Nothing contained in this Order or in the Agency Agreement shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.  Nothing herein shall be construed to be a determination that the Agent is an operator with respect to any environmental law or regulation.  Moreover, the Store Closing Sales shall not be exempt from, and the Agent shall be required to comply with, laws of general applicability, including, without limitation,

public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair

competition, traffic and consumer protection laws, including consumer laws regulating deceptive

practices and false advertising (collectively, "General Laws").  Nothing in this Order shall alter

or affect the Debtors' and Agent's obligations to comply with all applicable federal safety laws

and regulations.  Nothing in this Order shall be deemed to bar any Governmental Unit (as

defined in Bankruptcy Code section 101(27)) from enforcing General Laws in the applicable

non-bankruptcy forum, subject to the Debtors' or the Agent's right to assert in that forum or

before this Court that any such laws are not in fact General Laws or that such enforcement is

impermissible under the Bankruptcy Code, this Order, or otherwise, pursuant to Paragraph 21

hereunder.  Notwithstanding any other provision in this Order, no party waives any rights to

argue any position with respect to whether the conduct was in compliance with this Order and/or

any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy

Code.  Nothing in this Order shall be deemed to have made any rulings on any such issues.

21.    To the extent that the Store Closing Sales are subject to any federal, state or local

statute, ordinance, or rule, or licensing requirement solely directed at regulating "going out of

business," "store closing," similar inventory liquidation sales, or bulk sale laws, including laws

restricting safe, professional and non-deceptive, customary advertising such as signs, banners,

posting of signage, and use of sign-walkers solely in connection with the Store Closing Sales and

including ordinances establishing license or permit requirements, waiting periods, time limits or

bulk sale restrictions that would otherwise apply solely to store closing or liquidation sales (each

a "Liquidation Sale Law" and together, the "Liquidation Sale Laws"), the following provisions

shall apply:

a.    Provided that the Store Closing Sales are conducted in accordance with

the terms of this Order, the Agency Agreement and the Sale Guidelines, and in light of the

provisions in the laws of many Governmental Units that exempt court-ordered sales from their

provisions, the Debtors shall be presumed to be in compliance with any Liquidation Sale Laws

and is authorized to conduct the Store Closing Sales in accordance with the terms of this Order

and the Sale Guidelines without the necessity of further showing compliance with any

Liquidation Sale Laws.

      b.     Within three (3) business days of entry of this Order, the Debtors shall

serve copies of this Order, the Agency Agreement and the Sale Guidelines via e-mail, facsimile

or regular mail, on the following:  (i) the Attorney General's office for each state where the Store

Closing Sales are being held, (ii) the county consumer protection agency or similar agency for

each county where the Store Closing Sales will be held, (iii) the division of consumer protection

for each state where the Store Closing Sales will be held, and (iv) the chief legal counsel for the

local jurisdiction.

      c.     To the extent there is a dispute arising from or relating to the Store

Closing Sales, this Order, the Agency Agreement, or the Sale Guidelines, which dispute relates

to any Liquidation Sale Laws (a "Reserved Dispute"), the Court shall retain exclusive

jurisdiction to resolve the Reserved Dispute.  Any time within fourteen (14) days following

service of this Order, any Governmental Unit may assert that a Reserved Dispute exists by

serving written notice of such Reserved Dispute to counsel for the Debtor and counsel for the

Agent at the addresses set forth in the Agency Agreement so as to ensure delivery thereof within

one (1) business day thereafter.  If the Debtors, the Agent and the Governmental Unit are unable

to resolve the Reserved Dispute within fifteen (15) days of service of the notice, the aggrieved

party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a

"<u>Dispute Resolution Motion</u>").

        d.      In the event a Dispute Resolution Motion is filed, nothing in this Order shall preclude the Debtors, a landlord, the Agent or other interested party from asserting (i) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of this Order nor the conduct of the Debtors or the Agent pursuant to this Order, violates such Liquidation Sale Laws.  Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Order or to limit or interfere with the Debtors' or the Agent's ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Order and the Agency Agreement, absent further order of this Court.  The Court grants authority for the Debtors and the Agent to conduct the Store Closing Sales pursuant to the terms of this Order, the Agency Agreement, and/or the Sale Guidelines and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code.  Nothing in this Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

        e.      If, at any time, a dispute arises between the Debtors and/or the Agent and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (b) and (c) hereunder by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs.  Any determination with respect to whether a particular law is a Liquidation Sale Laws shall be made *de novo*.

22.     Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the Store Closing Sales, to the extent that disputes arise during the course of the Store Closing Sales regarding laws regulating the use of sign-walkers and banner advertising, and the Debtors and the Agent are unable to resolve the matter consensually with the Governmental Unit, any party may request an immediate telephonic hearing with this Court pursuant to these provisions.  Such hearing will, to the extent practicable, be scheduled initially within three (3) business days after such request.  This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

23.     Except to the extent of the reserved rights of Governmental Units expressly granted elsewhere in this Order, the Debtors and the Agent are hereby authorized to take such actions as may be necessary and appropriate to implement the Agency Agreement and to conduct the Store Closing Sales without necessity of further order of this Court as provided in the Agency Agreement or the Sale Guidelines, including, but not limited to, advertising the Store Closing Sales as "store-closing," "everything must go" or similar-themed sales through the posting of signs, use of signwalkers and street signage.

24.     This Court shall retain exclusive jurisdiction with regard to all issues or disputes in connection with the order and the relief provided for herein, including, without limitation, to protect the Debtors, the Landlords and/or the Agent from interference with the Store Closing Sales, and to resolve any disputes related to the Store Closing Sales or arising under the Agency Agreement or the implementation thereof.

25.     The Agent shall not be liable for any claims against the Debtors other than as expressly provided for in the Agency Agreement.

26.     The Debtors, the Agent and each of their respective officers, employees and agents be, and they hereby are, authorized to execute such documents and to do such acts as are necessary or desirable to carry out the Store Closing Sales and effectuate the Agency Agreement and the related actions set forth therein.

27.     Upon payment of the Initial Guaranteed Amount as provided in the Agency Agreement, the Agent shall have a first priority security interest in and lien upon the Merchandise and the Proceeds to secure all obligations of the Debtors to the Agent under the Agency Agreement; provided, however, until payment of the balance of the Guaranteed Amount with payments applied as set forth in Agency Agreement, the security interests granted to the Agent shall remain junior to the security interest of the DIP Lenders to the extent of the unpaid portion of the Guaranteed Amount and Expenses.  Upon entry of this Order, the security interest granted hereby shall be properly perfected without the need for further filings or further documentation.

28.     The provisions of this Order and the Agency Agreement and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered confirming or consummating any plan of reorganization of the Debtors, or which may be entered converting Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Agency Agreement as well as the rights and interests granted pursuant to this Order and the Agency Agreement shall continue in this or any superseding case and shall be binding upon Debtors, the Agent and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or 11 of the Bankruptcy Code.  Any trustee appointed in these cases shall be and hereby is authorized and directed to operate the business of the Debtors to the fullest extent necessary to permit

compliance with the terms of this Order and the Agency Agreement and the Agent and the trustee shall be and hereby are authorized to perform under this Agreement upon the appointment of a trustee with the need for further order of this Court.

29.    With five (5) business days after the Debtors receive a notice of the Sale Termination Date for one or more of the Closing Stores, the Debtors shall electronically file a notice of sale termination date with the Court, and shall serve a copy of such notice on the affected landlord(s) for the subject Closing Stores; provided, however, such notice shall not serve as a rejection of the lease for such named Closing Store.  In the event of an agreement between the Debtors and the Agent (with the DIP Lenders) to extend the Sale at a Closing Store beyond September 30, 2013, the Debtors shall electronically file a notice of such extension, and mail a copy of such notice to the affected landlord, counsel to the DIP Lenders, counsel to any official committees appointed in these cases, the US Trustee, the Attorney(s) General for the State(s) in which the subject Closing Store is located, with such parties having the right to object to such extension and to seek an expedited hearing before this Court.

30.    The Owned FF&E remaining in the Closing Stores as of the Sale Termination Date shall, unless the affected lessor has been previously notified in writing by the Debtors or the Agent to the contrary prior to the Sale Termination Date, be deemed abandoned by the Debtors and/or the Agent; provided, however, the Debtors shall provide any known third party holding or asserting a Lien or other interest in such Owned FF&E with five (5) days' prior notice of such abandonment and if such third party fails to remove such Owned FF&E or to make arrangements to remove such Owned FF&E within such time as is deemed acceptable to the affected landlord prior to the expiration of such five (5) day notice period, such Owned FF&E shall be deemed

abandoned by such third party and the affected Landlord may dispose of such property without liability to the Debtors or a third party.

31.     Pursuant to section 554(a) of the Bankruptcy Code, the Debtors and the Agent, as applicable, are permitted to abandon property of the Debtors' estates in accordance with the terms and provisions of the Agency Agreement, without incurring liability to any person or entity; provided, however, that, unless the Agent otherwise consents, the Debtors may only abandon property located in any store (and, if applicable, the distribution center) on or after the applicable Sale Termination Date.  In the event of any such abandonment, all applicable landlords shall be authorized to dispose of such property without any liability to any individual or entity that may claim an interest in such abandoned property, and such abandonment shall be without prejudice to any landlord's right to assert any claim based on such abandonment and without prejudice to the Debtor or other party in interest to object thereto.

32.     Before any sale, abandonment or other disposition of the Debtors' computers (including software) and/or cash registers and any other point of sale Owned FF&E located at the Stores (collectively, "POS Equipment") that may contain customer lists, identifiable personal and/or confidential information about the Debtors' employees and/or customers, or credit card numbers ("Confidential Information") takes effect, the Debtors shall remove or cause to be removed the Confidential Information from the POS Equipment.

33.     All state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."  The Debtors and/or the Agent shall accept return of any goods purchased during the Sale that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer

must return the merchandise within twenty-one (21) days of their purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect. The Debtors shall promptly reimburse Agent in cash for any refunds Agent is required to issue to customers in respect of any goods purchased during the Sale that contain such a latent defect.

34.     The Agent shall not be liable for sales taxes except as expressly provided in the Agency Agreement and the payment of any and all sales taxes is the responsibility of the Debtors. The Debtors are directed to remit all taxes arising from the Sale to the applicable Taxing Authorities as and when due, provided that in the case of a bona fide dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the Taxing Authority. For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the Taxing Authority for which the sales taxes are collected. The Agent shall collect, remit to the Debtor and account for sales taxes as and to the extent provided in the Agency Agreement. This Order does not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under State law.

35.     The Agent shall have the right to use the Debtors' stores and all related store services, furniture, fixtures, equipment and other assets of the Debtor for the purpose of conducting the Store Closing Sales, free of any interference from any entity or person, subject to compliance with the Sale Guidelines and this Order.

36.     This Order constitutes an authorization of conduct by the Debtors and nothing contained herein shall be deemed to constitute a ruling with regard to the sovereign immunity of

any state, and the failure of any state to object to the entry of this Order shall not operate as a waiver with respect thereto.

37.     To the extent, if any, anything contained in this Order conflicts with a provision in the Agency Agreement or the Sale Guidelines, this Order shall govern and control.  The Court shall retain jurisdiction with respect to any matters, claims, rights, or disputes arising from or related to the implementation of this Order.

38.     To the extent that the disposition of the Liquidation Assets would constitute the sale of an interest in a consumer credit transaction that is subject to the Truth in Lending Act or an interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time), then the purchaser shall remain subject to all claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as such person would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under this section.

39.     Gift certificates, gift cards, and merchandise credits issued by the Debtors prior to the Sale Commencement Date (as defined in the Agency Agreement) shall be accepted and honored by the Agent during the Sale Term as provided in the Agency Agreement.

40.     Nothing in this Order shall (a) alter or affect the Debtors' obligation to comply with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or other counterparty to a Lease with the Debtors to file an appropriate motion or otherwise seek appropriate relief if the Debtors fails to comply with section 365(d)(3) of the Bankruptcy Code.

41.     The transactions contemplated by the Agency Agreement are not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

42.     Notwithstanding Bankruptcy Rules 6004, and 6006, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Agent are free to perform under the Agency Agreement at any time, subject to the terms of the Agency Agreement and the Agent shall be afforded the protections of section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Agency Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

43.     The Agent is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Agency Agreement and the conduct of the Store Closing Sales.

44.     The Debtors are authorized and directed to hold and use the Guaranteed Amount to perform its obligations under the Agency Agreement.

45.     This Court shall retain jurisdiction over the terms of this Order.

Dated: _____, 2013
      Wilmington, Delaware

_____
      UNITED STATES BANKRUPTCY JUDGE