# Exhibit A

**(Highlighted Provisions Pursuant to Del. Bankr. L.R. 6004-1)**

In accordance with Local Rule 6004-1, the Debtors respectfully represent the following:

(1) **Sale to an Insider**: The Debtors are not aware of a prospective buyer that is an Insider of the Debtors.

(2) **Agreements with Management**: No agreements with management have been entered into in connection with the Sale.

(3) **Releases**: No releases have been entered into in connection with the Sale.

(4) **Private Sale/No Competitive Bidding**: The Sale is being conducted pursuant to the competitive bidding process detailed in the Motion.

(5) **Closing and Other Deadlines**: The consummation of the transactions contemplated by the Successful Bidder's Asset Purchase Agreement[1] shall take place at a closing to be held at the offices of DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020 or at such other location as shall be timely communicated to all entities entitled to attend the Auction.

(6) **Good Faith Deposit**: All bidders, except bidders submitting credit bids in accordance with the Sale Support Agreement, will be required to post a cash earnest deposit with the Debtors equal to $15,000,000 at the time such bidder submits an initial bid for the Purchased Assets.

(7) **Interim Arrangements with Proposed Buyer**: The Debtors have not entered into any interim arrangements with the Stalking Horse Purchaser or any other proposed buyer.

(8) **Use of Proceeds**: Upon Closing, the sale proceeds shall be paid to the Debtors for distribution at the time of Closing as follows: (a) *first*, to pay the outstanding obligations under the DIP Financing Agreements in full, (b) *second*, within two business days of a Sale to a party other than the Stalking Horse Purchaser, the Expense Reimbursement and the Break-up Fee shall be paid to the Stalking Horse Purchaser as an administrative expenses of the Company with priority over any and all administrative expenses of the kind specified in Section 503(b) of the Bankruptcy Code, and (c) *third,* to the Debtors for distribution in accordance with the priorities set forth in the Bankruptcy Code.

(9) **Tax Exemption**: No tax exemptions under section 1146(a) of the Bankruptcy Code are contemplated in connection with the Sale.

(10) **Record Retention**: The Debtors will continue to have access to their books and records related to the Purchased Assets pursuant to section 8.9 of the Stalking Horse Agreement.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or in the Stalking Horse Agreement.

(11) **Sale of Avoidance Actions**:  The Successful Bidder would purchase all avoidance claims or causes of action under the Bankruptcy Code or applicable Law (including, without limitation, any preference or fraudulent conveyance), and all other claims or causes of action under any other provision of the Bankruptcy Code or applicable laws relating to the Purchased Assets and/or Assumed Liabilities, including all actions relating to vendors and service providers used in the Business and counterparties to Assumed Contracts.

(12) **Requested Findings as to Successor Liability**:  The Successful Bidder would be undertaking certain Assumed Liabilities pursuant to the Successful Bidder's Asset Purchase Agreement.  The Successful Bidder is assuming only those liabilities, and all other liabilities, including successor liability, not expressly assumed by the Successful Bidder under the Successful Bidder's Asset Purchase Agreement, whether or not incurred or accrued on or after the date on which the Sale is closed, shall be retained by the Debtors.  Further, the Court will be requested to enjoin the assertion of successor liabilities arising from or relating to the Debtors and their operations against the Successful Bidder and make findings supporting such injunctive relief.

(13) **Sale Free and Clear of Unexpired Leases**:  The Debtors are seeking to sell the Purchased Assets free and clear of liens and other interests pursuant to Section 363(f) of the Bankruptcy Code, unless otherwise provided in the Successful Bidder's Asset Purchase Agreement.  The Stalking Horse Purchaser is not willing to enter into the Stalking Horse Agreement or Close on the Sale if it does not receive the Purchased Assets, including all real property, free and clear of all liens, claims, encumbrances and interests.

(14) **Credit Bid**:  Credit bids shall be accepted in accordance with section 363(k) of the Bankruptcy Code to the extent provided under the Sale Support Agreement.  Pursuant to the Sale Support Agreement, neither the Term Administrative Agent nor the lenders under the Senior Secured Term Loan shall submit a credit bid under section 363(k) of the Bankruptcy Code; provided, however, that in the event that either (i) the Stalking Horse Purchaser defaults or is otherwise in breach of the Stalking Horse Agreement (it being understood that such Stalking Horse Agreement shall not be amended, and defaults or breaches thereunder shall not be waived, without the consent of the Term Administrative Agent, in each case, such consent shall not be unreasonably withheld) or (ii) the Debtors deem a Competing Bid to be a Qualified Bid, but the Term Administrative Agent believes in its reasonable judgment that such Competing Bid results in a lesser recovery for the Term Lenders, the Term Administrative Agent and the lenders under the Senior Secured Term Loan shall be entitled to all rights under section 363(k) of the Bankruptcy Code.

(15) **Relief from Bankruptcy Rule 6004(h)**:  As noted in the Motion, the Debtors are requesting relief from the 14-day stay imposed by Rules 6004(h) and 6006(d).