## Exhibit C

**(Bidding Procedures Order)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------x
:
In re: : Chapter 11
:
Orchard Supply Hardware Stores Corporation, : Case No. 13-11565 (_____)
*et al.*,[1] :
: (Jointly Administered)
    Debtors. :
: **Re: Dkt. No. __**
---------------------------------------------------------------x

**ORDER GRANTING MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION PURSUANT TO SECTIONS 105(A), 363 AND 365 OF THE BANKRUPTCY CODE FOR AN ORDER (I)(A) APPROVING AND AUTHORIZING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL THE ASSETS; (B) APPROVING THE STALKING HORSE BID PROTECTIONS; (C) APPROVING THE SALE SUPPORT AGREEMENT; (D) SCHEDULING THE RELATED AUCTION AND HEARING TO CONSIDER APPROVAL OF THE SALE; (E) APPROVING PROCEDURES RELATED TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (F) APPROVING THE FORM AND MANNER OF NOTICE THEREOF;
AND (G) GRANTING RELATED RELIEF**

This matter coming before the Court on the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors") for the entry of an order pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedures of the Bankruptcy Court for the District of Delaware (the

---

[1] The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Orchard Supply Hardware Stores Corporation (4109), Orchard Supply Hardware LLC (3395) and OSH Properties LLC (3391). The mailing address of each of the Debtors, solely for purposes of notices and communications, is 6450 Via Del Oro, San Jose, California 95119.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

"Local Rules") (i)(a) approving procedures in connection with the sale of substantially all of the Debtors' assets; (b) approving the Stalking Horse Protections; (c) approving the Sale Support Agreement; (d) scheduling the related auction and hearing to consider approval of sale; (e) approving procedures related to the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases; (f) approving the form and manner of notice thereof; and (g) granting related relief (collectively, the "Bidding Procedures Relief"); and (ii)(a) authorizing the sale of such assets free and clear of liens, claims, encumbrances, and other interests, except as provided by an Asset Purchase Agreement; (b) approving the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases related thereto (any such contract or lease, a "Seller Contract"); and (c) granting related relief; the Court having reviewed the Motion and the Court having found that (i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012; (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iv) notice of the Motion was sufficient under the circumstances; and after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors; and good and sufficient cause having been shown;

AND FURTHER FOUND AND DETERMINED THAT:

A.    The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court granting the relief requested in the Motion relating to the bidding process, including approval of (1) the Bidding Procedures, (2) the Bid Protections provided for in the Stalking Horse Agreement, by and between the Debtors and

Orchard Supply Company, LLC (the "Buyer"), dated as of June 17, 2013 (including all exhibits, schedules and ancillary agreements related thereto, and as modified hereby, the "Agreement"), which contemplates the sale of the Purchased Assets to the Buyer (the "Sale"), (3) the procedures described below for the determination of the amounts necessary to cure defaults under the Seller Contracts (the "Cure Costs") so as to permit the assumption and assignment under section 365 of the Bankruptcy Code of the Seller Contracts that may be assumed and assigned to the Buyer, and (4) the forms of the Sale Notice and Cure Notice attached to the Motion as Exhibit D and Exhibit E, respectively.

B. The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by approval of the Sale Support Agreement. The Sale Support Agreement was negotiated in good faith between the parties thereto, and was necessary for the negotiation and execution of the Stalking Horse Agreement. Without approval of the Sale Support Agreement, the Stalking Horse Purchaser would not have entered into the Stalking Horse Agreement.

C. The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court scheduling a Sale Hearing to consider granting the other relief requested in the Motion, including approval of the Sale and the transfer of the Assets to the Successful Bidder free and clear of all liens, claims, encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code.

D. The Bid Protections as set forth in Article 7.1 of the Agreement to be paid under the circumstances described therein to the Buyer are: (1) commensurate to the real and substantial benefits conferred upon the Debtors' estates by the Buyer; (2) reasonable and appropriate in light of the size and nature of the proposed Sale and comparable transactions, the

commitments that have been made, the condition of the Assets, and the efforts that have been and will be expended by the Buyer; and (3) necessary to induce the Buyer to continue to pursue the Sale and to continue to be bound by the Agreement.

E. Moreover, the Bid Protections are an essential inducement and condition relating to the Buyer's entry into, and continuing obligations under, the Agreement. Unless it is assured that the Bid Protections will be available, the Buyer is unwilling to remain obligated to consummate the Sale or otherwise be bound under the Agreement (including the obligations to maintain its committed offer while such offer is subject to higher or otherwise better offers as contemplated by the Bidding Procedures). The Bid Protections induced the Buyer to submit a bid that will serve as a minimum or floor bid for the Assets on which the Debtors, their creditors and other bidders can rely. The Buyer has provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible purchase price for the Assets will be realized, and encourages and facilitates the Auction process. Accordingly, the Bid Protections are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates. The Bidding Procedures substantially in the form attached hereto as Exhibit 1 are fair, reasonable, and appropriate and are designed to maximize the recovery from the Sale of the Purchased Assets.

F. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

G. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

IT IS HEREBY ORDERED THAT:

1. The Bidding Procedures Relief is GRANTED as set forth herein.

2. All objections to the relief requested in the Motion that have not been withdrawn, waived or settled are overruled except as reflected in the provisions of this Order.

3. The Bidding Procedures attached hereto as <u>Exhibit l</u> are APPROVED and shall govern all bids and bid proceedings relating to the sale of the Assets. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

4. The good faith deposits of the Buyer and any other Potential Bidder shall be held in escrow by Citibank, N.A. (or such other escrow agent that the Debtors engage in their reasonable discretion) and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement.

5. The Bid Deadline shall be August 9, 2013, at 4:00 p.m (prevailing Eastern Time).

6. The Sale Support Agreement attached to the Motion as <u>Exhibit D</u> is hereby APPROVED. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Sale Support Agreement.

7. The Stalking Horse Protections are APPROVED and shall be paid when and as set forth in the Stalking Horse Agreement as administrative claims of the estate. The Bid Protections will constitute, pursuant to sections 364 and 503 of the Bankruptcy Code, a superpriority administrative expense claim in each of the Debtors' bankruptcy estates with priority over any and all administrative expense claims other than the obligations under the DIP Financing Agreements and the DIP Orders. Notwithstanding anything to the contrary contained herein, upon timely payment of the Bid Protections to Buyer, the Debtors and their respective

representatives and affiliates, on the one hand, and Buyer and their respective representatives and affiliates, on the other hand, will be deemed to have fully released and discharged each other from any Liability resulting from the termination of the Agreement, and neither Debtors and their respective representatives and affiliates, on the one hand, and Buyer and their respective representatives and affiliates, on the other hand, nor any other Person, will have any other remedy or cause of action under or relating to the Agreement or any applicable Law, including for reimbursement of expenses.  Any Bid Protections payable pursuant to the terms of the Agreement shall be payable without any further order of the Bankruptcy Court

8.      The Debtors shall have the exclusive right, in consultation with counsel to any official committees and counsel to the Senior Secured Credit Facility Lender and the Agent under the Senior Secured Term Loan, to determine whether a bid is a Qualified Bid and shall notify Potential Bidders whether their bids have been recognized as such as promptly as practicable after a Potential Bidder delivers all of the materials required by the Bidding Procedures; <u>provided</u>, <u>however</u>, that the Stalking Horse Purchaser and the Agent under the Senior Secured Term Loan are each hereby deemed a Qualified Bidder, and the Stalking Horse Agreement submitted to the Debtors by the Stalking Horse Purchaser and appended to the Motion as <u>Exhibit B</u>, is deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction, and the Sale.

9.      The Auction, if necessary, shall be held at 10:00 a.m. (EST) on August 14, 2013, at the offices of DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020, or such other location as shall be timely communicated to all entities entitled to attend the Auction.  If no other Qualifying Bid is received, no Auction shall be necessary.

10. At such Auction, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale and the Auction shall be open to all creditors, conducted openly and transcribed.

11. The Debtors shall determine which offer is the highest and otherwise best offer for the Purchased Assets, giving effect to the Break-Up Fee and Expense Reimbursement payable to the Stalking Horse Purchaser under the Stalking Horse Agreement as well as any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Debtors.

12. The Sale Hearing shall be held on August 20, 2013 at ____:____ _.m. (prevailing Eastern Time) before this Court, the U.S. Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, __ Floor, Courtroom ____. Any objections to the Sale must (a) be in writing, (b) state the basis of such objection with specificity, (c) conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the District of Delaware and (d) be filed with the Bankruptcy Court and served in accordance with the rules of the Bankruptcy Court upon: (i) counsel to the Debtors: DLA Piper LLP (US), 203 N. LaSalle Street, Suite 1900, Chicago, Illinois 60601 (Attn: Richard A. Chesley, Esq. (richard.chesley@dlapiper.com)); (ii) counsel to the Stalking Horse Purchaser: Hunton & Williams, LLP, 1445 Ross Avenue, Suite 3700, Dallas, Texas 75202, Attention: Gregory G. Hesse); (iii) counsel to the DIP Lender and Senior Secured Credit Facility Lender: Riemer & Braunstein LLP, 3 Center Plaza, Boston, Massachusetts 02108 (Attn: Donald E. Rothman); (iv) counsel to the Term Administrative Agent and steering committee of lenders under the Senior Secured Term Loan: Dechert LLP, 1095 Avenue of the Americas, New York, NY 10036 (Attn: Michael J. Sage and Scott M. Zimmerman); (v) the Term Administrative Agent under the Senior

Secured Term Loan: Gleacher & Company, 1290 Avenue of the Americas, New York, NY 10104 (Attn: Joanna W. Anderson); (vi) counsel to any statutory committee of unsecured creditors appointed in these cases; and (vii) the Office of the United States Trustee: U.S. Trustee, 844 King Street, Suite 2207, Lockbox #35, Wilmington, Delaware, 19899-0035 (Attn: Tiiara Patton, Esq.) (collectively, the "Service Parties") so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on August 9, 2013.

13. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, and the Debtors shall have the exclusive right, after consultation with the Agent under the Senior Secured Term Loan, in the exercise of their fiduciary obligations and business judgment, to cancel the Sale at any time.

14. The following forms of notice are approved: (a) Notice of Sale Procedures, Auction Date, and Sale Hearing, in the form substantially similar to that attached to the Motion as Exhibit E (the "Procedures Notice") and (b) the Notice to Counterparties to Executory Contracts and Unexpired Leases of the Debtors That May Be Assumed and Assigned (the "Cure Notice"), in the form substantially similar to that attached to the Motion as Exhibit F.

15. The Debtors shall, within five (5) days after the entry of this Order, serve a copy of the Procedures Notice and this Order by first class mail, postage prepaid on (a) the U.S. Trustee, (b) counsel to the Official Committee of Unsecured Creditors, (c) any parties requesting notices in these cases pursuant to Bankruptcy Rule 2002, (d) all known creditors of the Debtors, (e) counsel to the Stalking Horse Purchaser and (f) all Potential Bidders.

16. The Debtors shall, within five (5) days after the entry of this Order, serve the Motion and the Cure Notice upon each counterparty to the Assumed Executory Contracts, and

their counsel (if known). For any contracts that are designated as Assumed Executory Contracts by the Stalking Horse Purchaser after such time, the Debtors shall, within five (5) business days of receiving such designation, serve the Motion and the Cure Notice upon each counterparty to the Assumed Executory Contracts and Leases, and their counsel (if known). The Cure Notice shall state the date, time and place of the Sale Hearing as well as the date by which any objection to the assumption and assignment of Assumed Executory Contracts must be filed and served and shall include a description of each Seller Contract to potentially be assumed and assigned. The Cure Notice also will identify the amounts, if any, that the Debtors believe are owed to each counterparty to an Assumed Executory Contract in order to cure any defaults that exist under such contract (the "Cure Amounts") pursuant to section 365 of the Bankruptcy Code.

17. If any counterparty to an Assumed Executory Contract objects for any reason to the Cure Amounts set forth in the Cure Notice, such counterparty must file with the Court a written objection (a "Cure Amount Objection") and serve such Cure Amount Objection so as to be received by the Service Parties by no later than August 9, 2013 at 4:00 p.m. (prevailing Eastern Time) (the "Cure Objection Deadline").

18. If a Contract or Lease is assumed and assigned pursuant to Court Order, then except for Disputed Cure Amounts (as defined herein), the Assumed Executory Contract counterparty shall receive no later than three (3) business days following the closing of the Sale, the Cure Amount, if any, as set forth in the Cure Notice, with payment to be made pursuant to the terms of the Successful Bidder's Asset Purchase Agreement. Each Cure Amount Objection must set forth with specificity each and every asserted default in any executory contract or unexpired lease and the monetary cure amount asserted by such counterparty to the extent it differs from the amount, if any, specified by the Debtors in the Cure Notice.

19. In the event that the Debtors and the non-debtor party cannot resolve the Cure Amount Objection, the Debtors shall segregate any disputed Cure Amounts ("Disputed Cure Amounts") pending the resolution of any such disputes by the Court or mutual agreement of the parties. Cure Amount Objections may be resolved by the Court at the Sale Hearing, or at a separate hearing either before or after the Sale Hearing. Any counterparty to an Assumed Executory Contract that fails to timely file and serve an objection to the Cure Amounts shall be forever barred from asserting that a Cure Amount is owed in an amount in excess of that set forth in the Cure Notice. If no timely Cure Objection is filed and served with respect to a Seller Contract, the Cure Costs identified in the Contract and Cure Schedule with respect to the Seller Contracts will be the only amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under such Seller if the Buyer (or other Successful Bidder) ultimately decides to have the applicable Seller Contract assumed and assigned to it. Any party failing to timely file a Cure Objection shall be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtors, their estates or the Successful Bidder.

20. If any counterparty to an Assumed Executory Contract objects for any reason to the assumption and assignment of an Assumed Executory Contract (other than a Cure Amount Objection, an "Assignment Objection"), such counterparty must file and serve such Assignment Objection so as to be received by the Service Parties by no later than (the "Assignment Objection Deadline"): (i) 4:00 p.m. (prevailing Eastern Time) on August 9, 2013; or (ii) the date otherwise specified in the Cure Notice (or, alternatively, the date set forth in the motion to assume such Assumed Executory Contract if such contract is to be assumed and assigned after the Sale Hearing). The Court shall make any and all determinations concerning adequate assurance of

future performance under the Assumed Executory Contracts pursuant to sections 365(b) and (f)(2) of the Bankruptcy Code at the Sale Hearing.

21. Except to the extent otherwise provided in the Successful Bidder's Asset Purchase Agreement, the Debtors and the Debtors' estates shall be relieved of all liability accruing or arising after the assumption and assignment of the Assumed Executory Contracts pursuant to section 365(k) of the Bankruptcy Code.

22. Notwithstanding any provision in this Order, the Agreement or the Bidding Procedures, this Order does not satisfy, and the Court has not yet determined if the Debtors have satisfied, the requirements of section 365 of the Bankruptcy Code for any particular Seller Contract, including those relating to the cure of any existing default or providing adequate assurance of future performance. No Seller Contract will be deemed assumed and assigned until the later of (a) the date the Court has entered an order authorizing the assumption and assignment of a particular Seller Contract or (b) the date the Sale is closed. The Successful Bidder will have no rights in and to any particular Seller Contract until such time as the particular Seller Contract is assumed and assigned to the Successful Bidder.

23. Upon Closing, the sale proceeds shall be paid to the Debtors for distribution at the time of Closing as follows: (a) *first*, to pay the outstanding obligations under the DIP Financing Agreements in full, (b) *second*, within two business days of a Sale to a party other than the Stalking Horse Purchaser, the Expense Reimbursement and the Break-up Fee shall be paid to the Stalking Horse Purchaser as an administrative expenses of the Company with priority over any and all administrative expenses of the kind specified in Section 503(b) of the Bankruptcy Code, and (c) *third,* to the Debtors for distribution in accordance with the priorities set forth in the Bankruptcy Code.

24. To the extent the provisions of this Order are inconsistent with the provisions of any Exhibit referenced herein or with the Motion, the provisions of this Order shall control.

25. The Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

26. Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable.

Dated: _____, 2013
        Wilmington, Delaware

_____
United States Bankruptcy Judge