**<u>Exhibit G</u>**

**(Proposed Sale Order)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------------x
                                          :
In re:                                    :  Chapter 11
                                          :
Orchard Supply Hardware Stores Corporation, :  Case No. 13-1 (_____)
et al.,[1]                                :
                                          :  (Jointly Administered)
          Debtors.                        :
                                          :  Re: Dkt. No. __
----------------------------------------------------------x
```

## ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS PROVIDED IN THE SUCCESSFUL BIDDER'S ASSET PURCHASE AGREEMENT; (B) AUTHORIZING AND APPROVING PURCHASE AGREEMENT THERETO; (C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN OF THE DEBTORS' EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (D) GRANTING RELATED RELIEF

This matter is before the Court on the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors") for the entry of an order pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedures of the Bankruptcy Court for the District of Delaware (the "Local Rules") (i)(a) approving procedures in connection with the sale of substantially all of the Debtors' assets;

---

[1]     The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Orchard Supply Hardware Stores Corporation (4109), Orchard Supply Hardware LLC (3395) and OSH Properties LLC (3391).  The mailing address of each of the Debtors, solely for purposes of notices and communications, is 6450 Via Del Oro, San Jose, California 95119.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(b) approving the Stalking Horse Protections; (c) approving the Sale Support Agreement; (d) scheduling the related auction and hearing to consider approval of sale; (e) approving procedures related to the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases; (f) approving the form and manner of notice thereof; and (g) granting related relief; and (ii)(a) authorizing the sale of such assets free and clear of liens, claims, encumbrances, and other interests, except as provided by an Asset Purchase Agreement; (b) approving the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases related thereto; and (c) granting related relief; and the Court having heard statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Sale Motion at a hearing before the Court on [_____], 2013 (the "<u>Sale Hearing</u>"); and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

THE COURT HEREBY FINDS AND DETERMINES THAT:

I.    **Jurisdiction, Final Order and Statutory Predicates**

A.    The Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a) and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    This order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just

reason for delay in the implementation of this order, and expressly directs entry of judgment as set forth herein.

C.    The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363(b), (f), and (m), and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9007 and 9014.

D.    The Court entered the Bidding Procedures Order on [_____], 2013 [Dkt. No. __].

E.    The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

F.    To the extent any of the following findings of fact constitute conclusions of law, they are hereby adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are hereby adopted as such.  Any findings of fact or conclusions of law stated by the Court on the record at the Sale Hearing are hereby incorporated, to the extent they are not inconsistent herewith.

G.    In the absence of a stay pending appeal, the Purchaser will be acting in good faith pursuant to section 363(m) of the Bankruptcy Code in closing the transaction contemplated by the Successful Bidder's Asset Purchase Agreement at any time on or after entry of this Sale Order, and cause has been shown as to why this Sale Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

## II.    Notice of the Sale, Auction and the Cure Amounts

A.    Actual written notice of the Sale Hearing, the Auction, the Sale Motion, the Sale, the assumption, assignment and sale of the Executory Contracts and Leases and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief

requested therein has been afforded to all known interested persons and entities, including, but not limited to the following parties (the "Notice Parties"): (i) the United States Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the DIP Lender and lender under the Senior Secured Credit Facility; (v) counsel to the Term Administrative Agent and steering committee of lenders under the Senior Secured Term Loan; (vi) the Term Administrative Agent under the Senior Secured Term Loan; (vii) the Securities and Exchange Commission;  (viii) all taxing authorities having jurisdiction over any of the Purchased Assets, including the Internal Revenue Service; (ix) the United States Department of Justice; (x) all parties that have requested special notice pursuant to Bankruptcy Rule 2002;  (xi) all persons or entities known to the Debtors that have or have asserted a lien on, or security interest in, all or any portion of the Purchased Assets; (xii) all non-Debtor parties to each Executory Contract and unexpired lease that the Debtors propose to assume and assign to the Purchaser (each a "Contract CounterParty"); (xiii) counsel to the Stalking Horse Purchaser (the "Purchaser"); and (xiv) all potential bidders previously identified or otherwise known to the Debtors.

        B.      In accordance with the provisions of the Bidding Procedures Order, the Debtors have served notice (the "Cure Notice") upon Purchaser and the Contract CounterParties: (i) that the Debtors seek to assume and assign certain executory contracts (the "Executory Contracts") and unexpired leases (the "Leases") on [_____], 2013, (the "Closing Date"); and (ii) of the relevant cure amounts.  Pursuant to Fed. R. Bankr. P. 6006(c), the court finds that the service of such Cure Notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of establishing a cure amount for the Executory Contracts and Leases.  Purchaser and the Contract CounterParties have had an opportunity to object to the cure amounts set forth in the Cure Notice.

C.      The Debtors have articulated good and sufficient reasons for the Court to grant the relief requested in the Motion regarding the sales process, including, without limitation: (i) approval of the Bidding Procedures; (ii) determination of final cure amount; and (iii) approval and authorization to serve the Procedures Notice.

D.      The Debtors' Procedures Notice provided all interested parties with timely and proper notice of the Sale, Sale Hearing and Auction.

E.      The Cure Notice provided Purchaser and the Contract CounterParties with proper notice of the potential assumption and assignment of the Executory Contracts and Leases and any cure amount relating thereto, and the procedures set forth therein with regard to any such cure amount to satisfy the provisions of 11 U.S.C. § 365 and Fed. R. Bankr. P. 6006.

F.      As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, Auction, Sale Hearing, and Sale has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.  The Debtors also have complied with all obligations to provide notice of the Auction, Sale Hearing, and Sale required by the Bidding Procedures Order.  The notices described in paragraphs A to G above were good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, Auction, Sale Hearing, Sale, or assumption, assignment and sale of the Executory Contracts and Leases is required.

G.      The disclosures made by the Debtors concerning the Sale Motion, APA, Auction, Sale, and Sale Hearing, including but not limited to the *Affidavit of _____ of _____ in Support of the Motion of the Debtors and Debtors in Possession Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code for an Order (i)(a) Approving and*

*Authorizing Bidding Procedures in Connection with the Sale of Substantially All the Assets; (b)*

*Approving the Stalking Horse Bid Protections; (c) Scheduling the Related Auction and Hearing*

*to Consider Approval of the Sale; (d) Approving Procedures Related to the Assumption and*

*Assignment of Certain Executory Contracts and Unexpired Leases; (e) Approving the Form and*

*Manner of Notice Thereof; and (f) Granting Related Relief* (the "<u>Affidavit</u>") were good,

complete and adequate.

### III.    Good Faith of Purchaser

A.    The Purchaser is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

B.    Purchaser is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (a) Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (b) Purchaser complied with the provisions in the Bidding Procedures Order; (c) Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (d) Purchaser in no way induced or caused the chapter 11 filing by the Debtors or any other Debtors; (e) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (f) Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (g) no common identity of directors or controlling stockholders exists between the Purchaser and any of the Debtors; and (h) the negotiation and execution of the final purchase agreement ("<u>Final APA</u>," which is attached hereto as **<u>Exhibit A</u>**, and which is based upon the APA attached to the Motion,

but incorporates changes brought about by the competitive nature of the Auction) and any other agreements or instruments related thereto were at arms' length and in good faith.

## IV.    Highest or best Offer

A.    Prior to selecting Orchard Supply Company, LLC as the stalking horse bidder, the Debtors solicited offers to acquire the Purchased Assets from a wide variety of parties.  In addition to such solicitations, the Debtors also conducted an auction in accordance with the provisions of the Bidding Procedures Order.  This Auction, which was conducted in compliance with the process set forth in the Bidding Procedures Order, afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets.  The Auction was duly noticed and conducted in a noncollusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Purchased Assets.

B.    The Final APA constitutes the highest or best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' estate than would be provided by any other available alternative.  The Debtors' determination that the Final APA constitutes the highest or best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

C.    The Final APA represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of these chapter 11 cases.  No other person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors' estate than the Purchaser.

D.    Approval of the Sale Motion and the Final APA and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, its creditors, its estate and other parties in interest.

E.     The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization.

## V.     No Fraudulent Transfer

A.     The consideration provided by the Purchaser pursuant to the Final APA is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

## VI.     Validity of Transfer

A.     The Debtors have full corporate power and authority to execute and deliver the Final APA and all other documents contemplated thereby, and no further consents or approvals are required for the Debtors to consummate the transactions contemplated by the Final APA, except as otherwise set forth in the Final APA.

B.     The transfer of each of the Purchased Assets to the Purchaser will be as of the Closing Date a legal, valid, and effective transfer of such assets, and vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all liens (and Claims (as defined below) (collectively, "Liens")) accruing, arising or relating to any time prior to the Closing Date, except for any permitted liens and assumed liabilities (the "Assumed Liens" and "Assumed Liabilities") under the Final APA.

## VII.     Section 363(f) Is Satisfied

A.     The Purchaser would not have entered into the Final APA and would not consummate the transactions contemplated thereby (by paying the Purchase Price and assuming the Assumed Liabilities) if the sale of the Purchased Assets to the Purchaser, and the assumption, assignment and sale of the Executory Contracts and Leases to the Purchaser, were not, except as

otherwise provided in the Final APA with respect to the Assumed Liabilities, free and clear of all Liens and Claims (as defined below) of any kind or nature whatsoever, or if the Purchaser would, or in the future could (except and only to the extent expressly provided in the Final APA and with respect to the Assumed Liabilities), be liable for any of such Liens or Claims, including, but not limited to, Liens or Claims in respect of the following: (1) all mortgages, deeds of trust and security interests; (2) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (3) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) the California Labor Code; (k) state discrimination laws, (l) state unemployment compensation laws or any other similar state laws, or (m) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (4) any bulk sales or similar law; (5) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (6) any Environmental Law(s) (as defined in the Final APA), including, without limitation, any environmental Liens or Claims arising out of, or related to, the reports referenced in APA Schedule 4.20; and (8) any theories of successor liability.

B.     The Debtors may sell the Purchased Assets free and clear of all Liens and Claims against the Debtors, its estate or any of the Purchased Assets (except for any Assumed Liabilities under the Final APA) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Liens or Claims against the Debtors, its estate or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of such Liens or Claims who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Liens and/or Claims, if any, in each instance against the Debtors, its estate or any of the Purchased Assets, attach to the cash proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Debtors and its estate may possess with respect thereto.

VIII.   **Assumption and Assignment of the Executory Contracts and Leases**

A.     The assumption and assignment of the Executory Contracts and Leases pursuant to the terms of this order is integral to the Final APA and is in the best interests of the Debtors and its estate, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

B.     The amount set forth on **Exhibit __** annexed hereto are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the Executory Contracts and Leases (the "Cure Amounts").

C.     Pursuant to the terms of the Final APA, Purchaser will: (i) cure and/or provide adequate assurance of cure of any monetary default existing prior to the Closing Date

under any of the Executory Contracts and Leases, within the meaning of section 365(b)(1)(A) of

the Bankruptcy Code; (ii) provide compensation or adequate assurance of compensation to any

party for actual pecuniary loss to such party resulting from a default prior to the Closing Date

under any of the Executory Contracts and Leases, within the meaning of section 365(b)(1)(B) of

the Bankruptcy Code; and (iii) provide adequate assurance of its future performance under the

relevant Executory Contracts and Leases within the meaning of sections 365(b)(1)(C), 365(b)(3)

(to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

**IX.     Compelling Circumstances for an Immediate Sale**

A.     To enhance the Debtors' level of liquidity, to reduce the amount of

postpetition debtor-in-possession financing borne by the Debtors, and to maximize the amount of

funding available to provide for a timely exit from these chapter 11 cases, it is essential that the

Sale of the Assets occur within the time constraints set forth in the Final APA.  Time is of the

essence in consummating the Sale.

B.     Given all of the circumstances of these chapter 11 cases and the adequacy

and fair value of the purchase price under the Final APA, the proposed Sale of the Purchased

Assets to Purchaser constitutes a reasonable and sound exercise of the Debtors' business

judgment and should be approved.

C.     The consummation of the transaction is legal, valid and properly

authorized under all applicable provisions of the Bankruptcy Code, including, without limitation,

sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f), and all of the applicable requirements

of such sections have been complied with in respect of the transaction.

**X.     Objections**

A.     **[As necessary]**

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

**General Provisions**

1.      The relief requested in the Sale Motion is granted and approved, and the Sale contemplated thereby is approved as set forth in this order.

2.      This Court's findings of fact and conclusions of law, set forth in the Bidding Procedures Order, are incorporated herein by reference.

3.      All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits or the interests of such objections have been otherwise satisfied or adequately provided for.

**Approval of the Final APA**

4.      The Final APA and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

5.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale of each of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the Final APA, (ii) close the Sale as contemplated in the Final APA and this order, and (iii) execute and deliver, perform under, consummate, implement and close fully the Final APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Final APA and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Final APA and such other ancillary documents.

6.      This order shall be binding in all respects upon the Debtors, including the Debtors, their estates, all holders of equity interests in any Debtor, all holders of any Claim(s) (whether known or unknown) against any Debtor, any holders of Liens or Claims against or on all or any portion of the Purchased Assets, all Contract CounterParties, the Purchaser and all successors and assigns of the Purchaser, the Purchased Assets and any trustees, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases.  This order and the Final APA shall inure to the benefit of the Debtors, its estates, its creditors, the Purchaser and their respective successors and assigns.

**Transfer of the Purchased Assets**

7.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtors are  authorized to transfer the Purchased Assets on the Closing Date.  Such Purchased Assets shall be transferred to the Purchaser upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets and, upon the Debtors' receipt of the Purchase Price, shall be free and clear of all Liens and claims, including, without limitation, all "claims" within the meaning of sections 101(5), 102(2) and 105 of the Bankruptcy Code, and all interests, encumbrances, rights of setoff, recoupment, netting and deductions ("Claims"), except Assumed Liabilities under the Final APA.  Upon the Closing, the Purchaser shall take title to and possession of the Purchased Assets subject only to the Assumed Liabilities.  Pursuant to section 363(f) of the Bankruptcy Code, the transfer of title to the Purchased Assets and the Executory Contracts and Leases shall be free and clear of (a) any and all Liens; (b) any and all Liabilities except for Assumed Liabilities; and (c) any and all Claims including, without limitation, any and all claims pursuant to any successor or successor-in-interest liability theory; provided, however, that the Purchaser shall not be relieved of liability

with respect to the Assumed Liabilities, including any obligations accruing under the Executory Contracts and Leases from and after the Closing. All Liens and/or Claims shall attach solely to the proceeds of the Sale with the same validity, priority, force and effect that they now have as against the Purchased Assets, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

8.     Except as expressly provided by the Final APA with respect to Assumed Liabilities, all persons and entities holding Liens, Claims or interests in all or any portion of the Purchased Assets arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' business prior to the Closing Date or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser or its successors or assigns, their property or the Purchased Assets, such persons' or entities' Liens or Claims in and to the Purchased Assets. On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be deemed by the Purchaser to be necessary or desirable to release Liens or Claims on the Purchased Assets, if any, as provided for herein, as such Liens or Claims may have been recorded or may otherwise exist.

9.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the Final APA and this order.

10.     All persons and entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser or its assignee at the Closing.

11.     A certified copy of this order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the Liens, Claims and other encumbrances of record.

12.     If any person or entity which has filed statements or other documents or agreements evidencing Liens on, Claims or interests in, all or any portion of the Purchased Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to the Purchaser for the purpose of documenting the release of all Liens or Claims, which the person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Debtors are hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.

13.     This order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Final APA.

**Executory Contracts and Leases**

14.     Upon the Closing of the Sale, the Debtors are authorized and directed to assume and assign the Executory Contracts and Leases to the Purchaser free and clear of all Liens and Claims, as described herein.   The payment of the applicable Cure Amounts (if any) by the Purchaser shall (a) effect a cure of all defaults existing thereunder as of the Closing Date, (b) compensate for any actual pecuniary loss to such non-Debtor party resulting from such default, and (c) together with the assumption of the Executory Contracts and Leases by the Purchaser, constitute adequate assurance of future performance thereof.   The Purchaser shall then have assumed the Executory Contracts and Leases and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of such Executory Contracts and Leases shall not be a default thereunder.   After the payment of the relevant Cure Amounts by the Purchaser**,** neither the Debtors nor the Purchaser shall have any further liabilities to the Contract CounterParties other than the Purchaser's obligations under the Executory Contracts and Leases that accrue and become due and payable on or after the Closing Date.

15.     Any provisions in any Executory Contract or Lease that prohibits or conditions the assignment of such Executory Contract or Lease or allows the party to such Executory Contract or Lease to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Executory Contract or Lease, constitute unenforceable anti-assignment provisions that are void and of no force and effect.   All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of the Executory Contract or Lease have been satisfied.   Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Executory Contract or Lease.

16.     Upon the Closing and the payment of the relevant Cure Amounts, if any, the Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Executory Contract or Lease and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Executory Contract or Lease.

17.     Upon the payment of the applicable Cure Amount, if any, the Executory Contracts and Leases will remain in full force and effect, and no default shall exist under the Executory Contracts and Leases nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

18.     There shall be no rent accelerations, assignment fees, increases (including advertising rates) or any other fees charged to Purchaser or the Debtors as a result of the assumption and assignment of the Executory Contracts and Leases.

19.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all Contract CounterParties are forever barred and permanently enjoined from raising or asserting against Purchaser any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Executory Contracts and Leases existing as of the Closing Date or arising by reason of the Closing.

**<u>Other Provisions</u>**

20.     Effective upon the Closing Date and except as otherwise provided by stipulations filed with or announced to the Court with respect to a specific matter, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the Purchased Assets, with respect to any (a) Lien or Claim arising under, out of, in connection with or in any way relating to the Debtors, the Purchaser, the Purchased Assets, or the operation of the Purchased Assets

prior to the Closing of the Sale, or (b) successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors or assigns, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors, assets or properties; (iii) creating, perfecting or enforcing any Lien or Claim against the Purchaser, its successors or assigns, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser or its successors or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

21.    Except for the Assumed Liabilities or as otherwise expressly set forth in the Final APA, the Purchaser shall not have any liability or other obligation of the Debtors arising under or related to any of the Purchased Assets.  Without limiting the generality of the foregoing, and except for the Assumed Liabilities provided in the Final APA, the Purchaser shall not be liable for any claims against the Debtors or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with,

or in any way relating to the operation of any of the Purchased Assets prior to the Closing.  The Purchaser has given substantial consideration under the Final APA for the benefit of the holders of any Liens or Claims.  The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens or Claims against or interests in the Debtors or any of the Purchased Assets.

22.    Upon Closing, the sale proceeds shall be paid to the Debtors for distribution at the time of Closing as follows: (a) first, to pay the outstanding obligations under the DIP Financing Agreements in full, (b) second, within two business days of a Sale to a party other than the Stalking Horse Purchaser, the Expense Reimbursement and the Break-up Fee shall be paid to the Stalking Horse Purchaser as an administrative expenses of the Company with priority over any and all administrative expenses of the kind specified in Section 503(b) of the Bankruptcy Code, and (c) third, to the Debtors for distribution in accordance with the priorities set forth in the Bankruptcy Code.

23.    The transactions contemplated by the Final APA are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Executory Contracts and Leases), unless such authorization and such Sale are duly stayed pending such appeal.  The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

24.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (i) these chapter 11 cases, (ii) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (ii) any related proceeding subsequent to entry of this order, shall conflict with or derogate from the provisions of the Final APA or the terms of this order.

25.     Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this order shall be effective immediately upon entry and the Debtors and Purchaser are authorized to close the Sale immediately upon entry of this order.

26.     As provided in the Final APA, this order approves and provides for the transfer to Purchaser of all avoidance claims (whether under chapter 5 of the Bankruptcy Code or otherwise) of the Debtors' estates related to, or arising from, any Assumed Executory Contract or Lease or relating to any Assumed Liability.

27.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

28.     The failure specifically to include any particular provision of the Final APA in this order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Final APA be authorized and approved in its entirety.

29.     The Final APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estate.

30.     The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this order and the Final APA, all amendments thereto

and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

31.     All time periods set forth in this order shall be calculated in accordance with Bankruptcy Rule 9006(a).

32.     To the extent that this order is inconsistent with any prior order or pleading with respect to the Sale Motion in these chapter 11 cases, the terms of this order shall govern.

Dated:  _____, 2013
      Wilmington, Delaware
                                                 _____
                                               United States Bankruptcy Judge

## EXHIBIT A

**Final APA**

## **EXHIBIT B**

**Cure Amounts**