**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------x
: 
In re:                                                        : Chapter 11
                                                              : 
Orchard Supply Hardware Stores Corporation,                   : Case No. 13-11565 (CSS)
*et al.*,[1]                                                  : 
                                                              : (Jointly Administered)
         Debtors.                                             : 
                                                              : Hearing Date: July 15, 2013 at 1:00 p.m. (Eastern)
                                                              : Obj. Deadline: July 8, 2013 at 4:00 p.m. (Eastern)
---------------------------------------------------------------x

**MOTION OF ORCHARD SUPPLY HARDWARE
STORES CORPORATION FOR AN ORDER PURSUANT
TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULE
9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
APPROVING RONDONE CLASS ACTION SETTLEMENT AGREEMENT**

Orchard Supply Hardware Stores Corporation ("Orchard"), by and through its counsel, DLA Piper LLP (US), hereby moves the Court for entry of an order, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving that certain *Joint Stipulation of Class Action Settlement; Settlement Agreement and Release* (the "Settlement Agreement")[2] dated December 19, 2012, by and among Orchard, Gina Rondone, Nicholas Benitez III and other similarly situated current and former employees of Orchard (together, with Rondone and Benitez, the "Plaintiffs"). In support of this Motion, Orchard respectfully states as follows:

---

[1]   The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Orchard Supply Hardware Stores Corporation (4109), Orchard Supply Hardware LLC (3395) and OSH Properties LLC (3391). The mailing address of each of the Debtors, solely for purposes of notices and communications, is 6450 Via Del Oro, San Jose, California 95119.

[2]   Capitalized terms used herein and not otherwise defined shall have the meanings given to them in the Settlement Agreement.

1

**Jurisdiction and Venue**

1.  The Court has jurisdiction over these cases and this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

**Background**

2.  On June 17, 2013 (the "Petition Date"), each of the Debtors filed with this Court voluntary petitions for relief under the Bankruptcy Code.

3.  Originally founded in San Jose, California in 1931, Orchard and its affiliated debtor subsidiaries (collectively, the "Debtors" or the "Company"), operate neighborhood hardware and garden stores. As of the Petition Date, the Company operates 89 stores in California and two stores in Oregon.

4.  While the Orchard brand has been synonymous with California retailing for over eighty years, a highly leveraged capital structure instituted in 2006, combined with increasingly competitive conditions and a perilous California economy led the Company to experience sales declines of 21% over the three year period from 2007 through 2010. The Company's extensive debt, combined with the increased costs as the Company transitioned to an independent public company in late 2011 following the Company's spin-off from Sears Holding Corporation ("Sears") made it difficult for the Company to comply with its loan covenants under the senior secured term loan (the "Senior Secured Term Loan") which, if defaulted, would then trigger a cross-default under its asset-backed revolving credit facility (the "Senior Secured Credit Facility").

5.  While the Company's new management stemmed the tide of declining sales through the strategic implementation of a number of key initiatives, including the highly successful new store prototype, due to the constraints present in the Company's debt structure,

the Company was unable to dedicate the resources necessary to fully transform the Orchard brand in the manner necessary to support the debt structure.

6. For these reasons, beginning just prior to, and continuing after the Sears spin-off, the Company began to explore and take action against a number of strategic alternatives aimed at, in the short-term, continued compliance with the leverage ratio covenants contained in the Senior Secured Term Loan, and, in the long-term, achieving a sustainable capital structure for the Company. These efforts, some of which were successful in the short-term did not result in a sustainable long-term solution to support the Company's existing debt structure. When it became clear that the existing debt structure rendered it exceedingly difficult to achieve a sustainable capital structure, the Company began to work cooperatively with its lender constituencies toward a deleveraging transaction for the Company.

7. As uncertainty mounted with respect to future financial covenant compliance and a looming maturity date on the first tranche of the Senior Secured Term Loan, the Company began to face increased pressure with respect to its suppliers and vendors and, as a result, many of the Company's most significant suppliers tightened their payment terms, thereby constricting the Company's already-strained liquidity position. These recent strains in liquidity, when combined with the inability of the Company to meet its leverage ratio covenants under the existing debt structure and a looming debt maturity, ultimately resulted in the Company's decision to commence these chapter 11 cases.

8. Prior to the filing of these cases, the Debtors determined that the interests of the Company's stakeholders would be best served by a going-concern sale of substantially all of the Debtors' assets pursuant to an auction process in accordance with section 363 of the Bankruptcy Code. The Debtors undertook a focused marketing process with certain potential purchasers. As

a result of the Debtors' efforts, the Debtors have filed a motion to, among other things, approve certain bid procedures related to a sale pursuant to section 363 of the Bankruptcy Code to sell substantially all of the Debtors' assets and approve an affiliate of Lowe's Home Improvement, LLC as the stalking horse purchaser (the "Stalking Horse Purchaser").

9. The Debtors believe that the process will culminate in a going-concern sale consisting of most of the Orchard stores and continued employment for the vast majority of the Company's employees enabling the Debtors to maximize the value of their assets and, ultimately, provide the highest possible recovery while protecting jobs and minimizing the impact to the substantial majority of the Company's vendors.

*The Rondone Action*

10. Orchard is a defendant in an class action suit styled Gina Rondone, an individual, Nicholas Benitez III, an individual, on behalf of themselves, and all persons similarly situated v. Orchard Supply Hardware Stores Corporation, Case No, 110 CV 164041 (the "Rondone Action"), pending in the Superior Court for the State of California for the County of Santa Clara (the "State Court").

11. The Plaintiffs in the Rondone Action allege that Orchard failed under California law to timely pay wages, to pay overtime wages at the appropriate rate, and to timely furnish accurate itemized wage statements, to provide meal and rest breaks, and that Orchard is liable to pay back wages, damages, interest, penalties, attorneys' fees and costs. Orchard has continued to deny Plaintiffs' claims and has strongly asserted that its employees have been properly and timely paid, that its employees received accurate wage statements, that its employees received adequate meal and rest breaks, and that it is not liable for any back wages, damages, interest, penalties, attorneys' fees or costs.

12. Notwithstanding its strong legal position, Orchard and the Plaintiffs agreed to settle the Rondone Action on terms that Orchard believed were not only economically advantageous, but which would eliminate the cost and distraction of this litigation for both Orchard and its employees.

13. Accordingly, Orchard and the Plaintiffs executed the Settlement Agreement, a copy of which is attached hereto as <u>Exhibit A</u>, on December 19, 2012.  The following is a summary of the key terms of the Settlement Agreement:[3]

- In consideration for settlement of the Rondone Action and the release of all claims of the Plaintiffs, Orchard agrees to pay the sum of $800,000.  Administrative Costs, Attorneys' Fees, Costs and Enhancement Awards for the Named Plaintiffs (all as defined in the Settlement Agreement) shall be deducted from the Settlement Fund.  For the most part, the Settlement Fund is the maximum total amount Orchard is required to pay for any and all purposes of this Settlement Agreement.  However, Orchard may also be required to pay reasonable costs associated with administration of the *cy pres* beneficiary payments to school or community garden programs.  In any event these reasonable costs associated with administration of the *cy pres* beneficiary payments will be minimal.

- Rust Consulting, Inc. (the "<u>Claims Administrator</u>") shall perform functions to administer the settlement contemplated by the Settlement Agreement, and among other things is directed to make the payments to the Settlement Class Members as set forth in the Settlement Agreement.  The Claims Administrator is also directed to set aside for employer taxes on the payments to the Settlement Class the sum of $26,849,00, which is the amount the Claims Administrator estimates will be required for employer taxes.  The Claims Administrator is directed to file all legally-required tax forms and pay the employer

---

[3] To the extent there is a discrepancy between the summary of the Settlement Agreement contained herein and the Settlement Agreement, the terms of the Settlement Agreement shall control.  To the extent not otherwise defined herein, capitalized terms used in this summary shall have the meanings given to them in the Settlement Agreement.

> taxes on the payments to the settlement tax on accordance with the deadlines and procedures required by law.

- The Claims Administrator is directed to deliver Enhancement Awards in the amount of $5,000 each to Nicholas Benitez III and Gina Rondone.

- The Claims Administrator is directed to deliver to Settlement Class Counsel payment for attorneys' fees and costs in the total amount of $278,686.50.

- The Claims Administrator is directed to deliver payment to itself in the amount of $25,653.11 for claims administration costs and fees incurred through June 14, 2013. The Claims Administrator is directed to set aside $11,515.70 to cover any additional claims administration costs and fees incurred through the end of the settlement process.

- Any portion of the Settlement Fund that remains in the possession of the Claims Administrator as of 210 days following the Effective Date (including any uncashed or returned settlement payments) shall be paid to the public school garden programs in the State of California, and/or any 501(c)(3) nonprofit community garden programs or organizations, as set for the in the Settlement Agreement.

- The Plaintiffs and each and every Settlement Class Member shall forever release and discharge Orchard and the Released Parties from all Released Claims, in accordance with the terms set forth in the Settlement Agreement. All Settlement Class Members, and all successors in interest, are forever banned and permanently enjoined from prosecuting all Released Claims against Orchard and the Released Parties. Thus subject to and in accordance with the Settlement Agreement, even if the Settlement Class Members may later discover facts in addition to or different from those which they now know or believe to be true, the Settlement Class Members are deemed to have, and by operation of the Judgment shall have, fully, finally and forever settled and released all claims raised in this action and any other Released Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist.

- Neither the Settlement Agreement, the other settlement-related documents, any of their terms or provisions, nor any of the negotiations or proceedings connected with the

> settlement shall be construed as a concession or admission by Orchard or any Released Party as to the truth of the allegations in the Rondone Action, or of any liability, fault or wrongdoing of any kind.

14. On June 14, 2013, the State Court entered an order (the "State Court Order") granting final approval of the settlement as set forth in the Settlement Agreement, a copy of which is attached hereto as Exhibit B. In approving the settlement, the State Court held that "[t]he settlement is in all respects fair, reasonable, adequate [and] in good faith …." (State Court Order, ¶2.a.). Although the settlement has already been approved Orchard still needs to take steps to effectuate the settlement.

## Relief Requested

15. Orchard seeks entry of an order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 approving the Settlement Agreement in its entirety. Although the Settlement Agreement was approved by the State Court before the Petition Date, Orchard still needs to take steps to effectuate the settlement as set forth in the Settlement Agreement, and seeks entry of an order by the Bankruptcy Court out of an abundance of caution. A copy of the proposed Bankruptcy Court Approval Order is attached hereto as Exhibit C.

## Basis for Relief

16. Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad authority and discretion to enforce the provisions of the Bankruptcy Code under equitable common law principles. Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent the abuse of process.

11 U.S.C. § 105(a).

17. Bankruptcy Rule 9019, which governs the approval of compromises and settlements, provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed R. Bankr. P. 9019(a). The decision to approve a particular settlement lies within the sound discretion of the Bankruptcy Court. In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006).

18. A starting point in analyzing any proposed settlement agreement is the general policy of encouraging settlements and favoring compromises. See Myers v. Martin (In re Martin), 91 F.3d 389, 394 (3d Cir. 1996). To approve a settlement, a bankruptcy court must determine that such settlement is in the best interest of a debtor's estate. In re Kaiser Aluminum Corp., 339 B.R. 91, 95-6 (D. Del. 2006). In addition, a court must:

> "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal" in light of four factors: (1) the probability of success in the litigation, (2) the likely difficulties in collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, and (4) the paramount interests of the creditors.

Id. at 96 (quoting Martin, 91 F.3d at 393). The United States District Court for the District of Delaware has explained that a court's ultimate inquiry is whether a settlement is fair, reasonable, and in the best interest of a debtor's estate. In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (Bankr. D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)).

19. A court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)) (emphasis added); see also In re World Health Alternatives, Inc., 344 B.R. at 296; In re Key3Media Group, Inc., 336 B.R. 87, 92-3 (Bankr. D. Del. 2005).

20. An analysis of the four factors that bankruptcy courts use to determine whether to approve a compromise or settlement demonstrates that the Settlement Agreement is fair, reasonable, and in the best interests of Orchard's estate and all parties in interest and should therefore be approved.

### i. *Probability of Success in the Rondone Action*

21. Orchard has entered into the Settlement Agreement with a clear understanding of the strengths and weaknesses of the Plaintiffs' claims and the available defenses thereto. This understanding is based on, among other things, motion practice, investigation, research and discovery in and relating to the Rondone Action. Throughout the prosecution of the Rondone Action, Orchard has disputed the Plaintiffs' claims, and has steadfastly defended its employment practices.

22. Notwithstanding the foregoing, Orchard is cognizant that the Plaintiffs take a different view regarding the requirements of applicable law and the facts at issue in the Rondone Action. In light of these opposing views, the complex legal and factual issues in the Rondone Action, and the inherent uncertainty, delay and expense associated with full litigation of the Rondone Action, Orchard believes that settlement of such claims on the terms set forth in the Settlement Agreement is in the best interests of Orchard, the Debtors, their estates and creditors. What is more, the State Court and made an independent finding that the settlement is fair and reasonable in light of the competing parties' claims and defenses. Accordingly, the first factor supports approval of the Settlement Agreement.

### ii. *Difficulties in Collection*

23. Because Orchard is a defendant in the Rondone Action, rather than a plaintiff, the second factor is inapplicable.

### iii.   Complexity, Expense, Inconvenience and Delay Associated with the Rondone Action

24.     As indicated, the Plaintiffs have asserted claims against Orchard, and if not for the Settlement Agreement those claims would be subject to extensive litigation in either the State Court or before the Bankruptcy Court.  Rather than have this litigation delay the Chapter 11 Cases or the administration of the Debtors' estates, Orchard seeks entry of an order simply permitting it to effectuate the settlement as set forth in the Settlement Agreement, which has already been approved by the State Court.  What is more, if the Rondone Action were further litigated it is quite likely that the Debtors' estates would incur significant attorneys' fees and costs and the result would be similar to what Orchards' attorneys have already negotiated.  Accordingly, the third factor supports approval of the Settlement Agreement.

### iv.   Paramount Interest of Creditors

25.     The interests of all of the Debtors' creditors are best served by implementation of the Settlement Agreement because it avoids costly, protracted and uncertain litigation.  Specifically, it removes the many claims that the Plaintiffs could assert against the Debtors' estates and avoids the need for the Debtors' estate to incur significant administrative professional claims that would be incurred relitigating the Rondone Action.  In exchange, the Debtors' estates will only be reduced by $800,000.  This reduction of claims and minimal expenditure of estate resources will maximize the recovery of the Debtors' creditors.  Accordingly, the fourth factor supports approval of the Settlement Agreement.

26.     Based on the foregoing, Orchard submits that cause exists to approve the Settlement Agreement pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

**Notice**

27.     Notice of this Motion has been provided to: (a) the U.S. Trustee, (b) counsel to any official committee appointed by the Court, (c) the Securities and Exchange Commission, (d) counsel for the Plaintiffs, and (e) those parties requesting notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors respectfully submit that no further notice of this Motion is required.

*[remainder of page intentionally left blank]*

WHEREFORE, the Debtors' respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit C</u>: (i) granting the relief requested herein and (ii) granting such other and further relief as the Court may deem proper.

Dated: June 18, 2013  
       Wilmington, Delaware

Respectfully submitted,

 /s/ Stuart M. Brown  
Stuart M. Brown (DE 4050)  
DLA PIPER LLP (US)  
919 North Market Street, Suite 1500  
Wilmington, Delaware 19801  
Telephone: (302) 468-5700  
Facsimile: (302) 394-2341  
Email: stuart.brown@dlapiper.com

-and-

Richard A. Chesley (IL 6240877)  
Chun I. Jang (DE 4790)  
Daniel M. Simon (IL 6297629)  
DLA PIPER LLP (US)  
203 N. LaSalle Street, Suite 1900  
Chicago, Illinois 60601  
Telephone: (312) 368-4000  
Facsimile: (312) 236-7516  
Email: richard.chesley@dlapiper.com  
          chun.jang@dlapiper.com  
          daniel.simon@dlapiper.com

PROPOSED ATTORNEYS FOR DEBTORS AND DEBTORS IN POSSESSION