**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------------------x
                                          :
In re:                                    :  Chapter 11
                                          :
Orchard Supply Hardware Stores Corporation, :  Case No. 13-11565 (CSS)
et al.,¹                                   :
                                          :  (Jointly Administered)
                    Debtors.              :
                                          :  Re: Docket No. 14
-------------------------------------------------------------x
```

**INTERIM ORDER PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363 AND 364
AND RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE (1) AUTHORIZING INCURRENCE BY THE DEBTORS OF POST-
PETITION SECURED INDEBTEDNESS FROM PRE-PETITION TERM LENDERS
WITH PRIORITY OVER CERTAIN SECURED INDEBTEDNESS AND WITH
ADMINISTRATIVE SUPERPRIORITY, (2) GRANTING LIENS, (3) PROVIDING FOR
ADEQUATE PROTECTION, (4) MODIFYING THE AUTOMATIC STAY AND
(5) SCHEDULING A FINAL HEARING
(TERM LENDERS INTERIM DIP ORDER)**

THIS MATTER having come before this Court upon the motion (the "**DIP Motion**") by

Orchard Supply Hardware Stores Corporation and its affiliated debtors, each as debtors and

debtors-in-possession (collectively, the "**Debtors**"), in the above captioned chapter 11 cases

(collectively, the "**Cases**"), for, among other things, entry of an interim order (this "**Interim

Order**") seeking:

(i)      authorization for the Debtors to obtain credit and incur debt, pursuant to

sections 363, 364(c) and 364(d) of the Bankruptcy Code, on an interim basis for a period from

the commencement of the Cases through and including the date of a Final Hearing (as defined

below) (the "**Interim Period**") up to the aggregate committed amount of $12,000,000.00, with

---

¹ The Debtors are the following three entities (the last four digits of their respective taxpayer identification
numbers, if any, follow in parentheses): Orchard Supply Hardware Stores Corporation (4109), Orchard Supply
Hardware LLC (3395) and OSH Properties LLC (3391). The mailing address of each of the Debtors, solely for

up to $6,000,000.00 of which available during the Interim Period, (consisting of a secured superpriority delayed draw term loan credit facility from certain of the Pre-Petition Term Secured Parties (as defined below)) (the **"Term Lender DIP Facility"**) (each on terms and conditions more fully described herein) secured by valid, priming, perfected and enforceable liens (as defined in section 101(37) of chapter 11 of title 11 of the United States Code, as amended (the **"Bankruptcy Code"**) on property of the Debtors' estates pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, and with priority, as to administrative expenses, as provided in section 364(c)(1) of the Bankruptcy Code, subject to the terms and conditions contained herein;

(ii)   (A) to establish the Term Lender DIP Facility pursuant to: (1) the Second Lien Senior Secured Super-Priority Debtor-In-Possession Credit Agreement (as amended, restated, modified or supplemented in accordance with the terms of this Interim Order, the **"Term Lender DIP Credit Agreement"**), substantially in the form filed of record in the Cases, by and between, among others, Orchard Supply Hardware LLC, as borrower and debtor-in-possession, Orchard Supply Hardware Stores Corporation, as guarantor and debtor-in-possession, OSH Properties LLC, as guarantor and debtor-in-possession, and Gleacher Products Corp., as sole administrative agent and collateral agent (in such capacities, the **"Term Lender DIP Agent"**) for the Term Lender DIP Lenders (as defined below), certain Pre-Petition Term Secured Parties and Gleacher Products Corp., as lenders thereunder (together with their respective affiliates, successors and assigns, the **"Term Lender DIP Lenders"**, and collectively with the Term Lender DIP Agent, the **"Term Lender DIP Secured Parties"**); and (2) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the Term Lender

---

purposes of notices and communications, is 6450 Via Del Oro, San Jose, California 95119.

DIP Secured Parties, including, without limitation, security agreements, pledge agreements, notes, guaranties, mortgages, and Uniform Commercial Code ("**UCC**") financing statements, and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as may be amended, restated, modified or supplemented and in effect from time to time, the "**Term Lender DIP Financing Agreements**"); and (B) incur the "Obligations" under and as defined in the Term Lender DIP Credit Agreement (collectively, the "**Term Lender DIP Obligations**");

(iii)    authorization to deliver the proceeds of the Term Lender DIP Facility (net of any amounts used to pay fees, costs and expenses under the Term Lender DIP Financing Agreements) to the DIP Agent[2] for application in accordance with the ABL Interim DIP Order to be used solely for (a) the payment of fees, expenses and costs incurred in connection with the Borrower's and Guarantors' Cases, (b) the payment of transaction expenses, (c) the payment of any adequate protection payments approved in this Interim Order, (d) working capital, capital expenditures, and other general corporate purposes of the Debtors; in each case in a manner consistent with the terms and conditions of the Term Lender DIP Financing Agreements, and in accordance with the Budget (as defined below) (subject to any variances thereto permitted under the terms and conditions of the Term Lender DIP Credit Agreement);

(iv)    to grant, pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, the Term Lender DIP Agent (for the benefit of the Term Lender DIP Secured

---

[2]    Capitalized terms not defined herein have the meanings ascribed to them in the Interim Order Pursuant to 11 U.S.C. Sections 105, 361, 362, 363 AND 364 and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (1) Authorizing Incurrence by the Debtors of Post-Petition Secured Indebtedness from Pre-petition ABL and Supplemental Term Lenders with Priority over all Secured Indebtedness and with Administrative Superpriority, (2) Granting Liens, (3) Authorizing Use of Cash Collateral by the Debtors Pursuant to 11 U.S.C. Section 363 and providing for Adequate Protection, (4) Modifying the Automatic Stay and (5) Scheduling a Final Hearing (as entered on June 18, 2013 and not as may be subsequently amended, the "**ABL Interim DIP Order**").

WEST\241486051.5

Parties) priming, valid, perfected and enforceable liens, subject only to the liens granted to the DIP Agent under the ABL Interim DIP Order to secure the DIP Obligations (the "**Senior DIP Liens**"), the Carve Out (as defined below), the liens granted pursuant to the Pre-Petition ABL Agreements and the Pre-Petition ABL Replacement Liens, and the Priority Liens (as defined below), upon substantially all of the real and personal property of the Debtors as provided in and as contemplated by this Interim Order and the Term Lender DIP Financing Agreements;

      (v)    to grant, pursuant to section 364(c)(1) of the Bankruptcy Code, the Term Lender DIP Agent (for the benefit of the Term Lender DIP Secured Parties) superpriority administrative claim status in respect of all Term Lender DIP Obligations, subject to (i) the Carve Out (as defined below), (ii) the DIP Superpriority Claim, and (iii) the Pre-Petition ABL Superpriority Claim as provided herein;

      (vi)    modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Term Lender DIP Financing Agreements and this Interim Order;

      (vii)    the scheduling of a final hearing (the "**Final Hearing**") to consider entry of an order (the "**Final Order**") granting the relief requested in the DIP Motion on a final basis and approve the form of notice with respect to the Final Hearing; and

      (viii)    to waive any applicable stay (including under Rule 6004 of the Federal Rules of Bankruptcy Procedure) and provide for immediate effectiveness of this Interim Order.

The Bankruptcy Court having considered the DIP Motion, the *Declaration of Chris D. Newman in Support of First Day Pleadings* in support of the Debtors' first day motions and orders, the exhibits attached thereto, the Term Lender DIP Facility and the Term Lender DIP Credit Agreement, and the evidence submitted at the hearing on the DIP Motion and other "first-

day" motions filed by the Debtors (the "**Interim Hearing**"); and in accordance with Rules 2002, 4001(b), (c), and (d), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the local rules of the Bankruptcy Court, due and proper notice of the DIP Motion and the Interim Hearing having been given; an Interim Hearing having been held and concluded on June 18, 2013; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and the Term Lender DIP Facility otherwise determined to be fair and reasonable and in the best interests of the Debtors, their creditors, their estates and their equity holders, and is essential for the continued operation of the Debtors' business and preservation of the value of the Debtors' estates; and it further appearing that the Debtors are unable to secure (i) unsecured credit for money borrowed allowable as an administrative expense under Bankruptcy Code sections 364(b) and 503(b)(1), (ii) unsecured credit for money borrowed under Bankruptcy Code section 364(c)(1) with priority over any or all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) or 507(b), (iii) credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien pursuant to Bankruptcy Code section 364(c)(2), (iv) credit for money borrowed secured by a junior Lien on property of the estates which is subject to a Lien pursuant to Bankruptcy Code section 364(c)(3), or (v) secured credit under Bankruptcy Code section 364(d) from sources other than the Term Lender DIP Lenders and the DIP Lenders on more favorable terms and conditions than those provided in the DIP Credit Agreement, the Term Lender DIP Credit Agreement, the ABL Interim DIP Order and this Interim Order; and there is adequate protection of the interests of holders of Liens on the property of the estates on which Liens are to be granted; and all objections, if any, to the entry of

this Interim Order having been withdrawn, resolved or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.   **Petition Date**.   On June 17, 2013 (the "**Petition Date**"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (this "**Court**" or the "**Bankruptcy Court**").   The Debtors have filed a motion requesting joint administration of the Cases. The Debtors have continued in the management and operation of their business and property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.   No trustee or examiner has been appointed in the Cases.

B.   **Jurisdiction and Venue**.   This Court has jurisdiction over the Debtors, their estates and these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.   **Committee Formation**.   A statutory committee of unsecured creditors (a "**Creditors' Committee**") has not been appointed in these Cases pursuant to section 1102 of the Bankruptcy Code.

D.   **Notice**.   The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 2002, 4001(b), (c), and (d) and Rule 9014, and the local rules of the Bankruptcy Court, notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors, whether by telecopy, email, overnight courier or hand delivery on June 17, 2013, to certain parties in interest, including: (i) the Office of the United

6

States Trustee (the "**U.S. Trustee**"), (ii) each of the Debtors' twenty (20) largest unsecured creditors, (iii) counsel to the Pre-Petition ABL Agent, (iv) counsel to the Pre-Petition Supplemental Term Agent (as defined in the ABL Interim DIP Order), (v) counsel to the Pre-Petition Term Agent, (vi) the Pre-Petition ABL Agent, (vii) the Pre-Petition Supplemental Term Agent, (viii) the Pre-Petition Term Agent, (ix) counsel to the proposed DIP Agent, (x) counsel to the proposed Term Lender DIP Agent, (xi) all secured creditors of record, and (xi) the Office of the United States Attorney General for the District of Delaware.  Under the circumstances, such notice of the Interim Hearing and the relief requested in the DIP Motion is due and sufficient notice and complies with sections 102(1), 364(c) and 364(d) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b), 4001(c), 4001(d) and the local rules of the Bankruptcy Court.

  E.  **Debtors' Acknowledgements and Agreements**.  Without prejudice to the rights of parties in interest as set forth in paragraph 7 below, the Debtors admit, stipulate, acknowledge and agree that (collectively, paragraphs E (i) through E (vii) hereof shall be referred to herein as the "**Debtors' Stipulations**"):[3]

    (i)  **Pre-Petition ABL Agreements**.  Prior to the commencement of the Cases, certain of the Debtors were party to (A) the Third Amended and Restated Senior Secured Credit Agreement dated as of October 17, 2012 (as amended and in effect, the "**Existing ABL Credit Agreement**") with Wells Fargo Bank, National Association, as administrative agent and collateral agent (in such capacities, the "**Pre-Petition ABL Agent**") for itself, certain lenders and other secured parties, Wells Fargo Bank, National Association, as supplemental term agent (in such capacity, the "**Pre-Petition Supplemental Term Agent**") for itself and certain supplemental term lenders (collectively, the "**Pre-Petition ABL Secured Parties**"), (B) the Second Amended and Restated Pledge and Security Agreement (as amended and in effect, the "**Existing ABL Security Agreement**") by and among the Debtors and the Pre-Petition ABL Agent, and (C) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of Pre-Petition ABL Secured Parties, including,

---

[3] OSH Properties LLC is not a party to the Pre-Petition Financing Agreements. References to the "Debtors" in connection with such Pre-Petition Financing Agreements do not include OSH Properties LLC, unless indicated otherwise. OSH Properties LLC has joined as a loan party under the DIP Facility.

without limitation, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as amended, restated, modified or supplemented and in effect, the "**Pre-Petition ABL Financing Agreements**").

(ii)    **Pre-Petition Term Agreements**.    Prior to the commencement of the Cases, certain of the Debtors were party to (A) the Amended and Restated Senior Secured Term Loan Agreement dated as of December 22, 2011 (as amended and in effect, the "**Existing Term Credit Agreement**") with Gleacher Products Corp. (as successor in interest to JPMorgan Chase Bank, N.A.), as administrative agent and collateral agent (in such capacities, the "**Pre-Petition Term Agent**" and together with the Pre-Petition ABL Agent, the "**Pre-Petition Agents**") for itself, certain lenders and other secured parties collectively, the "**Pre-Petition Term Secured Parties**" and together with the Pre-Petition ABL Secured Parties, the "**Pre-Petition Secured Parties**"), and (B) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of Pre-Petition Term Secured Parties, including, without limitation, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as amended, restated, modified or supplemented and in effect, the "**Pre-Petition Term Financing Agreements**" and together with the Pre-Petition ABL Financing Agreements, the "**Pre-Petition Financing Agreements**").

(iii)    **Pre-Petition Debt Amount**. As of the Petition Date, the Debtors were indebted (A) under the Pre-Petition ABL Financing Agreements, on account of extensions of credit in the approximate principal amount of $118,002,752.93 (constituting $83,333,454.39 comprised of ABL Revolving Loans (as defined in the Existing ABL Credit Agreement), $7,125,000.00 comprised of the FILO Term Loan (as defined in the Existing ABL Credit Agreement) and $17,208,187.50 comprised of the Supplemental Term Loan (as defined in the Existing ABL Credit Agreement) (the "**Pre-Petition Supplemental Term Loan**")), plus letters of credit in the approximate stated amount of not less than $10,336,111.04, plus interest accrued and accruing (at the rates (including, to the extent allowed, the default rate) set forth in the Pre-Petition ABL Financing Agreements), costs, expenses, fees (including attorneys' fees and legal expenses) other charges and other obligations, including, without limitation, on account of cash management, credit card, depository, investment, hedging and other banking or financial services, and other obligations, including, without limitation, on account of cash management, credit card, depository, investment, hedging and other banking or financial services secured by the Pre-Petition ABL Financing Agreements (all of the foregoing under this clause (A), collectively, the "**Pre-Petition ABL Debt**"), and (B) under the Pre-Petition Term Financing Agreements on account of a term loan in the approximate principal amount of $128,994,514.48, plus interest accrued and accruing (at the rates (including, to the extent allowed, the default rate) set forth in the Pre-Petition Term Financing Agreements), costs, expenses,

WEST\241486051.5

fees (including attorneys' fees and legal expenses) other charges and other obligations, if any, secured by the Pre-Petition Term Financing Agreements (collectively the **"Pre-Petition Term Debt"** and together with the Pre-Petition ABL Debt, the **"Pre-Petition Debt"**).

(iv)     **Pre-Petition Collateral**.  To secure the Pre-Petition Debt, the Debtors granted security interests and liens (the **"Pre-Petition Liens"**) to each of the Pre-Petition Secured Parties upon substantially all of their property (other than real estate and real estate leases), including (i) all Accounts, (ii) all Chattel Paper, (iii) all Documents, (iv) all Equipment, (v) all Fixtures, (vi) all General Intangibles (including Intellectual Property), (vii) all Goods, (viii) all Instruments, (ix) all Inventory, (x) all Investment Property, (xi) all cash or cash equivalents, (xii) all letters of credit, Letter-of-Credit Rights and Supporting Obligations, (xiii) all Deposit Accounts with any bank or other financial institution, (xiv) all Commercial Tort Claims, (xv) all Contracts, (xvi) all Vehicles, (xvi) all property of any Debtor held by the Pre-Petition ABL Agent, including all property of every description, in the possession or custody of or in transit to the Pre-Petition ABL Agent for any purpose, including safekeeping, collection or pledge, for the account of such Debtor or as to which such Debtor may have any right or power, (xvii) all accessions to, substitutions for and replacements, Proceeds (including Stock Rights), insurance proceeds and products of the foregoing, together with all books and records, customer lists, credit files, computer files, programs, printouts and other computer materials and records related thereto and any General Intangibles at any time evidencing or relating to any of the foregoing, and (xviii) all other Goods and personal property of each Debtor, whether tangible or intangible and wherever located (collectively, the **"Pre-Petition Collateral"**).[4] The priority of the Pre-Petition Liens is governed by an Amended and Restated Intercreditor Agreement dated as of January 29, 2010 between the Pre-Petition ABL Agent and the Pre-Petition Term Agent (as amended (including pursuant to that certain Joinder and First Amendment to Intercreditor Agreement dated as of June 14, 2013, by and among the Pre-Petition ABL Agent, the Pre-Petition Term Agent and the Debtors), supplemented or otherwise modified and in effect, the **"Intercreditor Agreement"**).    Subject to the terms of the Intercreditor Agreement, the Liens of the Pre-Petition Secured Parties shall have priority over all other pre-petition liens of third parties to the extent any such pre-petition third party liens are valid, properly perfected, unavoidable, and otherwise senior to the Pre-Petition Liens under applicable contract or applicable non-bankruptcy law (the **"Priority Liens"**).

(v)     **Pre-Petition Liens**.  (a) As of the Petition Date, the Debtors believe that (i) the Pre-Petition Liens are valid, binding, enforceable, and perfected first-

---

[4]    The acknowledgment and agreement by the Debtors of the Pre-Petition Debt and the related liens, rights priorities and protections granted to or in favor of the Pre-Petition Secured Parties, as set forth herein and in the Pre-Petition Financing Agreements, shall constitute a proof of claim on behalf of the Pre-Petition Secured Parties in these Cases in respect of the Pre-Petition Debt.

priority liens, subject only to any Priority Liens and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (ii) the Pre-Petition Debt constitutes legal, valid and binding obligations of the Debtors, enforceable in accordance with the terms of the Pre-Petition Financing Agreements (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the Pre-Petition Debt exists, and no portion of the Pre-Petition Debt is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iii) the Pre-Petition Debt constitutes allowable secured claims, and (b) on the date that this Interim Order is entered, each Debtor has waived, discharged and released the Pre-Petition Secured Parties, together with their affiliates, agents, attorneys, officers, directors and employees, of any right any Debtor may have (x) to challenge or object to any of the Pre-Petition Debt, (y) to challenge or object to the security for the Pre-Petition Debt, and (z) to bring or pursue any and all claims, objections, challenges, causes of action and/or choses in action arising out of, based upon or related to the Pre-Petition Financing Agreements or otherwise.

The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Financing Agreements , the Pre-Petition Liens, the Pre-Petition Debt, or any claim of the Pre-Petition Secured Parties pursuant to the Pre-Petition Financing Agreements.

**(vi)     Cash Collateral.**  The Pre-Petition Secured Parties have Liens in the Cash Collateral, including all amounts on deposit in the Debtors' banking, checking, or other deposit accounts and all proceeds of Pre-Petition Collateral, to secure the Pre-Petition Debt and, respectively, to the same extent and order of priority as that which was held by such party pre-petition.

F.     **Findings Regarding the Post-Petition Financing.**

(i)     **Need for Post-Petition Financing.**  An immediate need exists for the Debtors to obtain funds from the Term Lender DIP Facility in order to continue operations and to administer and preserve the value of their estates.  The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets and maximize a return for all creditors requires the availability of working capital from the Term Lender DIP Facility, the absence of which would immediately and irreparably harm the Debtors, their estates, their creditors and equity holders and the possibility for a successful reorganization or sale of the Debtors' assets as a going concern or otherwise.

WEST\241486051.5

(ii)    **No Credit Available on More Favorable Terms**.  The Debtors have been unable to obtain (A) unsecured credit for money borrowed allowable under Bankruptcy Code sections 364(b) and 503(b)(1) as an administrative expense, (B) unsecured credit for money borrowed under Bankruptcy Code section 364(c)(1) with priority over any or all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) or 507(b), (C) credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien pursuant to Bankruptcy Code section 364(c)(2), (D) credit for money borrowed secured by a junior Lien on property of the estates which is subject to a Lien pursuant to Bankruptcy Code section 364(c)(3), or (E) secured credit under Bankruptcy Code section 364(d) from sources other than the DIP Lenders and Term Lender DIP Lenders on more favorable terms and conditions than those provided in the DIP Credit Agreement, the Term Lender DIP Credit Agreement, the ABL Interim DIP Order, and this Interim Order.  The Debtors are unable to obtain credit for borrowed money without granting to the Term Lender DIP Secured Parties the Term Lender DIP Protections (as defined below).

(iii)    **Prior Liens**.  Nothing herein shall constitute a finding or ruling by this Court that any Pre-Petition Liens or Priority Liens are valid, senior, perfected and unavoidable. Moreover, nothing shall prejudice (A) the rights of any party in interest including, but not limited to, the Debtors, the DIP Secured Parties, the Term Lender DIP Secured Parties, and any Creditors' Committee to challenge the validity, priority, perfection and extent of any such Priority Liens, or (B) the rights of any Creditors' Committee to challenge the validity, priority, perfection and extent of the Pre-Petition Liens as set forth in this Order.

G.    **Use of Proceeds of the Term Lender DIP Facility**.  Unless otherwise ordered by the Court, proceeds of the Term Lender DIP Facility (net of any amounts used to pay fees,

11

costs and expenses under the DIP Financing Agreements) shall be delivered to DIP Agent for application in accordance with the ABL Interim DIP Order and used solely for (a) the payment of fees, expenses and costs incurred in connection with the Debtors' Cases, (b) the payment of any adequate protection payments approved in this Interim Order, and (c) working capital, capital expenditures, and other general corporate purposes of the Debtors, in each case in a manner consistent with the terms and conditions of the Term Lender DIP Credit Agreement and in accordance with the Budget (subject to any variances thereto permitted under the terms and conditions of the Term Lender DIP Credit Agreement). The Debtors shall provide a copy of any motion seeking entry of an order modifying any of the foregoing to the Term Lender DIP Agent not less than five (5) business days before the hearing thereon and if the Court determines to enter such order, it shall immediately constitute a Term Lender DIP Order Event of Default (defined below) (without the requirement of the notice requirements in Paragraphs 16 and 17 below). As used in this Order, the terms **"Payment in Full," "Paid in Full"** and **"Pay in Full"** shall mean (i) all DIP Obligations have been indefeasibly paid in full in cash (or other arrangements for payment of the DIP Obligations satisfactory to the DIP Agent have been made), (ii) the obligations of the DIP Lenders to provide loans or other financial accommodations to the Debtors under the DIP Financing Agreements have been terminated, (iii) all letters of credit issued under the DIP Financing Agreements have expired or have been returned undrawn or cash collateralized to the extent required under the DIP Credit Agreement, (iv) the DIP Financing Agreements have been terminated in accordance with the terms thereof, (v) the obligations of the Debtors to fund the Pre-Petition ABL Indemnity Account (defined below) have been satisfied, and (vi) all DIP Obligations which survive termination have been cash collateralized to the reasonable satisfaction of the DIP Agent.

12

H. Comitted].

I.    **Application of Proceeds of Term Lender DIP Collateral**.  Unless otherwise ordered by the Court, all proceeds of the sale or other disposition of the Term Lender DIP Collateral (as defined below) shall be applied (a) first, to reduce permanently the obligations under and in accordance with the Pre-Petition ABL Financing Agreements (subject to the Challenge Period rights of certain third parties under paragraph 7 hereof, and the clawback of such reduction in the event of a successful challenge), (b) second, to reduce the DIP Obligations in accordance with the terms and conditions of the DIP Credit Agreement, and (c) in the event the obligations under and in accordance with the Pre-Petition ABL Financing Agreements and the DIP Obligations have been Paid in Full, to reduce the Term Lender DIP Obligations in accordance with the terms and conditions of the Term Lender DIP Credit Agreement.

J.    **Adequate Protection for Pre-Petition Secured Parties**.  Subject to Paragraph 7 below, as a result of the grant of the DIP Liens and Term Lender DIP Liens (as defined below), subordination to the Carve-Out, and the use of Cash Collateral authorized in the ABL Interim DIP Order, the Pre-Petition Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code for any decrease in the value of their respective interests in the Pre-Petition Collateral (including Cash Collateral) resulting from the automatic stay or the Debtors' use, sale or lease of the Pre-Petition Collateral (including Cash Collateral) during the Cases.  As adequate protection, the Pre-Petition Agents (for the benefit of the Pre-Petition Secured Parties) will receive the adequate protection described in the paragraph 4 of this Interim Order.

K.    **Section 552**.  In light of their agreement to subordinate their Liens and superpriority claims (i) to the Carve Out, the DIP Liens, the Liens securing the Pre-Petition ABL Debt (the "**Pre-Petition ABL Liens**") and the Pre-Petition Replacement Liens in the case of the

Term Lender DIP Secured Parties, and (ii) to the Carve Out, the DIP Liens (as defined below), the DIP Obligations, the Term Lender DIP Liens, the Term Lender DIP Obligations in the case of the Pre-Petition Term Secured Parties, the Term Lender Secured Parties and the Pre-Petition Term Secured Parties are each entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply; provided that, the foregoing waiver by the Debtors shall not preclude any other party in interest from asserting the "equities of the case" exception under section 552(b) of the Bankruptcy Code.

L.    **Extension of Financing**. The Term Lender DIP Secured Parties have indicated a willingness to provide financing to the Debtors in accordance with the Term Lender DIP Credit Agreement and subject to (i) the entry of this Interim Order and the Final Order, and (ii) findings by this Court that such financing is essential to the Debtors' estates, that the Term Lender DIP Secured Parties are good faith financiers, and that the Term Lender DIP Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim Order (and the Final Order) and the Term Lender DIP Facility will not be affected by any subsequent reversal, modification, vacatur or amendment of this Interim Order or the Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

M.    **Business Judgment and Good Faith Pursuant to Section 364(e)**. The terms and conditions of the Term Lender DIP Facility and the Term Lender DIP Credit Agreement, and the fees paid and to be paid thereunder, including, without limitation, commitment fees, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. The Term Lender DIP Facility were negotiated in good faith and at arms' length between the Debtors and the Term Lender DIP Secured Parties,

and use of the proceeds to be extended under the Term Lender DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the Term Lender DIP Secured Parties are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

N.    **Relief Essential; Best Interest**.  The relief requested in the DIP Motion (and as provided in this Interim Order) is necessary, essential, and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and personal property.  It is in the best interest of Debtors' estates that the Debtors be allowed to establish the Term Lender DIP Facility contemplated by the Term Lender DIP Credit Agreement.

O.    **Entry of Interim Order**.   For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), and Local Rule 4001-2.

**NOW, THEREFORE**, on the DIP Motion of the Debtors and the record before this Court with respect to the DIP Motion, and with the consent of the Debtors, the Pre-Petition Secured Parties, the DIP Secured Parties , and the Term Lender DIP Secured Parties to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.    **Motion Granted**.  The DIP Motion is granted on an interim basis in accordance with the terms and conditions set forth in the ABL Interim DIP Order, this Interim Order and the Term Lender DIP Credit Agreement.

2.    **Term Lender DIP Financing Agreements**.

    (a)    **Approval of Entry Into Term Lender DIP Financing Agreements**. The Debtors are expressly and immediately authorized and empowered to execute and deliver the Term Lender DIP Financing Agreements and to incur and to perform the Term Lender DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the Term Lender DIP Financing Agreements, and to execute and deliver all instruments, certificates, agreements and documents which may be required or necessary for the performance by the Debtors under the Term Lender DIP Facility and the creation and perfection of the Term Lender DIP Liens (as defined below) described in and provided for by this Interim Order and the Term Lender DIP Financing Agreements.  The Debtors are hereby authorized to do and perform all acts, pay the principal, interest, fees, expenses and other amounts described in the Term Lender DIP Credit Agreement and all other Term Lender DIP Financing Agreements as such become due, including, without limitation, closing fees, administrative fees, commitment fees, letter of credit fees and reasonable attorneys', financial advisors' and accountants' fees and disbursements as provided for in the Term Lender DIP Credit Agreement, which amounts shall not otherwise be subject to further approval of this Court. Upon execution and delivery, the Term Lender DIP Financing Agreements shall represent valid and binding obligations of the Debtors enforceable against the Debtors in accordance with their terms.

    (b)    **Authorization to Borrow**. In order to enable them to continue to operate their business during the Interim Period and subject to the terms and conditions of this Interim Order, the Term Lender DIP Credit Agreement, the other Term Lender DIP Financing Agreements, and the Budget (subject to any variances thereto permitted under the terms and conditions of the Term Lender DIP Credit Agreement), the Debtors are hereby authorized under

the Term Lender DIP Facility to borrow up to a total committed amount of $6,000,000.00 in accordance with the terms and conditions of the Term Lender DIP Credit Agreement.

(c)    **Application of Term Lender DIP Proceeds**.  Unless otherwise ordered by the Court, the proceeds of the Term Lender DIP Facility (net of any amounts used to pay fees, costs and expenses under the Term Lender DIP Credit Agreement) shall be delivered to DIP Agent for application in accordance with the ABL Interim DIP Order and used solely for (i) the payment of fees, expenses and costs incurred in connection with the Debtors' Cases, (ii) the payment of any adequate protection payments approved in this Interim Order, and (iii) working capital, capital expenditures, and other general corporate purposes of the Debtors; in each case in a manner consistent with the terms and conditions of the Term Lender DIP Credit Agreement and in accordance with the Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement).  The Debtors shall provide a copy of any motion seeking entry of an order modifying any of the foregoing to the Term Lender DIP Agent not less than five (5) business days before the hearing thereon and if the Court determines to enter such order, it shall immediately constitute a Term Lender DIP Order Event of Default (defined below) (without the requirement of the notice requirements in Paragraphs 16 and 17 below).

(d)    **Conditions Precedent**.  The Term Lender DIP Secured Parties shall have no obligation to make any loan or advance under the Term Lender DIP Credit Agreement during the Interim Period unless the conditions precedent to make such loan under the Term Lender DIP Credit Agreement have been satisfied in full or waived, as determined by the Term Lender DIP Agent in it reasonable discretion, in accordance with the Term Lender DIP Credit Agreement.

(e)    **Post-Petition Liens**.  Effective immediately upon the execution of this Interim Order, the Term Lender DIP Secured Parties are hereby granted pursuant to sections 361,

362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, priming, continuing, valid, binding, enforceable, non-avoidable and automatically perfected postpetition security interests and liens (collectively, the "**Term Lender DIP Liens**") senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates except as otherwise provided in this Interim Order, (except with respect to any Lien granted to the Agent (as defined in the Store Closing Motion) pursuant to the Store Closing Order (as defined below)) upon and to all presently owned and hereafter acquired assets and real and personal property of the Debtors (collectively, the "**Term Lender DIP Collateral**"), including, without limitation, the following:

(i)     all accounts,

(ii)    all chattel paper,

(iii)   all documents,

(iv)    all equipment,

(v)     all fixtures,

(vi)    all general intangibles (including intellectual property),

(vii)   all goods,

(viii)  all instruments,

(ix)    all inventory,

(x)     all investment property,

(xi)    all deposit accounts, securities account and commodity accounts and any cash or other assets in any such accounts,

(xii)   all owned real estate of the Debtors, all proceeds from the disposition of real estate,  and all proceeds from the disposition of real estate leases; provided that, with respect to the Debtors' non-residential real property

18

leases, and notwithstanding anything to the contrary in this Interim Order or any financing agreements or documents, no liens or encumbrances shall be granted on or extend to the Debtors' real property leases themselves, but rather, any liens granted shall extend only to the proceeds realized upon the sale, assignment, termination, or other disposition of such real property leases,

(xiii)    all letters of credit, letter-of-credit rights and supporting obligations,

(xiv)    all deposit accounts with any bank or other financial institution,

(xv)    all commercial tort claims,

(xvi)    all contracts, including without limitation, the "Agency Agreement" (as defined below) and all amounts payable to the Debtors by the "Agent" (as defined therein) under the Agency Agreement,

(xvii)    "Agent" (as defined therein) under the Agency Agreement,

(xviii)    all vehicles,

(xix)    all property of any Debtor held by the DIP Agent, including all property of every description, in the possession or custody of or in transit to the DIP Agent for any purpose, including safekeeping, collection or pledge, for the account of such Debtor or as to which such Debtor may have any right or power,

(xx)    all books and records related to any of the foregoing,

(xxi)    all property and assets, real and personal, which are not subject to a lien securing borrowed money on the date of the commencement of the Bankruptcy Cases, and

(xxii)  all accessions to, substitutions for and replacements, proceeds (including stock rights), insurance proceeds and products of the foregoing, together with all books and records, customer lists, credit files, computer files, programs, printouts and other computer materials and records related thereto and any General Intangibles at any time evidencing or relating to any of the foregoing; provided, however, that the Term Lender DIP Collateral shall not include (i) bankruptcy recoveries (except for the following, which shall be Term Lender DIP Collateral: (A) the full amount of any such recovery or settlement thereof to the extent arising under section 549 of the Bankruptcy Code, and (B) all amounts necessary to reimburse the Term Lender DIP Secured Parties for the amount of the Carve Out, if any, used to finance the pursuit of such recovery or settlement with respect to all bankruptcy recoveries), and (ii) any other property to the extent that any Requirement of Law of a Governmental Authority applicable thereto prohibits the creation of a security interest therein, but only, in each case, to the extent, and for so long as, such prohibition is not terminated or rendered unenforceable or otherwise deemed ineffective by the UCC or any other Requirement of Law and subject to UCC Sections 9-406, 9-407, 9-408 and 9-409.

(f)    **Term Lender DIP Lien Priority**.  The Term Lender DIP Liens to be created and granted to the Term Lender DIP Secured Parties, as provided herein, (a) are created pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, and (b) are valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or lien or claim to the Term Lender DIP Collateral, and are subject only to: (i) the Carve Out, (ii) the Senior DIP Liens, (iii) the liens granted pursuant to the Pre-Petition ABL Agreements, (iv) the Pre-Petition ABL Replacement Liens, and (v) the Priority Liens.  The Term Lender DIP Liens

shall secure all Term Lender DIP Obligations and the proceeds of the Term Lender DIP

Collateral shall be applied in the same order and priority set forth in the Term Lender DIP Credit

Agreement unless otherwise ordered by the Court.   Except as provided herein and unless

otherwise ordered by the Court, the Term Lender DIP Liens shall not be made subject to or *pari*

*passu* with any lien or security interest by any court order heretofore or hereafter entered in the

Cases and shall be valid and enforceable against any trustee  appointed in the Cases, upon the

conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code or in any other

proceedings related to any of the foregoing (any "**Successor Cases**"), and/or upon the dismissal

of any of the Cases.  Unless otherwise ordered by the Court, the Term Lender DIP Liens shall

not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code or the "equities of the

case" exception of section 552 of the Bankruptcy Code (provided that, the foregoing waiver by

the Debtors shall not preclude any other party in interest from asserting the "equities of the case"

exception under section 552(b) of the Bankruptcy Code), or if approved in the Final Order,

section 506(c) of the Bankruptcy Code.  ~~The Debtors shall provide a copy of any motion seeking~~

~~entry of an order modifying any of the foregoing to the Term Lender DIP Lender not less than~~

~~five (5) business days before the hearing thereon and if the Court determines to enter such order,~~

~~it shall immediately constitute a DIP Order Event of Default (defined below) (without the~~

~~requirement of the notice requirements in Paragraphs 16 and 17 below).~~

        (g)    **Enforceable Obligations**.  The Term Lender DIP Financing Agreements

shall constitute and evidence the valid and binding obligations of the Debtors, which obligations

shall be enforceable against the Debtors, their estates and any successors thereto and their

creditors, in accordance with their terms.

(h)    **Protection of Term Lender DIP Secured Parties and Other Rights**.

Unless otherwise ordered by the Court, from and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the Term Lender DIP Facility only for the purposes specifically set forth in the Term Lender DIP Credit Agreement and this Interim Order and in compliance with the Budget (subject to any variances thereto permitted under the terms and conditions of the Term Lender DIP Credit Agreement). The Debtors shall provide a copy of any motion seeking entry of an order modifying any of the foregoing to the Term Lender DIP Agent not less than five (5) business days before the hearing thereon and if the Court determines to enter such order, it shall immediately constitute a Term Lender DIP Order Event of Default (defined below) (without the requirement of the notice requirements in Paragraphs 16 and 17 below).

(i)    **Superpriority Administrative Claim Status**. Subject to (i) the Carve Out, (ii) the DIP Superpriority Claim, and (iii) the Pre-Petition ABL Superpriority Claim, all Term Lender DIP Obligations shall be an allowed superpriority administrative expense claim (the "**Term Lender DIP Superpriority Claim**" and, together with the Term Lender DIP Liens, the "**Term Lender DIP Protections**") with priority in all of the Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, and 1114 of the Bankruptcy Code, and, upon entry of the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.

22

Unless otherwise ordered by the Court other than the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 328, 330, and 331, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims other than the DIP Superpriority Claim, and the Pre-Petition ABL Superpriority Claim are, or will be, senior to, prior to or on a parity with the Term Lender DIP Protections or the Term Lender DIP Obligations, or with any other claims of the Term Lender DIP Secured Parties arising hereunder. ~~The Debtors shall provide a copy of any motion seeking entry of an order modifying any of the foregoing to the Term Lender DIP Agent not less than five (5) business days before the hearing thereon and if the Court determines to enter such order, it shall immediately constitute a Term Lender DIP Order Event of Default (defined below) (without the requirement of the notice requirements in Paragraphs 16 and 17 below).~~

3. **Authorization to Use Cash Collateral and Proceeds of Term Lender DIP Financing Agreement**.

Pursuant to the terms and conditions of this Interim Order, the Term Lender DIP Facility and the Term Lender DIP Credit Agreement, and in accordance with the Budget (subject to any variances thereto permitted under the terms and conditions of the Term Lender DIP Credit Agreement and as the same may be modified, supplemented or updated from time to time consistent with the terms of the Term Lender DIP Credit Agreement, the "**Budget**"), filed on record in the Cases and introduced into evidence at the Interim Hearing, each Debtor is authorized to use Cash Collateral and to use the advances under the Term Lender DIP Credit Agreement during the period commencing immediately after the entry of the Interim Order and terminating upon, subject to paragraph 17 hereof, notice being provided by the Term Lender DIP

WEST\241486051.5

Agent to the Debtors that (i) a Term Lender DIP Order Event of Default (as defined below) has occurred and is continuing, or (ii) the Term Lender DIP Credit Agreement has been terminated.

    4.    **Adequate Protection for Pre-Petition Secured Parties**.  As adequate protection for the interests of the Pre-Petition Secured Parties in the Pre-Petition Collateral (including Cash Collateral) on account of the granting of the DIP Liens, the Term Lender DIP Liens, subordination to the Carve Out, the Debtors' use of Cash Collateral and other decline in value arising out of the automatic stay or the Debtors' use, sale, depreciation, or disposition of the Pre-Petition Collateral, the Pre-Petition Secured Parties shall receive adequate protection as follows:

    (a)    **Pre-Petition ABL Replacement Liens**.  Solely to the extent of the diminution of the value of the interests of the Pre-Petition ABL Secured Parties in the Pre-Petition Collateral, the Pre-Petition ABL Secured Parties shall have, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code additional and replacement security interests and liens in the DIP Collateral (the "**Pre-Petition ABL Replacement Liens**") which shall be junior only to the DIP Liens, the DIP Superpriority Claim, and the Carve Out.

    (b)    **Pre-Petition ABL Superpriority Claim**.  Solely to the extent of the diminution of the value of the interests of the Pre-Petition ABL Secured Parties in the Pre-Petition Collateral, the Pre-Petition ABL Secured Parties shall have an allowed superpriority administrative expense claim (the "**Pre-Petition ABL Superpriority Claim**") which shall have priority (except with respect to (a) the DIP Liens, (b) the DIP Superpriority Claim, and (c) the Carve Out), in all of the Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever

24

including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 552, 726, 1113, and 1114 of the Bankruptcy Code, and, if approved in the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. Other than the DIP Liens, the DIP Superpriority Claim, and the Carve Out, (i) no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 328, 330, and 331, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and (ii) no priority claims are, or will be, senior to, prior to or on a parity with the Pre-Petition ABL Superpriority Claim.

(c)   **Pre-Petition ABL Indemnity Account.**   Incidental to the payment in full in cash of the Pre-Petition ABL Debt in accordance with the terms of this Interim Order, the Debtors shall establish an account in the "control" (as defined in the UCC) of the Pre-Petition ABL Agent (the **"Pre-Petition ABL Indemnity Account"**), into which the sum of $250,000.00 shall be deposited as security for any reimbursement, indemnification or similar continuing obligations of the Debtors in favor of the Pre-Petition ABL Secured Parties under the Existing ABL Credit Agreement (the **"Pre-Petition ABL Indemnity Obligations"**); provided, however, that the Pre-Petition ABL Indemnity Account shall terminate and all remaining amounts held therein shall be released to the Debtors if the Pre-Petition ABL Debt shall have been indefeasibly paid in full in cash and the earliest to occur of:  (i) the Challenge Period Termination Date (as defined below) if, as of such date, no party has filed or asserted an adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in paragraph 7 hereof providing for such release; or (ii) the date this Court enters a final order closing the Cases. The

Pre-Petition ABL Indemnity Obligations shall be secured by a first priority lien on the Pre-Petition ABL Indemnity Account. The Pre-Petition ABL Indemnity Account and the amounts therein shall remain property of the Debtors and the Debtors' estates under section 541 of the Bankruptcy Code and shall secure payment of the Pre-Petition ABL Indemnity Obligations and the Pre-Petition ABL Debt.

(d) **Pre-Petition Term Replacement Liens**.  Solely to the extent of the diminution of the value of the interests of the Pre-Petition Term Secured Parties in the Pre-Petition Collateral, the Pre-Petition Term Secured Parties shall have, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code additional and replacement security interests and liens in the DIP Collateral (the "**Pre-Petition Term Replacement Liens**" and together with the Pre-Petition ABL Replacement Liens, the "**Pre-Petition Replacement Liens**") which shall be junior only to the DIP Liens, the Term Lender DIP Liens, the DIP Superpriority Claim, the Term Lender DIP Superpriority Claim, the Carve Out, the Pre-Petition ABL Replacement Liens, the Pre-Petition ABL Superpriority Claim, and, with respect to the ABL Facility Primary Collateral (as defined in the Intercreditor Agreement), the Liens securing the Revolver DIP Facility and the Pre-Petition ABL Debt.

(e) **Pre-Petition Term Superpriority Claim**.  Solely to the extent of the diminution of the value of the interests of the Pre-Petition Term Secured Parties in the Pre-Petition Collateral, the Pre-Petition Term Secured Parties shall have an allowed superpriority administrative expense claim (the "**Pre-Petition Term Superpriority Claim**") which shall have priority (except with respect to (a) the DIP Liens, (b) the DIP Superpriority Claim, (b) the Term Lender DIP Liens, (c) the Term Lender DIP Superpriority Claim, (d) the Carve Out, (e) the Pre-Petition ABL Replacement Liens, and (f) the Pre-Petition ABL Superpriority Claim), in all of the

26

Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 552, 726, 1113, and 1114 of the Bankruptcy Code, and, if approved in the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.  Other than the DIP Liens, the Term Lender DIP Liens, the DIP Superpriority Claim, the Pre-Petition ABL Replacement Liens, the Term Lender DIP Superpriority Claim, the Pre-Petition ABL Superpriority Claim, and the Carve Out, (i) no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 328, 330, and 331, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and (ii) no priority claims are, or will be, senior to, prior to or on a parity with the Pre-Petition Term Superpriority Claim.

   (f) **ABL Adequate Protection Payment**.  The Pre-Petition ABL Secured Parties shall receive adequate protection in the form of (i) the use and payment of all proceeds of the sale or other disposition of the DIP Collateral shall be applied to reduce permanently the obligations under and in accordance with the Pre-Petition ABL Financing Agreements (subject to the Challenge Period rights of certain third parties under paragraph 7 hereof) and to reduce the DIP Obligations in accordance with the terms and conditions of the DIP Credit Agreement, and upon entry of the Final Order, for the repayment of any then remaining outstanding amount of the Pre-Petition ABL Debt (including, principal, interest, fees, costs, expenses), and (ii) all letters of credit issued by any Revolving Lender (as defined under the Existing ABL Credit Agreement)

27

under the Existing ABL Credit Agreement shall be deemed issued and "Obligations" under the DIP Credit Agreement. Before entry of the Final Order, all proceeds from collections and sales shall pay down the Pre-Petition ABL Debt (including, principal, interest, fees, costs, expenses), in accordance with the Pre-Petition ABL Financing Agreements, and upon entry of the Final Order, all such proceeds shall be used to repay the Pre-Petition ABL Debt and the DIP Obligations pursuant to the terms of the DIP Credit Agreement.

(g)    **Term Adequate Protection Payment**.  The Pre-Petition Term Secured Parties shall receive adequate protection in the form of the current payment of the reasonable documented out-of-pocket costs and expenses of their attorneys and financial advisors, including such fees and expenses incurred prior to the Petition Date.

5.    **Section 507(b) Reservation**.  Nothing herein shall impair or modify the Pre-Petition Secured Parties' rights under section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Pre-Petition Secured Parties under this Interim Order is insufficient to compensate for the diminution in value of the interests of the Pre-Petition Secured Parties in the Pre-Petition Collateral during the Cases or any Successor Case, provided, however, that any section 507(b) claim granted in the Cases to the Pre-Petition Secured Parties shall be junior in right of payment to all Term Lender DIP Obligations and subject to the Carve Out.

6.    **Post-Petition Lien Perfection**.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Term Lender DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreement) to validate or perfect the

28

Term Lender DIP Liens or to entitle the Term Lender DIP Liens to the priority granted herein. Notwithstanding the foregoing, the Term Lender DIP Agent and the Pre-Petition Agents may, in their discretion, file such financing statements, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Cases.  The Debtors shall execute and deliver to the Term Lender DIP Agent and the Pre-Petition Agents, as applicable, all such financing statements, mortgages, notices and other documents as the Term Lender DIP Agent and the Pre-Petition Agents, as applicable, may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the Term Lender DIP Liens granted pursuant hereto.  The Term Lender DIP Agent and the Pre-Petition Agents, in their discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order. The Term Lender DIP Agent shall, in addition to the rights granted to it under the Term Lender DIP Financing Agreements, be deemed to be the successor in interest to the Pre-Petition Term Secured Parties with respect to all third party notifications in connection with the Pre-Petition Term Financing Agreements, all Pre-Petition Collateral access agreements and all other agreements with third parties (including any agreement with a customs broker, freight forwarder, or credit card processor) relating to, or waiving claims against, any Pre-Petition Collateral, including without limitation, each collateral access agreement duly executed and delivered by

any landlord of the Debtors and including, for the avoidance of doubt, all deposit account control agreements, securities account control agreements, and credit card agreements.

7.     **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**. Nothing in this Interim Order or the Term Lender DIP Credit Agreement shall prejudice whatever rights any Creditors' Committee or any other party in interest with requisite standing (other than the Debtors) may have (a) to object to or challenge the findings herein, including, but not limited to, those in relation to (i) the validity, extent, perfection or priority of the mortgage, security interests and liens of the Pre-Petition Secured Parties in and to the Pre-Petition Collateral, or (ii) the validity, allowability, priority, status or amount of the Pre-Petition Debt, or (b) to bring suit against any of the Pre-Petition Secured Parties in connection with or related to the Pre-Petition Debt, or the actions or inactions of any of the Pre-Petition Secured Parties arising out of or related to the Pre-Petition Debt; provided, however, that, unless any Creditors' Committee or any other party in interest with requisite standing commences a contested matter or adversary proceeding raising such objection or challenge, including without limitation any claim against the Pre-Petition Secured Parties in the nature of a setoff, counterclaim or defense to the Pre-Petition Debt (including but not limited to, those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against any of the Pre-Petition Secured Parties), by the later of (a) 60 days following the appointment of the Creditors' Committee, or (b) if no Creditors' Committee is appointed, 75 days following entry of the Final Order (collectively, (a) and (b) shall be referred to as the "**Challenge Period**," and the date that is the next calendar day after the termination of the Challenge Period, in the event no contested matter or adversary proceeding, as applicable, is commenced during the Challenge Period shall be referred to as the "**Challenge Period Termination Date**"), upon the Challenge Period Termination Date, any and

all such challenges and objections by any party (including, without limitation, any Creditors' Committee and any other party in interest), and all objections and challenges not raised prior to the Challenge Period Termination Date, shall be deemed to be forever waived and barred, and the Pre-Petition Debt shall be deemed to be allowed in full and shall be deemed to be allowed as a fully secured claim within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Cases and the Debtors' Stipulations shall be binding on all creditors, interest holders and parties in interest. To the extent any such objection or complaint is filed, the Pre-Petition Secured Parties shall be entitled to include such costs and expenses, including but not limited to reasonable attorneys' fees, to the extent allowed under section 506(b) of the Bankruptcy Code, incurred in defending the objection or complaint as part of the Pre-Petition Debt, and the Pre-Petition ABL Secured Parties shall be entitled to apply any funds then maintained in the Pre-Petition ABL Indemnity Account to payment of any such costs and expenses owing to the Pre-Petition ABL Secured Parties. Notwithstanding anything in the preceding sentence, if, prior to the Challenge Period Termination Date, the Bankruptcy Court enters an order converting the Case to cases under chapter 7 of the Bankruptcy Code, the Challenge Period shall be extended solely with respect to the chapter 7 trustee for 60 days from the entry of such order. The Debtors shall remain liable if the funds in the Pre-Petition ABL Indemnity Account are insufficient to secure payment of the Pre-Petition ABL Indemnity Obligations and the Pre-Petition ABL Debt as set forth in this Order. Notwithstanding anything herein to the contrary, neither the proceeds of the Term Lender DIP Facility, the Term Lender DIP Collateral, the Pre-Petition Collateral, including the Cash Collateral, nor the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the Term Lender DIP Financing Agreements, the Pre-

Petition Term Financing Agreements or the liens or claims granted under this Interim Order, the Term Lender DIP Financing Agreements or Pre-Petition Term Financing Agreements, (b) assert any claims and defenses or any other causes of action against the Term Lender DIP Agent, the Term Lender DIP Lenders, the Pre-Petition Term Agent, the Pre-petition Term Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the Term Lender DIP Agent's or the Pre-Petition Term Agent's assertion, enforcement or realization on the Pre-Petition Collateral or the Term Lender DIP Collateral in accordance with the Term Lender DIP Financing Agreements, the Pre-Petition Term Financing Agreements, or this Order, (d) seek to modify any of the rights granted to the Term Lender DIP Agent, the Term Lender DIP Lenders, the Pre-Petition Term Agent or the Pre-Petition Term Secured Parties hereunder or under the Term Lender DIP Financing Agreements or Pre-Petition Term Financing Agreements, in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) permitted under the Budget; provided that, notwithstanding anything to the contrary herein, no more than an aggregate of $25,000 of the Pre-Petition Collateral, including the Cash Collateral, the proceeding of the Term Lender DIP Facility, the Term Lender DIP Collateral or the Carve Out may be used by the Creditors' Committee to investigate the validity, enforceability or priority of the obligations under the Existing Term Credit Agreement or the liens under the Pre-Petition Term Financing Agreements, or investigate any claims and defenses or other causes action against the Pre-Petition Term Agent and the Pre-Petition Term Secured Parties. If a party is succesful pursuant to a final non-appealable order in (a) its challenge to (i) the validity, extent, perfection or priority of the mortgage, security

interests and liens of the Pre-Petition Secured Parties in and to the Pre-Petition Collateral, or (ii)

the validity, allowability, priority, status or amount of the Pre-Petition Debt, or (b) its bring suit

against any of the Pre-Petition Secured Parties in connection with or related to the Pre-Petition

Debt, or the actions or inactions of any of the Pre-Petition Secured Parties arising out of or

related to the Pre-Petition Debt, the Pre-Petition Secured Parties shall comply with such order

regarding repayment or clawback of postpetition amounts applied to the Pre-Petition Obligations.

       8.    **Carve Out**.  Subject to the terms and conditions contained in this paragraph 8, the

DIP Liens, the Term Lender DIP Liens, the DIP Superpriority Claims, the Pre-Petition Liens, the

Pre-Petition Replacement Liens, the Term Lender DIP Superpriority Claim, the Pre-Petition

ABL Indemnity Account and the Pre-Petition Superpriority Claims are subordinate only to the

following (the "**Carve Out**"):

        (a)     allowed administrative expenses pursuant to 28 U.S.C. Section 1930(a)(6) for fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee; and

        (b)     professional fees of, and costs and expenses incurred by, professionals or professional firms retained by the Debtors and of any Creditors' Committee (collectively, the "**Case Professionals**") and allowed by the Bankruptcy Court (whether prior to or after delivery of the "**Carve Out Trigger Notice**"[5]), but in all events in accordance with and as may be limited by the Budget (subject to any variances thereto permitted under the terms and conditions of the Term Lender DIP Credit Agreement).   Anything in the immediately preceding sentence to the contrary notwithstanding, following the delivery of the Carve Out Trigger Notice, the Carve Out for Case Professionals shall be limited to the sum of the following: (i) allowed but unpaid fees of, and costs and expenses incurred by Case Professionals prior to the delivery of the Carve Out Trigger Notice, plus (ii) an aggregate amount not to exceed the sum of $500,000.00 (which amount shall be exclusive of "**Reported Fee Accruals**" (as defined herein and provided for in (iii)(x) and (y) below)[6] but inclusive of a sublimit for chapter 7 wind down expenses in an amount of

---

[5] As used herein, "**Carve Out Trigger Notice**" means written notice from the Term Lender DIP Agent to the Debtors, their lead counsel and lead counsel to the Creditors' Committee following the occurrence and during the continuance of an Term Lender DIP Event of Default stating that the Post Carve Out Notice Cap has been invoked.

[6] As used herein, "**Reported Fee Accruals**" shall mean fees, expenses and costs incurred or accrued by the Case Professionals through and including the date of the Term Lender DIP Agent's delivery of a Carve Out Trigger Notice, which amounts shall be reported in arrears by the Debtors to the Term lender DIP Agent on a weekly basis

$100,000.00) (hereinafter, the "**Post Carve Out Trigger Notice Cap**"), plus (iii) the sum of (x) Reported Fee Accruals associated with periods occurring prior to the delivery of the Carve Out Trigger Notice (but only to the extent not covered by and duplicative of amounts included in (i) above), plus (y) any additional fees, costs and expenses accrued or incurred by a Case Professional from the last day included in the prior Reported Fee Accrual of such Case Professional through the date on which the Carve Out Trigger Notice shall have been delivered (in the case of each of (x) and (y), in accordance with and as may be limited by the Budget (subject to any variances thereto permitted under the terms and conditions of the Term Lender DIP Credit Agreement), and only to the extent not covered by and duplicative of amounts included in (i) above); provided that any amounts provided for in (i), (ii) and/or (iii) above shall in all respects be limited and reduced by any amounts actually paid on account of any of the foregoing so as to avoid any unintended double-counting.

Notwithstanding anything to the contrary contained herein, so long as a Carve Out Trigger Notice shall not have been delivered, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under 11 U.S.C. Section 330 and 331, as the same may be due and payable and allowed by the Bankruptcy Court, and the same shall not reduce the Carve Out described in clause (b) above.  The Carve Out shall be funded through an advance under the DIP Facility and paid by the DIP Agent  into a segregated account for distribution in accordance with orders of the Bankruptcy Court reasonably contemporaneously with the delivery of the Carve Out Trigger Notice.  For the avoidance of doubt, the Carve Out shall be senior to the DIP Liens, the Term Lender DIP Liens, the DIP Superpriority Claim, the Pre-Petition Replacement Liens, the Term Lender DIP Superpriority Claim, the Pre-Petition ABL Indemnity Account and the Pre-Petition Superpriority Claim and all claims and any and all other forms of adequate protection, liens or claims securing the DIP Obligations and/or the Pre-Petition Debt granted or recognized as valid.  Any unused portion of the Carve Out shall at all times remain Cash Collateral as provided herein.

---

less any amounts actually paid on account thereof.

9.    **Payment of Compensation**.  Nothing herein shall be construed as consent by the Term Lender DIP Secured Parties or the Pre-Petition Secured Parties to the allowance of any professional fees or expenses of any of the Debtors, any Creditors' Committee or of any other person or shall affect the right of the Term Lender DIP Secured Parties or the Pre-Petition Secured Parties to object to the allowance and payment of such fees and expenses or to permit the Debtors to pay any such amounts not set forth in the Budget (subject to any variances thereto permitted under the terms and conditions of the Term Lender DIP Credit Agreement).

10.    **Section 506(c) Claims**.  Nothing contained in this Interim Order shall be deemed a consent by the Pre-Petition Secured Parties or the Term Lender DIP Secured Parties to any charge, lien, assessment or claim against the Term Lender DIP Collateral, the Pre-Petition Collateral, the Pre-Petition Replacement Liens or the Pre-Petition ABL Indemnity Account under section 506(c) of the Bankruptcy Code or otherwise.

11.    **Collateral Rights**.  Unless the Term Lender DIP Agent has provided its prior written consent or all Term Lender DIP Obligations have been Paid in Full (or will be Paid in Full upon entry of an order approving indebtedness described in subparagraph (a) below or other arrangements for payment of the Term Lender DIP Obligations satisfactory to the Term Lender DIP Agent have been made), it shall ~~be~~ immediately constitute a Term Lender DIP Order Event of Default (as defined belo~~w) (without the requirement of providing notice as provided in Paragraphs 16 and 17 below)~~ if any order is entered in these Cases or in any Successor Case which authorizes any of the following:

(a)    except as permitted in the Term Lender DIP Credit Agreement, the obtaining of credit or the incurring of indebtedness that is (i) secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Term Lender DIP Collateral or the

Pre-Petition Collateral, and/or (ii) entitled to priority administrative status which is equal or senior to those granted to the Term Lender DIP Secured Parties or the Pre-Petition Secured Parties; or

(b)    relief from stay by any person other than the DIP Secured Parties or the Term Lender DIP Secured Parties on all or any portion of the Term Lender DIP Collateral except as permitted in the DIP Credit Agreement and the Term Lender DIP Credit Agreement; or

(c)    the Debtors' return of goods constituting Term Lender DIP Collateral pursuant to section 546(h) of the Bankruptcy Code, except as permitted in the Term Lender DIP Credit Agreement.

12.    **Proceeds of Subsequent Financing**. Without limiting the provisions and protections of paragraph 11 above, if at any time prior to the Payment in Full of all Term Lender DIP Obligations, including subsequent to the confirmation of any Chapter 11 plan or plans (the "**Plan**") with respect to the Debtors, the Debtors' estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) in violation of the Term Lender DIP Credit Agreement, then, to the extent the cash proceeds derived from such credit or debt exceed the amount necessary to Pay in Full the DIP Obligations and the Pre-Petition ABL Debt, such excess cash proceeds shall immediately be turned over to the Term Lender DIP Agent to be applied in accordance with the terms of the Term Lender DIP Credit Agreement, unless otherwise ordered by the Court.

13.    **Commitment Termination Date**. All (i) Term Lender DIP Obligations shall be immediately due and payable, and (ii) authority to use the proceeds of the Term Lender DIP Financing Agreements and to use Cash Collateral shall cease, both on the date that is the earliest to occur of: (i) December 16, 2013, (ii) the date on which the maturity of the Term Lender DIP

36

Obligations is accelerated and the commitments thereunder are irrevocably terminated in accordance with the Term Lender DIP Credit Agreement, (iii) the failure of the Debtors to obtain a Final Order on or before the date which is thirty (30) days after the Effective Date, (iv) ten (10) days after the entry of a sale order authorizing a disposition of all or substantially all of the Debtors' assets under section 363 of the Bankruptcy Code, (v) fourteen (14) days following the entry of an order by this Court confirming the effective date of a Plan of Reorganization, (vi) the date that is one business day after the Term Lender DIP Agent has provided written notice to the Debtors that the Debtors have materially deviated from the Budget (which material deviation shall be determined by the Term Lender DIP Agent in its reasonable discretion), or (vii) the date on which the Debtors obtains or seek to obtain approval for a budget other than the Budget without having obtained the prior written consent of the Term Lender DIP Agent (the "**Commitment Termination Date**").

14.   **Payment from Proceeds of Collateral**.   Until the Pre-Petition ABL Debt has been indefeasibly paid in full in cash and the DIP Obligations have been Paid in Full (or other arrangements for payment satisfactory to the DIP Agent have been made), all products and proceeds of the DIP Collateral shall be remitted directly to the DIP Agent and applied by the DIP Agent in accordance with the terms of the DIP Credit Agreement. ~~unless ord~~ unless otherwise ordered by the Court. Thereafter, all products and proceeds of the Term Lender DIP Collateral shall be remitted directly to the Term Lender DIP Agent and applied by the Term Lender DIP Agent in accordance with the terms of the Term Lender DIP Credit Agreement unless otherwise ordered by the Court. ~~The Debtors shall provide a copy of any motion seeking entry of an order modifying any of the foregoing to the Term Lender DIP Agent not less than five (5) business days before the hearing thereon and if the Court determines to enter such order, it shall immediately constitute a Term Lender DIP Order Event of~~

37

~~Default (defined below) (without the requirement of the notice requirements in Paragraphs 16 and 17 below).~~

15.   **Disposition of Collateral.**   The Debtors shall provide the Term Lender DIP Agent with not less than 5 business days' prior written notice of its intent to take any of the following actions. If the Term Lender DIP Agent does not consent, it shall immediately constitute a Term Lender DIP Order Event of Default (without the requirement of the notice requirements in Paragraphs 16 and 17 below:

(a) sell, transfer, lease, encumber or otherwise dispose of any portion of the Term Lender DIP Collateral, without the prior written consent of the requisite Term Lender DIP Secured Parties required under the Term Lender DIP Credit Agreement (and no such consent shall be implied, from any other action, inaction or acquiescence by the Term Lender DIP Secured Parties or an order of this Court), except for sales of the Debtors' inventory in the ordinary course of business or except as otherwise provided for in the Term Lender DIP Credit Agreement and this Interim Order and approved by the Bankruptcy Court, or

(b) assume, reject or assign any Lease without the prior consultation with the Term Lender DIP Agent, except as otherwise provided for in the Term Lender DIP Credit Agreement.

16.   **Events of Default.** The occurrence any of the following shall constitute a "**Term Lender DIP Order Event of Default**" hereunder: (i) the occurrence of the Commitment Termination Date, (ii) the occurrence of any Event of Default (as defined in the Term Lender DIP Credit Agreement) or (iii) the Debtors shall in any way prime or seek to prime the security interests and Term Lender DIP Liens provided to the Term Lender DIP Secured Parties under this Interim Order by offering a subsequent lender or a party-in-interest a superior or pari passu lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise.  Unless and until

38

the Pre-Petition Debt has been indefeasibly paid in full in cash and the Term Lender DIP Obligations have been Paid in Full (or other arrangements for payment of the DIP Obligations satisfactory to the Term Lender DIP Agent have been made), the protections afforded to Pre-Petition Secured Parties and the Term Lender DIP Secured Parties pursuant to this Interim Order and under the Term Lender DIP Credit Agreement, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting these cases into a Successor Case, and the Term Lender DIP Liens, the Term Lender DIP Superpriority Claim, and the Pre-Petition Replacement Liens shall continue in these proceedings and in any Successor Case, and such Term Lender DIP Liens, Term Lender DIP Superpriority Claim, and Pre-Petition Replacement Liens shall maintain their respective priority as provided by the ABL Interim DIP Order and this Interim Order.

17. **Rights and Remedies Upon Term Lender DIP Order Event of Default**.

(a) Any automatic stay otherwise applicable to the Term Lender DIP Secured Parties is hereby modified so that (i) after the occurrence of any Term Lender DIP Order Event of Default and (ii) at any time thereafter during the continuance of such Event of Default, upon five (5) business days' prior written notice of such occurrence, in each case given to each of the Debtors, counsel to the Debtors, counsel for the Creditors' Committee, if any, the U.S. Trustee, the ABL Agent, and the Term Lender DIP Agent, the Term Lender DIP Secured Parties shall be entitled to exercise their rights and remedies in accordance with the Term Lender DIP Financing Agreements and the Pre-Petition ABL Financing Agreement, and the Intercreditor Agreement. Immediately following the giving of notice by the Term Lender DIP Agent of the occurrence of a Term Lender DIP Order Event of Default: (i) the Debtors shall continue to deliver and cause the delivery of the proceeds of DIP Collateral and Term Lender DIP Collateral to the DIP Agent and

Term Lender DIP Agent as provided in the DIP Credit Agreement, the Term Lender DIP Credit Agreement, the ABL Interim DIP Order, this Interim Order and the Intercreditor Agreement; (ii) the DIP Agent and Term Lender DIP Agent shall continue to apply such proceeds in accordance with the provisions of the ABL Interim DIP Order, this Interim Order, the DIP Credit Agreement, and the Term Lender DIP Credit Agreement; (iii) the Debtors shall have no right to use any of such proceeds, nor any other Cash Collateral other than towards the satisfaction of the DIP Obligations, the Term Lender DIP Obligations, the Pre-Petition ABL Debt, and the Carve Out; and (iv) any obligation otherwise imposed on the DIP Agent, the Term Lender DIP Agent, the DIP Secured Parties, or the Term Lender DIP Secured Parties to provide any loan or advance to the Debtors pursuant to the DIP Facility and Term Lender DIP Facility shall be suspended. Following the giving of written notice by the Term Lender DIP Agent of the occurrence of a Term Lender DIP Order Event of Default to the Debtors and the any Committee(s) appointed in the Cases, if any, any party in interest in the Cases shall be entitled to an emergency hearing before this Court.  If no party in interest contests the Term Lender DIP Agent's exercise of remedies, or if the Debtors, any such Committee, or any other party in interest do timely contest the Term Lender DIP Agent's exercise of its remedies and this Court after notice and hearing declines to stay the enforcement thereof, the automatic stay, as to the Term Lender DIP Secured Parties, shall automatically terminate at the end of such five (5) day notice period.

(b)     Subject to the provisions of paragraph 17(a), upon the occurrence of a Term Lender DIP Order Event of Default, the Term Lender DIP Agent and other Term Lender DIP Secured Parties are authorized to exercise their remedies and proceed under or pursuant to the Term Lender DIP Financing Agreements and the Intercreditor Agreement.  All proceeds realized from any of the foregoing shall be turned over to the DIP Agent for application to the

WEST\241486051.5

Carve Out (provided that any application of such proceeds to the Carve Out shall not reduce the DIP Obligations, the Term Lender DIP Obligations or the Pre-Petition Debt), the DIP Obligations, the Term Lender DIP Obligations, and the Pre-Petition Debt under, and in accordance with the provisions of, the DIP Financing Agreements, the ABL Interim DIP Order, and this Interim Order.

(c)     The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of the Term Lender DIP Credit Agreement as necessary to (1) permit the Debtors to grant the Pre-Petition Replacement Liens, the DIP Liens, and the Term Lender DIP Liens, to fund the Pre-Petition ABL Indemnity Account and to incur all liabilities and obligations to the Pre-Petition Secured Parties, the DIP Secured Parties under the DIP Financing Agreements, the Term Lender DIP Secured Parties under the Term Lender DIP Financing Agreements, the DIP Facility, the Term Lender DIP Facility, the ABL Interim DIP Order and this Interim Order, and (2) authorize the DIP Secured Parties, the Term Lender DIP Secured Parties and the Pre-Petition Secured Parties to retain and apply payments hereunder.

(d)     Nothing included herein shall prejudice, impair, or otherwise affect Pre-Petition Secured Parties,' DIP Secured Parties,' or the Term Lender DIP Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors or the DIP Agent's, the Term Lender DIP Agent's or any other DIP Secured Party's or Term Lender DIP Secured Party's rights, as provided in the DIP Credit Agreement and the Term Lender DIP Credit Agreement, to suspend or terminate the making of loans under the DIP Credit Agreement or the Term Lender DIP Credit Agreement.

(e)     Notwithstanding anything to the contrary in this Interim Order or any financing agreements or document, upon an event of default, the rights of any of the Debtors'

WEST\241486051.5

pre-petition or post-petition lenders, or their agents or representatives, to enter onto the Debtors' leased premises to access and/or liquidate any pre-petition or post-petition collateral shall be limited to (i) any such rights agreed to in writing by the applicable landlord prior to entry onto the leased premises, (ii) any rights that the pre-petition or post-petition lenders, or their agents or representatives, have under applicable non-bankruptcy law, and (iii) such rights as may be granted by the Bankruptcy Court on a separate motion with notice to the applicable landlords of the leased premises and an opportunity for such landlords to respond and be heard.

18.    **Proofs of Claim**.   Each Debtor acknowledges and agrees that both the Pre-Petition Debt and the Term Lender DIP Obligations, and the related liens, rights priorities and protections granted to or in favor of the applicable Pre-Petition Secured Parties and Term Lender DIP Secured Parties, respectively, as set forth herein and in the applicable Pre-Petition Financing Agreement or the Term Lender DIP Credit Agreement, as applicable, shall each constitute a proof of claim on behalf of the applicable Pre-Petition Secured Parties or Term Lender DIP Secured Parties in the Cases.  Neither the Pre-Petition Secured Parties nor the Term Lender DIP Secured Parties will be required to file proofs of claim in the Cases or in any Successor Cases, unless otherwise ordered by the Court, however, each is hereby authorized and entitled to file (and amend and/or supplement) proofs of claim in the Cases or any Successor Cases.

19.    **Other Rights and Obligations**.

(a)    **Good Faith Under Section 364(e) of the Bankruptcy Code. No Modification or Stay of this Interim Order**. Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the Term Lender DIP Facility contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent

order of this or any other Court, the Term Lender DIP Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code, and no such appeal, modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby. Notwithstanding any such modification, amendment or vacation, any claim granted to the Term Lender DIP Secured Parties hereunder arising prior to the effective date of such modification, amendment or vacation of any Term Lender DIP Protections granted to the Term Lender DIP Secured Parties shall be governed in all respects by the original provisions of this Interim Order, and the Term Lender DIP Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits, including the Term Lender DIP Protections granted herein, with respect to any such claim. Since the loans made pursuant to the Term Lender DIP Credit Agreement are made in reliance on this Interim Order, the obligations owed the Term Lender DIP Secured Parties prior to the effective date of any stay, modification or vacation of this Interim Order shall not, as a result of any subsequent order in the Cases or in any Successor Cases, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the Term Lender DIP Secured Parties under this Interim Order and/or the Term Lender DIP Financing Agreements.

(b)   **Expenses**. As provided in the DIP Financing Agreements, Term Lender DIP Financing Agreements, the Existing ABL Credit Agreement and the Existing Term Credit Agreement, all costs and expenses of the DIP Secured Parties, the Term Lender DIP Secured Parties and Pre-Petition Secured Parties in connection with the DIP Financing Agreements and the Pre-Petition Financing Agreements, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees

and expenses of other consultants, indemnification and reimbursement of fees and expenses, and other out of pocket expenses, whether incurred prior to or after the Petition Date, will be paid by the Debtors, whether or not the transactions contemplated hereby are consummated.  Payment of such fees shall not be subject to allowance by the Bankruptcy Court.  Under no circumstances shall professionals for the DIP Secured Parties, the Term Lender DIP Secured Parties, or Pre-Petition Secured Parties be required to comply with the U.S. Trustee fee guidelines.  The Term Lender DIP Secured Parties shall submit copies of their respective professional fee invoices for postpetition fees and expenses to the Debtors, and the Debtors shall send copies of such invoices to the U.S. Trustee and the Creditors' Committee within two (2) business days from receipt thereof, and the U.S. Trustee and the Creditors' Committee shall have ten (10) days from receipt thereof to object in writing to the reasonableness of such invoices; to the extent that the U.S. Trustee or the Creditors' Committee so objects to any such invoices, the Debtors shall remit payment on account of the portion of such invoices to which there has been no objection, and payment of the allegedly unreasonable portion of such invoices will be subject to review by the Bankruptcy Court.

(c) **Notices Under Stalking Horse APA.**  The Debtors shall provide the Term Lender DIP Agent with copies of all notices sent by or to the Debtors pursuant to that certain Asset Purchase Agreement, dated as of June 17, 2013, by and among Orchard Supply Company, LLC, as Purchaser, Orchard Supply Hardware Stores Corporation, as Seller, and Orchard Supply Hardware LLC and OSH Properties LLC, as Company Subsidiaries (the "**Stalking Horse APA**"), within one (1) business day of the sending or receipt of any such notice by the Debtors including, without limitation, those pertaining to any purchase price or working capital adjustment under Article II of the Stalking Horse APA, notices required under Section 8.7

44

of the Stalking Horse APA or any other modification to or update of any of the Schedules attached to or required to be furnished under the Stalking Horse APA.

(d)    **Binding Effect**.  The provisions of this Interim Order shall be binding upon and inure to the benefit of the Term Lender DIP Secured Parties and the Pre-Petition Secured Parties, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 Case.

(e)    **No Waiver**.  The failure of the Pre-Petition Secured Parties and the Term Lender DIP Secured Parties to seek relief or otherwise exercise their rights and remedies under the Term Lender DIP Financing Agreements, the Term Lender DIP Facility, the Pre-Petition Financing Agreements, this Interim Order or otherwise, as applicable, shall not constitute a waiver of any of the Pre-Petition Secured Parties' and the Term Lender DIP Secured Parties' rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the Pre-Petition Secured Parties or the Term Lender DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Pre-Petition Secured Parties and the Term Lender DIP Secured Parties to (i) request conversion of the Cases to cases under chapter 7 of the Bankruptcy Code, dismissal of the Cases, or the appointment of a trustee in the Cases, or (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan or (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of the Term Lender DIP Secured Parties or the Pre-Petition Secured Parties.

(f)     **No Third Party Rights**.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

(g)     **Section 552(b)**.  The Term Lender DIP Secured Parties and the Pre-Petition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the Debtors shall not assert that the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall apply to the Term Lender DIP Secured Parties or the Pre-Petition Secured Parties with respect to proceeds, product, offspring or profits of any of the Pre-Petition Collateral or the Term Lender DIP Collateral, as applicable; provided that the foregoing waiver by the Debtors shall not preclude any other party in interest from asserting the "equities of the case" exception under section 552(h) of the Bankruptcy Code.

(h)     **Amendment**.  The Debtors and the Term Lender DIP Agent may amend, modify, supplement or waive any provision of the Term Lender DIP Financing Agreements without further approval of the Court unless such amendment, modification, supplement or waiver (i) increases the interest rate (other than as a result of the imposition of the Default Rate), (ii) increases the commitments of the Term Lender DIP Lenders under the Term Lender DIP Financing Agreements, (iii) changes the maturity date or (iv) would otherwise be materially adverse to the Debtors.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by on behalf of all the Debtors and the Term Lender DIP Agent (after having obtained the approval of the Term Lender DIP Secured Parties as provided in the Term Lender DIP Financing Agreements) and approved by the Bankruptcy Court.

46

(i)    **Inconsistency**.  In the event of any inconsistency between the terms and conditions of the Term Lender DIP Financing Agreements and of this Interim Order, the provisions of this Interim Order shall govern and control.  For the avoidance of doubt, to the extent that there is a conflict in any provision within the ABL Interim DIP Order and this Interim Order relating to lien priority and/or direction of proceeds, until such time as the obligations under the DIP Facility and the Pre-Petition ABL  have been indefeasibly paid in full the Term Lender DIP Liens, replacement liens, and superpriority claims are and shall be for all purposes junior and subordinate to the Senior DIP Liens, liens granted under the Pre-Petition ABL Agreements, the Pre-Petition ABL Replacement Liens, and the ABL superpriority claims.

(j)    **Enforceability**.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(k)    **Objections Overruled**.  All objections to the DIP Motion to the extent not withdrawn or resolved, are hereby overruled.

(l)    **Waiver of any Applicable Stay**.  Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

20.    **Final Hearing.**

(a)    The Final Hearing to consider entry of the Final Order and final approval of the Term Lender DIP Facility is scheduled for July 15, 2013 at 1:00 p.m. (Eastern) at the United States Bankruptcy Court for the District of Delaware.  If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtors and entered by this Court.

(b)     On or before June 20, 2013, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the **"Final Hearing Notice"**), together with copies of this Interim Order, the proposed Final Order and the DIP Motion, on: (a) counsel for the DIP Agent, Riemer & Braunstein LLP, at Three Center Plaza, Boston, Massachusetts 02108, Attn: Donald E. Rothman, Esq., Fax: (617) 880-3456; (b) counsel for the Pre-Petition ABL Agent, Riemer & Braunstein LLP, at Three Center Plaza, Boston, Massachusetts 02108, Attn: Donald E. Rothman, Esq., Fax: (617) 880-3456; (c) counsel for the Pre-Petition Supplemental Term Agent, Greenberg Traurig LLP, at One International Place, Boston, Massachusetts 02110, Attn: Jeffrey Wolf, Esq., Fax (617) 279-8447; (d) counsel to the Term Lender DIP Agent, Dechert LLP, 1095 Avenue of the Americas, New York, New York 10036, Attn: Michael J. Sage, Esq., Fax (212) 698-0439; (e) counsel to the Pre-Petition Term Agent, Dechert LLP, 1095 Avenue of the Americas, New York, New York 10036, Attn: Michael J. Sage, Esq., Fax (212) 698-0439; (f) the parties having been given notice of the Interim Hearing; (g) any party which has filed prior to such date a request for notices with this Court; (h) counsel for any Creditors' Committee, if any; (i) the Office of the United States. Trustee, 844 King Street, Suite 2207, Wimington, DE 19801, Attn: Tiiara N. A. Patton; (j) the Internal Revenue Service; (k) all of the Debtors' current landlords; and (l) the Securities and Exchange Commission. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Bankruptcy Court no later than June 8, 2013 at 4:00 p.m. (Eastern), which objections shall be served so that the same are received on or before such date by: (a) counsel for the Debtors, DLA Piper LLP (US), 203 North LaSalle Street, Suite 1900, Chicago, Illinois 60601, Attn: Richard Chesley, Esq., Fax (312) 630-5330 and 919 N. Market Street, 15th Floor, Wilmington, DE

48

19801, Attn: Stuart Brown, Esq.; (b) counsel for the DIP Agent, Riemer & Braunstein LLP, at Three Center Plaza, Boston, Massachusetts 02108, Attn: Donald E. Rothman, Esq., Fax: (617) 880-3456; (c) counsel for the Pre-Petition ABL Agent, Riemer & Braunstein LLP, at Three Center Plaza, Boston, Massachusetts 02108, Attn: Donald E. Rothman, Esq., Fax: (617) 880-3456; (d) counsel for the Pre-Petition Supplemental Term Agent, Greenberg Traurig LLP, at One International Place, Boston, Massachusetts 02110, Attn: Jeffrey Wolf, Esq., Fax (617) 279-8447; (e) counsel to the Term Lender DIP Agent, Dechert LLP, 1095 Avenue of the Americas, New York, New York 10036, Attn: Michael J. Sage, Esq., Fax (212) 698-0439; (f) counsel to the Pre-Petition Term Agent, Dechert LLP, 1095 Avenue of the Americas, New York, New York 10036, Attn: Michael J. Sage, Esq., Fax (212) 698-0439; (g) the parties having been given notice of the Interim Hearing; (h) any party which has filed prior to such date a request for notices with this Court; (i) counsel for any Creditors' Committee, if any; and (j) the U.S. Trustee; and shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware.

21.    **Retention of Jurisdiction**. The Bankruptcy Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

SO ORDERED by the Bankruptcy Court this 19th day of June, 2013.

THE HONORABLECHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE