**Exhibit 1**

**(Bidding Procedures)**

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed in connection with the proposed sale of certain tangible and intangible assets related to the business (the "Purchased Assets") of the Debtors that owns Purchased Assets (the "Subsidiaries", and together with the Debtors, the "Sellers"), in connection with the jointly administered chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), lead case number 13-11565 (CSS).

The Sellers entered into that certain asset purchase agreement, dated June 17, 2013 between the Sellers on the one hand and Orchard Supply Company, LLC (the "Stalking Horse Purchaser"), pursuant to which the Stalking Horse Purchaser shall acquire the Purchased Assets on the terms and conditions specified therein (together with the schedules and related documents thereto, the "Stalking Horse Agreement").  The sale transaction pursuant to the Stalking Horse Agreement is subject to competitive bidding as set forth herein.  Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Stalking Horse Agreement.

## I.    ASSETS TO BE SOLD

The Debtors seek to complete a sale of all or substantially all of the Purchased Assets (the "Sale") which include the assets described in Article 1.1 of the Stalking Horse Agreement (the "Assets").  The sale of the Assets is on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Seller, its agents or estate, except to the extent set forth in the purchase agreements of the Successful Bidder (as defined herein) as approved by the Bankruptcy Court.  Except as otherwise provided in such approved purchase agreements, all of the Seller's right, title and interest in and to each Asset to be acquired shall be sold free and clear of all liens, claims, interests and encumbrances thereon and there against (collectively, the "Liens"), such Liens to attach solely to the net proceeds of the sale of such Assets

## II.    THE BID PROCEDURES

In order to ensure that the Debtors receive the maximum value for the Purchased Assets, the Stalking Horse Agreement is subject to higher or better offers, and, as such, the Stalking Horse Agreement will serve as the "stalking-horse" bid for the Assets.

### A.    Provisions Governing Qualifications of Bidders

Unless otherwise ordered by the Bankruptcy Court, in order to participate in the bidding process, prior to the Bid Deadline (defined below), each person other than the Stalking Horse Purchaser who wishes to participate in the bidding process (a "Potential Bidder") must deliver the following to the Notice Parties (as defined below):

> (i)    a written disclosure of the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such bid; and

(ii)    an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Sellers to a Potential Bidder) in form and substance satisfactory to the Debtors, in substantially the same form as signed by the Stalking Horse Purchaser and which shall inure to the benefit of any purchaser of the Purchased Assets; without limiting the foregoing, each confidentiality agreement executed by a Potential Bidder shall contain standard non-solicitation provisions.

A Potential Bidder that delivers the documents and information described above and that the Debtors determine in their reasonable business judgment, after consultation with their advisors and with counsel to (i) the Official Committee of Unsecured Creditors (the "Committee"), (ii) the lender under the Senior Secured Credit Facility (the "Senior Secured Credit Facility Lender") and (iii) the Agent under the Senior Secured Term Loan (the "Term Administrative Agent" and collectively with counsel to the Committee and counsel to the Senior Secured Credit Facility Lender, the "Consultation Parties") is likely (based on availability of financing, experience and other considerations) to be able to consummate the sale, will be deemed a "Qualified Bidder." The Debtors will limit access to due diligence to those parties it believes, in the exercise of their reasonable judgment and after consultation with the Consultation Parties, are pursuing the transaction in good faith.

Notwithstanding anything to the contrary contained herein, in the event that any of the Consultation Parties submit a bid either prior to or during the Auction, the Debtors shall not consult with such party in connection with any issue related to the Auction.

As promptly as practicable after a Potential Bidder delivers all of the materials required above, the Debtors, in consultation with the Consultation Parties will determine and will notify the Potential Bidder if such Potential Bidder is a Qualified Bidder.

### B.    Due Diligence

The Debtors will afford any Qualified Bidder such due diligence access or additional information as the Debtors, in consultation with their advisors, deem appropriate, in their reasonable discretion, which must include differentiations between the diligence provided to strategic and financial bidders, as appropriate, and contractual obligations to limit access to certain proprietary information; provided, however, that with respect to any strategic bidders, the Debtors will, in their reasonable discretion, make reasonable commercial efforts to provide such strategic bidders with the same information provided to the Stalking Horse Purchaser.  The Debtors must promptly advise the Stalking Horse Purchaser in the event any other Potential Bidder receives diligence the Stalking Horse Purchaser has not previously received and shall promptly be provided with access to such diligence materials.  In the event that the Debtors determine, in their reasonable discretion, not to provide certain diligence information to any of the potential bidders, the Debtors shall notify the Consultation Parties and identify the nature of such diligence information and the identity of such potential bidder.  The due diligence period shall extend through and include the Auction date; provided, however, that any Qualified Bid (as defined below) submitted shall be irrevocable until the selection of the Successful Bidder.

C.    **Provisions Governing Qualified Bids**

A bid submitted will be considered a Qualified Bid only if the bid is submitted by a Qualified Bidder and complies with all of the following (a "Qualified Bid"):

      (i)    it states that the applicable Qualified Bidder offers to purchase, in cash (or to the extent applicable, credit bid), the Acquired Assets upon the terms and conditions that the Debtors reasonably determine are no less favorable to the Debtors than those set forth in the Stalking Horse Agreement;

      (ii)    it includes a signed writing that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder, provided that if such bidder is selected as the Successful Bidder its offer shall remain irrevocable until the earlier of (i) the closing of the sale to the Successful Bidder, and (ii) the date that is fifteen (15) days after the Sale Hearing;

      (iii)    confirmation that there are no conditions precedent to the Qualified Bidder's ability to enter into a definitive agreement and that all necessary internal and shareholder approvals have been obtained prior to the bid;

      (iv)    it includes a duly authorized and executed copy of an Asset Purchase Agreement, including the purchase price for the Purchased Assets expressed in U.S. Dollars (the "Purchase Price"), together with all exhibits and schedules thereto, together with copies marked to show any amendments and modifications to the Stalking Horse Agreement ("Marked Agreement") and the proposed orders to approve the sale by the Bankruptcy Court;

      (v)    it includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow the Debtors to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Asset Purchase Agreement;

      (vi)    it has a value to the Debtors, in the Debtors' exercise of their reasonable business judgment, after consultation with their advisors, that is greater than or equal to the sum of the value offered under the Stalking Horse Agreement or $205,000,000, plus (A) the aggregate amount of the Break-Up Fee and Expense Reimbursement (as defined below), or $7,000,000, plus (B) $2,000,000;

      (vii)    it identifies with particularity which executory contracts and unexpired leases the Qualified Bidder wishes to assume, provides details of the Qualified Bidder's proposal for the treatment of related cure costs;

      (viii)    it includes an acknowledgement and representation that the bidder: (A) has had an opportunity to conduct any and all required due diligence regarding the Purchased Assets prior to making its offer; (B) has relied solely upon its own independent review, investigation and/or inspection of any

documents and/or the Purchased Assets in making its bid; (C) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Purchased Assets or the completeness of any information provided in connection therewith or with the Auction (defined below), except as expressly stated in the Asset Purchase Agreement; and (D) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its bid;

(ix)    it includes evidence, in form and substance reasonably satisfactory to the Sellers, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Asset Purchase Agreement;

(x)    except in the case of a bidder submitting a Credit Bid (as defined below) it is accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by the Debtors), certified check or such other form acceptable to the Debtors, payable to the order of the Debtors (or such other party as the Debtors may determine) in an amount equal to $15,000,000;

(xi)    it contains a detailed description of how the Qualified Bidder intends to treat current employees of the Sellers;

(xii)    it contains sufficient information concerning the Qualified Bidder's ability to provide adequate assurance of performance with respect to executory contracts and unexpired leases, which such evidence may include, among other things: (i) the identity of the Qualified Bidder, (ii) evidence of financial wherewithal of the Qualified Bidder and (iii) all documents and other evidence of adequate assurance of future performance by the Qualified Bidder including, without limitation, a contact person for the proposed assignee that counterparties may directly contact in connection with the adequate assurance of future performance;

(xiii)    it contains such other information reasonably requested by the Debtors; and

(xiv)    it is received prior to the Bid Deadline.

Notwithstanding the foregoing but subject in all respects to the Sale Support Agreement, the Stalking Horse Purchaser and the Term Administrative Agent will each be deemed a Qualified Bidder, and the Stalking Horse Agreement will be deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction, and the sale.

The Debtors shall notify the Stalking Horse Purchaser and all Qualified Bidders in writing as to whether or not any bids constitute Qualified Bids (and, with respect to each Qualified Bidder that submitted a bid other than the Stalking Horse Purchaser, whether such Qualified Bidder's bid constitutes a Qualified Bid) promptly after, and in any event on the same day as, the notification to any Qualified Bidder that their bid constitutes a Qualified Bid; provided, however, that such

notification shall not be given later than two (2) business days following the expiration of the Bid Deadline.

### D.     **Bid Deadline**

A Qualified Bidder that desires to make a bid will deliver via email or fax written copies of its bid to the following parties (collectively, the "Notice Parties"): (i) counsel to the Debtors: DLA Piper LLP (US), 203 N. LaSalle Street, Suite 1900, Chicago, Illinois 60601 (Attn: Richard A. Chesley, Esq. (richard.chesley@dlapiper.com)), Facsimile: 312-236-7517; (ii) counsel to the DIP Lender and Senior Secured Credit Facility Lender: Riemer & Braunstein LLP, 3 Center Plaza, Boston, Massachusetts 02108 (Attn: Donald E. Rothman (drothman@riemerlaw.com)), Facsimile: 617-880-3456; (iii) counsel to the Term Administrative Agent and steering committee of lenders under the Senior Secured Term Loan: Dechert LLP, 1095 Avenue of the Americas, New York, NY 10036 (Attn: Michael J. Sage (michael.sage@dechert.com) and Scott M. Zimmerman (scott.zimmerman@dechert.com)), Facsimile: 212-698-3599; (iv) the Term Administrative Agent under the Senior Secured Term Loan: Gleacher & Company, 1290 Avenue of the Americas, New York, NY 10104 (Attn: Joanna W. Anderson (joanna.anderson@gleacher.com)), Facsimile: 212-273-7320; and (v) counsel to the Committee: Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801 (Attn: Bradford Sandler (bsandler@pszjlaw.com) and John Fiero (jfiero@pszjlaw.com)), Facsimile: 415-263-7010, so as to be received by the Debtors not later than 4:00 p.m. EST on August 9, 2013 (the "Bid Deadline"). In addition, the Debtors shall use reasonable efforts to provide each Qualified Bidder those bids submitted by other Qualified Bidders within a reasonable time following the Bid Deadline. The Bid Deadline may not be extended without the written consent of the Stalking Horse Purchaser.

### E.     **Credit Bidding and Sale Support Agreement**

In connection with the Sale of all or any of the Purchased Assets, the Debtors' lenders holding a perfected security interest in such Purchased Assets, may seek to credit bid some or all of their claims for their respective collateral (a "Credit Bid"). A Credit Bid may be applied only to reduce the cash consideration with respect to those Purchased Assets in which the party submitting such Credit Bid holds a security interest. In order to be considered a "Qualified Credit Bid" any Credit Bid submitted must provide for the assumption and/or payment of administrative expense claims of the Debtors and satisfy the Bid Protections provided for in the Bidding Procedures. Notwithstanding anything to the contrary contained herein, the ability to submit a Credit Bid shall be subject to, in all respects, the Sale Support Agreement. Pursuant to the Sale Support Agreement, neither the Term Administrative Agent nor the lenders under the Senior Secured Term Loan shall submit a credit bid under section 363(k) of the Bankruptcy Code; provided, however, that in the event that either (i) the Stalking Horse Purchaser defaults or is otherwise in breach of the Stalking Horse Agreement (it being understood that such Stalking Horse Agreement shall not be amended, and defaults or breaches thereunder shall not be waived, without the consent of the Term Administrative Agent, in each case, such consent shall not be unreasonably withheld) or (ii) the Debtors deem a Competing Bid to be a Qualified Bid, but the Term Administrative Agent believes in its reasonable judgment that such Competing Bid results in a lesser recovery for the Term Lenders, the Term Administrative Agent and the lenders under

the Senior Secured Term Loan shall be entitled to all rights under section 363(k) of the Bankruptcy Code.

**F.    Evaluation of Competing Bids**

A Qualified Bid will be valued based upon several factors including, without limitation, (1) the amount of such bid, (2) the risks and timing associated with consummating such bid, (3) any proposed revisions to the Stalking Horse Agreement, and (4) any other factors deemed relevant by the Debtors in their reasonable discretion.

**G.    No Qualified Bids**

If the Debtors do not receive any Qualified Bids other than the Stalking Horse Agreement, the Debtors will not hold an auction and the Stalking Horse Purchaser will be named the Successful Bidder on the Bid Deadline.

**H.    Auction Process.**

If the Debtors receive one or more Qualified Bids in addition to the Stalking Horse Agreement, the Debtors will conduct an auction (the "Auction") of the Purchased Assets, which shall be transcribed at 10:00 a.m. (EDT) on August 14, 2013, at the offices of DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020, or such other location as shall be timely communicated to all entities entitled to attend the Auction. The Auction shall run in accordance with the following procedures:

(i)    only the Debtors, the Stalking Horse Purchaser, the Senior Secured Credit Facility Lenders, the lenders under the Senior Secured Term Loan agreement, the Term Administrative Agent and the Committee, and the advisors to each of the foregoing, and any other Qualified Bidder that has timely submitted a Qualified Bid, shall attend the Auction in person, and only the Stalking Horse Purchaser and such other Qualified Bidders will be entitled to make any subsequent bids at the Auction; provided, however, that in the event a creditor wishes to attend the Auction, such creditor must provide written notice to the Debtors, no later than five (5) business days prior to the Auction, of its intent to attend the Auction, which such request shall not be unreasonably denied;

(ii)    each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

(iii)    in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bidder and Back-Up Bidder at the conclusion of the Auction. At least one (1) business day prior to the Auction, the Debtors will provide copies of the Qualified Bid or combination of Qualified Bids which the Debtors believe, in their reasonable discretion after consultation with the Consultation Parties, is the highest or otherwise best offer (the "Starting Bid") to the Stalking Horse Purchaser and all other Qualified Bidders;

(iv)    all Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction and the actual identity of each Qualified Bidder will be disclosed on the record at the Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person;

(v)    the Debtors, after consultation with their advisors, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules are (i) not inconsistent with the Bidding Procedures appended as Exhibit 1 to the Bidding Procedures Order, the Bankruptcy Code, or any order of the Court entered in connection herewith, and (ii) disclosed to each Qualified Bidder at the Auction; and

(vi)    bidding at the Auction will begin with the Starting Bid and continue in bidding increments (each a "Subsequent Bid") providing a net value to the estate of at least an additional $2,000,000 above the prior bid. After the first round of bidding and between each subsequent round of bidding, the Debtors, after consultation with the Consultation Parties, shall announce the bid (and the value of such bid) that it believes to be the highest or otherwise better offer (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid. Each Qualified Bidder will only have one opportunity to pass. Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Stalking Horse Purchaser), the Debtors will give effect to the Break-Up Fee and Expense Reimbursement payable to the Stalking Horse Purchaser under the Stalking Horse Agreement as well as any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Debtors.

## I.    Selection of Successful Bid

Prior to the conclusion of the Auction, the Debtors, in consultation with their advisors, and in consultation with the Consultation Parties, will review and evaluate each Qualified Bid in accordance with the procedures set forth herein and determine which offer is the highest or otherwise best offer from among the Qualified Bidders (including the Stalking Horse Purchaser) submitted at the Auction (one or more such bids, collectively the "Successful Bid" and the bidder(s) making such bid, collectively, the "Successful Bidder"), and communicate to the Stalking Horse Purchaser and the other Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bid. The determination of the Successful Bid by the Debtors at the conclusion of the Auction shall be final, subject only to approval by the Bankruptcy Court.

The Debtors shall, no later than two (2) business days following selection of the Successful Bidder, serve notice of the identity of the Successful Bidder to all counterparties of executory

contracts and unexpired leases to be assumed and assigned to the Successful Bidder by fax, email or, if neither is available, overnight mail.

Within two (2) business days after adjournment of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made. Within two (2) business days after adjournment of the Auction, the Debtors shall file a notice identifying the Successful Bidder with the Bankruptcy Court.

The Debtors will sell the Purchased Assets to the Successful Bidder pursuant to the terms of the Successful Bid upon the approval of such Successful Bid by the Bankruptcy Court at the Sale Hearing (as defined below).

### J.    **Return of Deposits**

All deposits shall be returned to each bidder not selected by the Debtors as the Successful Bidder or the Back-Up Bidder (as defined below) no later than five (5) business days following the conclusion of the Auction.

### K.    **Back-Up Bidder**

If an Auction is conducted, the Qualified Bidder or Qualified Bidders with the next highest or otherwise best Qualified Bid, as determined by the Debtors in the exercise of their business judgment, at the Auction shall be required to serve as a back-up bidder (the "Back-Up Bidder") and keep such bid open and irrevocable until fifteen days after the Sale Hearing. Following the Sale Hearing, if the Successful Bidder fails to consummate the approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Bankruptcy Court; provided, however, that assumption and assignment of Executory Contracts and Unexpired Leases shall not occur absent opportunity by counterparties to object to the ability of the Back-Up Bidder to provide adequate assurance of future performance, whereupon, the Court may hold a hearing to address such objections.

## III.    **THE BID PROTECTIONS**

In recognition of this expenditure of time, energy, and resources, the Debtors have agreed that if the Stalking Horse Purchaser is not the Successful Bidder, the Debtors will pay the Stalking Horse Purchaser (i) an aggregate fee of approximately $6,150,000, which is equal to 3% of the aggregate Stalking Horse Purchase Price, prior to any closing adjustments (the "Break-Up Fee"), and (ii) an amount in cash equal to the aggregate amount of the reasonable fees, actual and documented costs and expenses (including, without limitation, all reasonable fees, actual and documented expenses and disbursements of any representatives of Stalking Horse Purchaser) paid or incurred by or on behalf of Stalking Horse Purchaser relating to or in connection with its bid (the "Expense Reimbursement"), subject to a cap of $850,000. The Stalking Horse Purchaser shall provide reasonable documentation of the Expense Reimbursement to the Debtors and the Office of the United States Trustee. The Break-Up Fee and Expense Reimbursement shall be payable as provided for pursuant to the terms of the Stalking Horse Agreement;

provided, however, that no Break-Up Fee or Expense Reimbursement shall be payable to the Stalking Horse Purchaser if the Stalking Horse Purchaser is the Back-Up Bidder and the Alternative Transaction does not close.

The Debtors have further agreed that their obligation to pay the Break-Up Fee and Expense Reimbursement pursuant to the Stalking Horse Agreement shall survive termination of the Stalking Horse Agreement and shall, to the extent owed by the Debtors, constitute an administrative expense claim under section 503(b) of the Bankruptcy Code and shall be payable within two (2) business days under the terms and conditions of the Stalking Horse Agreement and the Bid Procedures Order upon prior notice to the Committee, notwithstanding section 507(a) of the Bankruptcy Code; provided, however, that the payment of the Break-Up Fee and Expense Reimbursement shall only be made upon payment in full under the DIP Financing Agreements.

## IV.    Sale Hearing

The Debtors will seek entry of an order from the Bankruptcy Court at a hearing (the "Sale Hearing") to begin on or before August 20, 2013 (prevailing Eastern Time), to approve and authorize the sale transaction to the Successful Bidder on terms and conditions determined in accordance with the Bid Procedures.

**Exhibit 2**

**(Procedures Notice)**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------x
                                          :
In re:                                    :  Chapter 11
                                          :
Orchard Supply Hardware Stores Corporation, :  Case No. 13-11565 (CSS)
et al.,¹                                   :
                                          :  (Jointly Administered)
              Debtors.                    :
                                          :  Re: Dkt. No. 15 & __
------------------------------------------------------------x
```

## NOTICE OF SALE PROCEDURES,
## AUCTION DATE AND SALE HEARING

**PLEASE TAKE NOTICE** that on June 17, 2013, the above-captioned debtors and debtors in possession (the "Debtors") filed the Motion of the Debtors and Debtors in Possession Pursuant to Section 105(a), 363 and 365 of the Bankruptcy Code for an Order (i)(a) Approving Procedures in Connection With the Sale of Certain of the Substantially all of the Debtors' Assets; (b) Approving the Stalking Horse Protections; (c) Approving the Sale Support Agreement; (d) Scheduling Related Auction and Hearing to Consider Approval of Sale; (e) Approving Procedures Related to the Assumption of Certain of the Debtors' Executory Contracts and Unexpired Leases; (f) Approving the Form and Manner of Notice Thereof; and (g) Granting Related Relief; and (ii)(a) Authorizing the Sale of Substantially all of the Debtors' Assets Pursuant to the Successful Bidder's Asset Purchase Agreement Free and Clear of Liens, Claims, Encumbrances, and Other Interests (b) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (c) Granting Related Relief (the "Motion")² The Debtors seek, among other things, to sell certain tangible and intangible assets related to the business (the "Purchased Assets") of the Debtors that own Purchased Assets to the successful bidder (the "Successful Bidder"), at an auction free and clear of all liens, claims, encumbrances and other interests pursuant to sections 363 and 365 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that, on July __, 2013, the Bankruptcy Court entered an order (the "Bidding Procedures Order") approving the Motion and the bidding procedures (the "Bidding Procedures"), which set the key dates and times related to the Sale of the Purchased Assets, including those set forth below:

---

[1]     The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Orchard Supply Hardware Stores Corporation (4109), Orchard Supply Hardware LLC (3395) and OSH Properties LLC (3391). The mailing address of each of the Debtors, solely for purposes of notices and communications, is 6450 Via Del Oro, San Jose, California 95119.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

| August 9, 2013 @ 4:00 p.m. (EDT) | Objection Deadline for (i) Objections to Sale (ii) Cure Objections and (iii) Adequate Assurance Objections |
|---|---|
| August 14, 2013 @ 10:00 a.m. (EDT) | Auction Date |
| August 19, 2013 @ 12:00 p.m. (EDT) | Deadline for Counterparties to Executory Contracts and Unexpired Leases to File Assignment Objections in the Event the Stalking Horse Purchaser is not the Successful Bidder |
| August 20, 2013 @ _:00 _.m. (EDT) | Hearing to Approve Sale |

All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures. To the extent that there are any inconsistencies between the Bidding Procedures Order (including the Bidding Procedures) and the summary description of its terms and conditions contained in this Notice, the terms of the Bidding Procedures Order shall control.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures, an auction (the "Auction") to sell the Purchased Assets will be conducted on August 14, 2013, starting at 10:00 a.m. (prevailing Eastern Time) (the "Auction Date") at the offices of DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020, or such other location as shall be timely communicated to all entities entitled to attend the Auction.

**PLEASE TAKE FURTHER NOTICE** that, the Debtors shall, no later than two (2) business days following selection of the Successful Bidder, serve notice of the identity of the Successful Bidder to all counterparties of executory contracts and unexpired leases to be assumed and assigned to the Successful Bidder by fax, email or, if neither is available, overnight mail. Any counterparties of executory contracts and unexpired leases may request fax or email notice from the Debtors by providing such contact information to the undersigned counsel.

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held to approve the sale of the Purchased Assets to the Successful Bidder (the "Sale Hearing") before the Honorable Christopher S. Sontchi, United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801,5th Floor, Courtroom #6, on August 20, 2013 at ____:____ _.m. (prevailing Eastern Time), or at such time thereafter as counsel may be heard or at such other time as the Bankruptcy Court may determine. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing. Objections to the Sale shall be filed and served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on August 16, 2013 by: (i) counsel to the Debtors: DLA Piper LLP (US), 203 N. LaSalle Street, Suite 1900, Chicago, Illinois 60601 (Attn: Richard A. Chesley, Esq. (richard.chesley@dlapiper.com)); (ii) counsel to the Stalking Horse Purchaser: Hunton & Williams, LLP, 1445 Ross Avenue, Suite 3700, Dallas, Texas 75202, Attention: Gregory G. Hesse); (iii) counsel to the DIP Lender: Riemer & Braunstein LLP, 3 Center Plaza, Boston,

Massachusetts 02108 (Attn: Donald E. Rothman); (iv) counsel to the Term Administrative Agent and steering committee of lenders under the Senior Secured Term Loan: Dechert LLP, 1095 Avenue of the Americas, New York, NY 10036 (Attn: Michael J. Sage and Scott M. Zimmerman); (v) counsel to the Committee: Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801 (Attn: Bradford Sandler and John Fiero), Facsimile: 415-263-7010; and (vi) the Office of the United States Trustee:  U.S. Trustee, 844 King Street, Suite 2207, Lockbox #35, Wilmington, Delaware, 19899-0035 (Attn:  Tiiara Patton, Esq.).

**PLEASE TAKE FURTHER NOTICE** that this Notice of the Auction and Sale Hearing is subject to the full terms and conditions of the Motion, Bidding Procedures Order and Bidding Procedures, which shall control in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety.  A copy of the Motion, Bidding Procedures and/or Bidding Procedures Order may be obtained from BMC Group, Inc., Attn: OSH Claims Processing, PO Box 3020, Chanhassen, MN 55317-3020, by calling the following toll-free number: (888) 909-0100, or by visiting www.bmcgroup.com/OSH.

Dated:  July __, 2013
       Wilmington, Delaware

Respectfully submitted,

_____

Stuart M. Brown (DE 4050)
DLA PIPER LLP (US)
919 North Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone:  (302) 468-5700
Facsimile:  (302) 394-2341
Email:  stuart.brown@dlapiper.com

-and-

Richard A. Chesley (IL 6240877)
Chun I. Jang (DE 4790)
Daniel M. Simon (IL 6297629)
DLA PIPER LLP (US)
203 N. LaSalle Street, Suite 1900
Chicago, Illinois 60601
Telephone:  (312) 368-4000
Facsimile:  (312) 236-7516
Email:    richard.chesley@dlapiper.com
          chun.jang@dlapiper.com
          daniel.simon@dlapiper.com

PROPOSED ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

**Exhibit 3**

**(Cure Notice)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------x
                                           :
In re:                                     :  Chapter 11
                                           :
Orchard Supply Hardware Stores Corporation, :  Case No. 13-11565 (CSS)
et al.,¹                                   :
                                           :  (Jointly Administered)
                                           :
             Debtors.                      :
                                           :  Re: Dkt. No. 15 & __
-------------------------------------------------------------x
```

### NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS
### AND UNEXPIRED LEASES OF THE SALE DEBTORS
### THAT MAY BE ASSUMED AND ASSIGNED

**PLEASE TAKE NOTICE** that, on June 17, 2013, the above-captioned debtors and debtors in possession (the "Debtors") commenced chapter 11 bankruptcy cases. On June 17, 2013, the Debtors filed the *Motion of the Debtors and Debtors in Possession Pursuant to Section 105(a), 363 and 365 of the Bankruptcy Code for an Order (i)(a) Approving Procedures in Connection With the Sale of Substantially All of the Debtors' Assets; (b) Approving the Stalking Horse Protections; (c) Approving the Sale Support Agreement; (d) Scheduling Related Auction and Hearing to Consider Approval of Sale; (e) Approving Procedures Related to the Assumption of Certain of the Debtors' Executory Contracts and Unexpired Leases; (f) Approving the Form and Manner of Notice Thereof; and (g) Granting Related Relief; and (ii)(a) Authorizing the Sale of Substantially All of the Debtors' Assets Pursuant to the Successful Bidder's Asset Purchase Agreement Free and Clear of Liens, Claims, Encumbrances, and Other Interests (b) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (c) Granting Related Relief* (the "Motion").²

**PLEASE TAKE FURTHER NOTICE** that, on July __, 2013, the Court entered an Order (the "Bidding Procedures Order") approving, among other things, the Bidding Procedures requested in the Motion, which Bidding Procedures Order governs (i) the bidding process for the sale of certain tangible and intangible assets related to the business (the "Purchased Assets") of the Debtors that own Purchased Assets and (ii) procedures for the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases.

---

1    The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Orchard Supply Hardware Stores Corporation (4109), Orchard Supply Hardware LLC (3395) and OSH Properties LLC (3391). The mailing address of each of the Debtors, solely for purposes of notices and communications, is 6450 Via Del Oro, San Jose, California 95119.

2    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Motion also seeks Court approval of the sale (the "Sale") of the Purchased Assets to the Successful Bidder, free and clear of all liens, claims, interests and encumbrances pursuant to section 363 of the Bankruptcy Code, including the assumption by the Debtors and assignment to the buyer of certain executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code (the "Assumed Executory Contracts").

**PLEASE TAKE FURTHER NOTICE** that an evidentiary hearing (the "Sale Hearing") to approve the Sale and authorize the assumption and assignment of the Assumed Executory Contracts will be held on August 20, 2013 at ____:____ _.m. (prevailing Eastern Time), before the Honorable Christopher S. Sontchi, United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801,5th Floor, Courtroom #6.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that, consistent with the Bidding Procedures Order, the Debtors may seek to assume an executory contract or unexpired lease to which you may be a party.  The Assumed Executory Contract is described on Exhibit 1 attached to this Notice.  The amount shown on Exhibit 1 hereto as the "Cure Amount" is the amount, if any, based upon the Debtors' books and records, which the Debtors assert is owed to cure any defaults existing under the Assumed Executory Contract.

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the Cure Amount shown for the Assumed Executory Contract(s) on Exhibit 1 to which you are a party, you must file in writing with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, an objection on or before 4:00 p.m. (prevailing Eastern Time) on August 9, 2013.  Any objection must set forth in specificity any cure amount as alleged by you to the extent it differs from the amount, if any, specified by the Debtors and identify any non-monetary defaults.  If a contract or lease is assumed and assigned pursuant to a Court order approving same, then unless you properly file and serve an objection to the Cure Amount contained in this Notice, you will receive at the time of the closing of the sale (or as soon as reasonably practicable thereafter), the Cure Amount set forth herein, if any, with payment made pursuant to the terms of the applicable purchase agreement and any order approving the Sale.  Any non-debtor party to an Assumed Executory Contract that fails to timely file and serve an objection to the Cure Amounts shall be forever barred from asserting that a Cure Amount is owed in an amount in excess of the amount, if any, set forth in the attached Exhibit A.

**PLEASE TAKE FURTHER NOTICE** that if you have any other objection to the Debtors' assumption and assignment of the Assumed Executory Contract to which you may be a party (other than an objection to the Cure Amount, which Cure Amount objection must be filed as set forth above), including without limitation, with respect to the buyer's ability to provide adequate assurance of future performance under the Assumed Executory Contract, you also must file that objection in writing no later than 4:00 p.m. (prevailing Eastern Time) on August 9, 2013; provided, however, that in the event the Stalking Horse Purchaser is not the Successful Bidder at the Auction, any party may file such objection by no later than 12:00 p.m. (prevailing Eastern Time) on August 19, 2013.

**PLEASE TAKE FURTHER NOTICE** that any objection you may file must be served so as to be received by the following parties by the applicable objection deadline date and time: (i) counsel to the Debtors: DLA Piper LLP (US), 203 N. LaSalle Street, Suite 1900, Chicago, Illinois 60601 (Attn: Richard A. Chesley, Esq. (richard.chesley@dlapiper.com)); (ii) counsel to the Stalking Horse Purchaser: Hunton & Williams, LLP, 1445 Ross Avenue, Suite 3700, Dallas, Texas 75202, Attention: Gregory G. Hesse); (iii) counsel to the DIP Lender: Riemer & Braunstein LLP, 3 Center Plaza, Boston, Massachusetts 02108 (Attn: Donald E. Rothman); (iv) counsel to the Term Administrative Agent and steering committee of lenders under the Senior Secured Term Loan: Dechert LLP, 1095 Avenue of the Americas, New York, NY 10036 (Attn: Michael J. Sage and Scott M. Zimmerman); (v) counsel to the Committee: Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801 (Attn: Bradford Sandler and John Fiero), Facsimile: 415-263-7010; and (vi) the Office of the United States Trustee:  U.S. Trustee, 844 King Street, Suite 2207, Lockbox #35, Wilmington, Delaware, 19899-0035 (Attn: Tiiara Patton, Esq.).

**PLEASE TAKE FURTHER NOTICE** that the buyer shall be responsible for satisfying any requirements regarding adequate assurance of future performance that may be imposed under sections 365(b) and (f) of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, in connection with the proposed assignment of any Assumed Executory Contract.  The Court shall make its determinations concerning adequate assurance of future performance under the Assumed Executory Contracts pursuant to 11 U.S.C. §§ 365(b) and (f) at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that, in the event that the Debtors and the non-debtor party cannot resolve any Cure Amount Objection, the Debtors shall segregate any disputed Cure Amounts ("Disputed Cure Amounts") pending the resolution of any such disputes by the Court or mutual agreement of the parties.  Cure Amount Objections may be resolved by the Court at the Sale Hearing, or at a separate hearing either before or after the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that nothing contained herein shall obligate the Debtors to assume any Assumed Executory Contracts or to pay any Cure Amount.[3]

PLEASE TAKE FURTHER NOTICE THAT IF YOU DO NOT TIMELY FILE AND SERVE AN OBJECTION AS STATED ABOVE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITH NO FURTHER NOTICE.

ANY NON-DEBTOR PARTY TO ANY ASSUMED EXECUTORY CONTRACT WHO DOES NOT FILE A TIMELY OBJECTION TO THE CURE AMOUNT FOR SUCH ASSUMED EXECUTORY CONTRACT IS DEEMED TO HAVE CONSENTED TO SUCH CURE AMOUNT.

---

[3] "Assumed Executory Contracts" are those Contracts and Leases that the Debtors believe may be assumed and assigned as part of the orderly transfer of the Purchased Assets; however, the Successful Bidder may choose to exclude certain of the Debtors' Contracts or Leases from the list of Assumed Executory Contracts as part of their Qualifying Bid, causing such Contracts and Leases not to be assumed by the Debtors.

Dated: July __, 2013
      Wilmington, Delaware

Respectfully submitted,

_____

Stuart M. Brown (DE 4050)
DLA PIPER LLP (US)
919 North Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: stuart.brown@dlapiper.com

      -and-

Richard A. Chesley (IL 6240877)
Chun I. Jang (DE 4790)
Daniel M. Simon (IL 6297629)
DLA PIPER LLP (US)
203 N. LaSalle Street, Suite 1900
Chicago, Illinois 60601
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email:   richard.chesley@dlapiper.com
        chun.jang@dlapiper.com
        daniel.simon@dlapiper.com

PROPOSED ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

## Exhibit 1

**(Assumed Executory Contracts)**