# **<u>EXHIBIT A</u>**

**(Engagement Letter)**

## REAL ESTATE CONSULTING AND ADVISORY
## SERVICES AGREEMENT

This Agreement (this "Agreement") is entered into as of May 14, 2013, by and between A&G Realty Partners, LLC (the "Consultant" or "A&G") and Orchard Supply Hardware LLC (the "Company").

WITNESSETH:

**WHEREAS**, the Company's business requires the Company to lease (each a "Lease" and collectively the "Leases") certain real properties (each a "Property" and collectively the "Properties") as set forth on **Exhibit "A"** attached hereto and made a part hereof;

**WHEREAS**, Company and Consultant are parties to that certain Real Estate Consulting Services Agreement, dated September 25, 2012 (the "Original Agreement"), as amended by that certain Amendment No. 1 to Real Estate Consulting Services Agreement, dated March 11, 2013 (the "First Amendment", and together with the Original Agreement, the "Original Real Estate Services Agreement");

**WHEREAS**, pursuant to the First Amendment and in consideration of the sum of Thirty Thousand Dollars ($30,000) (the "Evaluation Fee") the Company prepared a lease-by-lease Property valuation comparing the rent payable under each Lease against market rent in order to ascertain whether the rent under such Lease is above or below market value and by how much;

**WHEREAS**, the Company desires the Consultant to provide those consulting and advisory services described below; and

**WHEREAS**, it is contemplated that the Company may seek to consummate a restructuring or sale of its assets pursuant to Chapter 11 of the United States Bankruptcy Code in the United State Bankruptcy Court (the "Bankruptcy Court").

**NOW, THEREFORE**, in consideration of the foregoing recitals and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company and the Consultant agree as follows:

1. Consulting and Advisory Services. Consultant shall provide consulting and advisory services (the "Services") as follows:

   (i)     Discuss with the Company's representatives the Company's needs, goals, objectives and financial parameters with respect to its Lease portfolio;

   (ii)    Negotiate the modification of certain of the Leases, as directed by the Company, in order to obtain rent reductions or other advantageous modifications to the Leases;

   (iii)   Prepare and implement a dispositions program, as directed by the Company, that includes (a) soliciting replacement tenants or subtenants; (b)

negotiating with landlords as to (i) the assignment or subleasing of Leases; (ii) termination of certain of the Leases and (iii) accepting replacement tenants; and (c) making recommendations to the Company as to accepting, rejecting or modifying any offers or proposals;

(iv)    As directed by the Company, negotiate waivers or reductions of prepetition cure amounts and any claims with respect to any of the Leases pursuant to Section 502(b) (6) of the United States Code;

(v)    As directed by the Company, negotiate with landlords to obtain extensions of time to assume or reject Leases;

(vi)    Assist the Company in the documentation of proposed transactions; and

(vii)    Report periodically to the Company regarding the status of the foregoing.

2. <u>Term</u>.  The term of this Agreement shall be six (6) months from the execution hereof. Thereafter, the term shall be automatically extended for successive thirty (30) day periods until terminated by either party upon at least thirty (30) days prior written notice to the other party.  If either party materially fails to perform its obligations in accordance with the terms hereof and does not cure such failure within ten (10) business days of written notice of such default, the other party shall have the right to terminate this Agreement by notice of termination to the non-performing party, effective ten (10) calendar days after the date such notice is given.

3. <u>Compensation</u>.  As compensation for its Services, the Consultant will receive the following fees described in this <u>Section 3</u> (individually, a "<u>Fee</u>" and collectively, "<u>Fees</u>") (it being understood that one-half (1/2) of the Evaluation Fee paid by the Company pursuant to the terms of the First Amendment and received by the Consultant on May 8, 2013 shall be credited on a first dollar basis against amounts due as Fees under this <u>Section 3</u>).

(a)    <u>Definitions.</u>

"<u>Disposition Agreement</u>" means an assignment, sublease, termination agreement, sales contract or any other document that conveys or terminates the Company's interest in a Lease; provided, however, that a document that conveys all or substantially all of the Company's assets, including, without limitation, its interest in its Leases, shall not be a Disposition Agreement for the purposes of this Agreement.

"<u>Gross Proceeds</u>" means the total consideration paid by a landlord, tenant or any other party to either terminate or purchase a Lease including any waiver of prepetition and post-petition reconciled cure costs.

"<u>Local Broker Fees</u>" mean any and all compensation owed to third party brokers retained by Consultant to assist Consultant in providing the Services hereunder. All such Local Broker Fees shall be paid by Consultant and not by the Company.

"Occupancy Cost" means with respect to a Lease, as of the date immediately prior to the effective date of any Lease amendment, the sum of the remaining base rent including any annual increases, percentage rent, CAM, real property taxes and insurance and other costs paid to landlords. In the case of percentage rent, such rent will be calculated using sales figures for the 12 months ended at the end of the month prior to the calculation (equitably adjusted if less than 12 months of sales figures are available), and CAM, real property taxes, and insurance will be calculated using the last available full year charge for each item (which may be a calendar year or a lease year, depending upon which is the most recent full year charge available). In the event rent increases periodically based upon the change in the Consumer Price Index ("CPI"), the assumed annual CPI increase shall be one and one-half percent (1-1/2%).

"Occupancy Cost Savings" means the difference between the original Occupancy Cost and the renegotiated Occupancy Cost for the period from the effective date of a Lease amendment to the end of the Lease term, including any option term exercised as part of the modification. In the case of Lease term extensions, Occupancy Cost Savings shall be calculated for the term of the Lease extension as the difference between the Occupancy Cost as in effect for the period immediately prior to the term extension and the renegotiated Occupancy Cost for the extended term. If a Lease modification involves changing base rent to percentage rent only, Occupancy Cost Savings will be determined using the sales figures for the last full twelve (12) months available. Occupancy Cost Savings will also include any Occupancy Cost amounts agreed to be paid on behalf of the Company by any Lease guarantor or other third party.

(b)     Lease Modifications.

    (i)     For renegotiating the monetary terms of any Lease that is assumed by the Company, Consultant's Fee shall be four percent (4.0 %) of Occupancy Cost Savings for the remainder of the current term of the Lease and any option term exercised as part of the Lease renegotiation. In no event shall any Fee be payable with respect to option terms that are exercised subsequent to the execution of such Disposition Agreement unless said option terms or Lease payments have been modified as result of the Consultant's actions hereunder.

    (ii)     For renegotiating a non-monetary provision of a Lease, including but not limited to Company's unilateral right to early termination of a Lease, Consultant's Fee shall be $2500 per transaction.

    (iii)     In addition to the Fees set forth in Subsections 3 (b)(i) and (ii) above, if any Lease renegotiation results in the payment of consideration to Company for executing a Lease modification, then Consultant shall earn a Fee in the amount equal to four percent (4.0%) of such consideration paid to Company.

(c)     Reductions in Bankruptcy Claims (if applicable).

Fees for any reduction in bankruptcy claims, if directed by the Company to perform such Services, shall be calculated as follows:

(i)     For any Lease assumed and assigned by the Company, if the amount required to be paid to the landlord to cure defaults existing at the time of assumption is reduced below the cure amount that the Company reasonably acknowledges is owing, the Consultant will receive a Fee for the waiver or reduction of the cure amount in an amount equal to four percent (4 %) of the total amounts so reduced or waived.

(ii)    For any Lease rejected by the Company, if the landlord agrees to reduce or waive the claim it could reasonably assert under Bankruptcy Code § 502(b)(6) or otherwise, the Consultant will receive a Fee in an amount equal to four percent (4 %) percent of the net savings that otherwise would have been payable to the landlord in the Company's bankruptcy case.

(d)     Extensions of Time to Assume or Reject Leases: If directed by the Company to negotiate with landlords to obtain extensions of time to assume or reject Leases, Consultant shall earn a Fee in the amount of $500 for each such fully executed and effective consent.

(e)     Dispositions. Upon the entering into of any Disposition Agreement for a sale of any interest of the Company in any applicable Lease listed on Exhibit A, Company shall pay Consultant a Fee equal to three and four percent (4%) of the Gross Proceeds realized by Company as a result of the sale.

(f)     Timing of Payments:  Consultant's fees provided for in Subsection 3(b) (i), 3(b) (ii) and 3(b) (iii) above shall be earned and payable on the earlier to occur of the date that (i) any Bankruptcy Court order approving the modified Lease terms shall be final and non-appealable or (ii) the date the Company begins to receive the benefits of the renegotiation pursuant to a Lease amendment. Consultant's Fees provided for in Subsection 3(c) (i) and 3(e) above shall be earned and payable to the Consultant upon the closing of any transaction.  Consultant's Fees provided for in  Subsection 3(c) (ii) above shall be earned and payable on the earlier to occur of the date that (x) the Company's plan of reorganization or liquidation filed with the Bankruptcy Court shall be final and effective or (y) a Bankruptcy Court order approving the assumption and assignment of the applicable Leases are final and non-appealable.  Consultant's Fees provided for in Subsection 3(d) above shall be earned and payable on the date that any landlord consent is fully executed and effective.

4.  Additional Services. Consultant will be compensated for additional consulting services rendered at Company's specific written request and agreed to by Consultant and that are not otherwise provided for in this Agreement at the rate of $400 per hour. Consultant will keep time records for such Services as may be required by the Court.  In order to bill for such

additional Services, Consultant and Company shall execute a scope of work document describing such additional Services.

5.  <u>Expenses and Disbursements</u>.  Other than payments owed to Local Brokers retained by A&G, A&G shall not be responsible for any transactional costs and/or legal expenses incurred by Company in connection with the Services.  The Company shall reimburse A&G for A&G's travel and marketing expenses incurred in the connection with the Services, provided that such travel and marketing shall have been pre-approved by the Company.  Any reimbursable expenses shall be paid to A&G within thirty (30) days after delivering to Company of an invoice therefore.  Except as otherwise provided herein or agreed to in writing by the Company, Consultant shall be responsible for costs and expenses incident to the performance of the Services.

6.  <u>Bankruptcy Court Approval</u>.  The Company will promptly use its best efforts to seek a final order of the Bankruptcy Court authorizing A&G as the Company's exclusive real estate adviser under this Agreement (the "Order") pursuant to, and subject to the standards of review set forth in, Section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in Section 330 of the Bankruptcy Code), <u>nunc pro tunc</u> to the date of the filing of any bankruptcy case by the Company.  The Company will provide the Consultant with a copy of the pleadings requesting retention of the Consultant prior to submission to the Bankruptcy Court and advise the Consultant of any objection or hearing pertaining to Consultant's retention.  The retention application and any order authorizing A&G's retention must be acceptable to A&G. Prior to Company commencing a bankruptcy case, the Company will pay all amounts then earned and payable to A&G pursuant to this Agreement.

7.  <u>Consultant and Company Covenants.</u>

    (a)  In consideration of this Agreement, the Consultant agrees to utilize reasonable efforts and diligence to achieve the purpose of this Agreement.

    (b)  The Company shall make available to the Consultant all information concerning the Leases necessary for the performance of the Consultant's obligations hereunder, including landlord contact information, copies of Leases, Lease abstracts and a list of current rent, taxes and other Lease charges, and such other information as Consultant reasonably requests and which may be in Company's possession or control.  All information provided by the Company shall be materially accurate and complete at the time it is furnished and the Company shall, as soon as it becomes aware of any inaccuracy or incompleteness in any information then or later provided to the Consultant, promptly advise the Consultant in writing of such inaccuracy or incompleteness and correct the same.  A&G may use the Company's name and logo to identify Company as one of A&G's clients.

    (c)  Consultant agrees to comply with all applicable federal, state, and local laws, regulations and codes in the performance of the Services and this Agreement.

5

(d)     Provided the Company obtains the Order and except as otherwise specifically provided in this Agreement, the Original Real Estate Services Agreement is terminated in its entirety and is replaced with this Agreement. Until said Order is obtained the Original Real Estate Services Agreement shall remain in full force and effect.

8.  Approval of Contracts.   All of the terms and conditions of each and every Lease assignment, sublease, termination agreement or other Disposition Agreement involving a Property or Lease proposed by Consultant shall be subject to the Company's approval, which approval may be withheld by Company in its sole discretion.

9.  Successors and Assigns.  This Agreement shall be binding upon the Company or any successor or assignee including, but not limited to, a Chapter 11 or 7 trustee, examiner or liquidator. Consultant may not assign any of its rights or responsibilities under this Agreement without first receiving the prior written consent of Company, which consent Company may withhold in its sole discretion.

10. Exclusive.  The Consultant has the sole and exclusive authority to perform all Services outlined herein.  All relevant inquiries regarding the Leases made to the Company, its representatives or related parties to the Company shall be directed to the Consultant.  The Company acknowledges that the Consultant or its affiliated entities may be engaged to sell or market similar assets by other persons or entities, and that any such engagement shall not constitute or be deemed to be a violation of this Agreement.

11. Indemnification.   The Company and its estate shall indemnify and hold the Consultant and its affiliates and their respective officers, directors, employees, agents and independent contractors, harmless from and against all claims, demands, penalties, losses, liabilities or damages, including without limitation, reasonable attorney's fees and expenses, (collectively the "Claims") directly or indirectly asserted against, resulting from, or related to the Properties, unless such Claims arise as the result of the Consultant's gross negligence or willful misconduct.

12. Independent Contractor.   This Agreement does not establish an employer-employee relationship between Company and A&G.  A&G's personnel, and all Local Brokers, are not employees or agents of Company, and A&G retains the right to exercise full control and supervision over the performance, employment, direction, compensation and discharge of any and all of A&G's personnel assisting in the performance of A&G's obligations.  A&G shall be solely responsible for all matters relating to actions by and payment of A&G's personnel, including, but not limited to, compliance with workers' compensation, unemployment, disability insurance, social security, withholding and all other federal, state and local laws, rules and regulations governing such matters.

13. Insider Trading.   A&G acknowledges its understanding that, under Rule 10b-5 of the Securities Exchange Act of 1934, a person or entity who becomes aware of material information relating to a company which has not been publicly disclosed may be prohibited from trading in such company's securities, or directly or indirectly disclosing such information to any person so that such person may trade in such company's securities.

14. Confidential Information.  A&G shall hold the Confidential Information (as hereinafter defined) in confidence and shall never, for a period of one year from the date of the Agreement  do any of the following or authorize any other person or entity to do the following:  (a) disclose, directly or indirectly, to any person or entity, or sell, license, or otherwise exploit any Confidential Information or (b) outside of the scope of the engagement hereunder, use for any purpose or copy or make lists of, any Confidential Information, except upon the prior written consent of Client.  A&G shall take all reasonable precautions consistent with its own practice for maintaining the confidentiality of its own information against disclosure of Confidential Information to third parties.  Any Confidential Information in A&G's possession shall be delivered promptly to Client upon the earlier of (y) termination of this Agreement or (z) upon request by Client.  For the purposes of this Section 14 , "Confidential Information" shall mean information and materials in written, oral, magnetic, photographic, optical or any other form, whether now existing or developed or created during A&G's engagement hereunder (whether or not developed or created by Company), (1) disclosed by Company to A&G including any information imparted to A&G by third parties, (2) not generally known to the public or within the industries or trades in which Company competes, and (3) which (i) relate to Company's operations or business or (ii) are under Company's control from any other person or entity and which Company is obligated to treat as confidential or proprietary.  The term "Confidential Information" does not include information which (i) is already in the Consultant's possession, provided that such information is not known by such party to be subject to another confidentiality agreement with, or other obligation of secrecy to, the Company or (ii) becomes generally available to the public other than as a result of disclosure by the Consultant, or (iii) becomes available to the Consultant on a non-confidential basis from a source other than the Company, provided that such source is not known by the Consultant to be bound by a confidentiality agreement with, or other obligation of secrecy to, the Company or (iv) is independently developed by the Consultant without use of or reference to the Information, as shown by regularly kept business records of the Consultant.

15. Survival of Fee.

    (a)    In the event the Company, or its successors or assigns including, but not limited to, a Chapter 11 or 7 trustee, examiner or liquidator, enters into any transaction with a landlord of a Property, the result of which would entitle A&G to a Fee pursuant to this Agreement, then in that event, A&G shall be entitled to its Fee pursuant to the terms of this Agreement.

    (b)    So long as A&G has conducted documented negotiations with a landlord or other party prior to the Termination Date and an agreement with such landlord or other party is entered into within one hundred eighty (180) days after the Termination Date, which agreement ultimately leads to the consummation of a transaction(s), the result of which would otherwise have entitled A&G to a fee pursuant to this Agreement, then in that event, A&G shall be entitled to a fee for such transaction(s) in accordance with the terms of this Agreement.  A&G shall provide to the Company a written list of such parties with whom it had documented negotiations within ten (10) business days after termination of this Agreement.

16. <u>General Provisions.</u>

(a)    The Company and the Consultant shall deal with each other fairly and in good faith so as to allow both parties to perform their duties and earn the benefits of this Agreement.

(b)    The Company recognizes and acknowledges that the services to be provided by the Consultant pursuant to this Agreement are, in general, transactional in nature, and, except as may be required pursuant to <u>Section 4</u>, the Consultant will not be billing the Company by the hour or maintaining time records.  It is agreed that the Consultant is not requested or required to maintain such time records and that its compensation will be fixed on the percentages set forth herein.

(c)    Any correspondence or required notice shall be in writing and addressed as follows:

**IF TO THE COMPANY:**

Orchard Supply Hardware Stores LLC
6450 Via Del Oro
San Jose, CA 95119
Attn:  Chris Newman
Title:  EVP & CFO
Tel:  408-365-2708
E-mail:  Chris.Newman@osh.com

and

Orchard Supply Hardware Stores LLC
6450 Via Del Oro
San Jose, CA 95119
Attn:  Michael Fox
Title:   SVP & General Counsel
Tel:  408-361-2518
E-mail:  Michael.Fox@osh.com

**IF TO THE CONULTANT:**

A&G Realty Partners, LLC
87 E Green Street, Suite 307
Pasadena, CA 91105
Attn: Peter Lynch
Tel: 626-213-3940
E-mail: peter@agrealtypartners.com

and

> A&G Realty Partners, LLC
> 445 Broad Hollow Road, Suite 410
> Melville, NY 11747
> Attn: Emilio Amendola
> Tel: 631-465-9507
> E-mail: emilio@agrealtypartners.com

Notices shall be deemed given when delivered in person, by e-mail and receipt of an electronic return receipt, three (3) days after deposit in the United States mail, certified mail, return receipt requested or (4) the day after deposit with a commercial overnight courier service.

(d)     This Agreement shall be deemed drafted by both parties hereto, and there shall be no presumption against either party in the interpretation of this Agreement.

(e)     By executing or otherwise accepting this Agreement, the Company and the Consultant acknowledge and represent that they are represented by and have consulted with independent legal counsel with respect to the terms and conditions contained herein.

(f)     This Agreement may be executed in original counterparts, and if executed and delivered via facsimile shall be deemed the equivalent of an original.

(g)     Any and all issues, disputes, claims or causes of action which relate or pertain to, or result or arise from this agreement or the Consultant's services hereunder, shall be subject to the exclusive jurisdiction of the Court.

(h)     Waiver by either party of any default by the other party shall not be deemed a waiver of any other default. No provision of this Agreement shall be deemed waived, amended, or modified by either party, unless it is in writing and signed by both parties.

(i)     If any provision, or any portion of any provision, contained in this Agreement is held unenforceable, then it shall, to that extent alone, be deemed omitted and this Agreement shall be construed as if such unenforceable provision had never been contained herein.

(j)     This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof. All prior agreements, representations, statements, negotiations, understandings, and undertakings are superseded by this Agreement.

IN WITNESS WHEREOF, the Company and the Consultant have executed and delivered this Agreement as of the date first above written.

Orchard Supply Hardware LLC

By:

Name: C NEWMAN

Title: CFO

A&G Realty Partners LLC

By:

Name: PETER T. LYNCH

Title: PRINCIPAL

**Exhibit**
"A"

PROPERTIES

### Category 1 - Stores Subject to Lease Termination or Assignment

1. Store 0071, Midtown
2. Store 0290, El Camino
3. Store 0291, El Cerrito
4. Store 0391, Lone Tree
5. Store 0401, Vacaville
6. Store 0451, Citrus Heights
7. Store 0501 , Fairfield
8. Store 0720, Canoga Park
9. Store 0770, Santa Clarita
10. Store 0790, Fountain Valley (see Section 4 above)
11. Store 0810, Long Beach
12. Store 0830, Santa Ana
13. Store 0480, Newark
14. Store 0490, Lodi
15. Store 0360, Blackstone

### Category 2 - Stores Subject to Rent Restructuring and, if not, then Subject to Lease Termination or Assignment

1. Store 0051, Huntington Beach
2. Store 0241, Arden Watt
3. Store 0580, Hanford

### Category 3 - Stores Subject to Rent Restructuring

1. Store 0540, SSF (pay to get us to walk)
2. Store 0060, Capitola
3. Store 0371, Tracy
4. Store 0510, Yuba City
5. Store 0721, South Bay
6. Store 0850, Bakersfield
7. Store 0840, Granada Hills
8. Store 0730, Torrance
9. Store 0750, Thousand Oaks
10. Store 0410, San Rafael
11. Store 0180, Stockton
12. Store 0221, La Verne
13. Store 0250, Salinas
14. Store 0440, Sand City

15.    Store 0450, Santa Maria
16.    Store 0460, Kings Canyon
17.    Store 0521, Hesperia
18.    Store 0530, Manteca
19.    Store 0201, East Modesto
20.    Store 0771, Figarden
21.    Store 0390, San Ramon
22.    Store 0200, Gilroy
23.    Store 0081, Elk Grove
24.    Store 0361, Paso Robles
25.    Store 0441, N.E. Fresno
26.    Store 0260, Watsonville
27.    Store 0740, Woodland

**In addition, at Client's sole discretion, the following stores may be added to one of the categories listed above.**

1.    Store 0731, Yorba Linda
2.    Store 0761, Peterkort
3.    Store 0741, Tigard
4.    Store 0751, 4th and La Brea
5.    Store 0431, Santa Rosa
6.    Distribution Center
7.    Store Support Center