## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| OSH 1 LIQUIDATING CORPORATION (F/K/A IN RE: ORCHARD SUPPLY HARDWARE STORES CORPORATION), et al.,[1] | Case No. 13-11565 (CSS) |
| | Jointly Administered |
| Debtors. | Objection Deadline: May 9, 2014 at 4:00 p.m. (ET) <br> Hearing Date: May 28, 2014 at 10:00 a.m. (ET) |

## LIQUIDATION TRUSTEE'S OBJECTION TO CLAIM NUMBERS 984 AND 1092 FILED BY ALEXZANDRAH ANDRADE ON BEHALF OF THE PROPOSED CLASS

Bradley I. Dietz, as the Liquidation Trustee under the Plan (as defined below), hereby files this objection (this "Objection"), pursuant to section 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to Claim Numbers 984 and 1092 (together, the "Proposed Class Claims") filed by Alexzandrah Andrade ("Andrade"), a former employee of the Debtors, on behalf of herself and the Proposed Class (as defined below), and requests the entry of the proposed form of order (the "Proposed Order") attached hereto as Exhibit D disallowing and expunging the Proposed Class Claims.[2]  In support of this Objection, the Liquidation Trustee respectfully represents as follows:

---

[1] The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): OSH 1 Liquidating Corporation, f/k/a Orchard Supply Hardware Stores Corporation (4109); OSH 2 Liquidating LLC, f/k/a Orchard Supply Hardware LLC (3395); and OSH 3 Liquidating LLC, f/k/a OSH Properties LLC (3391).  The mailing address for the Liquidation Trustee, solely for purposes of notices and communications, is 136 East 64th Street, #8C, New York, NY 10065 (Attn: Bradley I. Dietz).

[2] Although the Proposed Order provides that the Proposed Class Claims would be disallowed and expunged in their entirety, the Proposed Order also provides that "[w]ithin seven (7) days of the entry of this Order, Andrade may file an amended proof of claim solely to reflect a single individual claim on Andrade's behalf."

## PRELIMINARY STATEMENT

1.      It is well settled that there is not an absolute right to file class proofs of claim in bankruptcy proceedings; rather, class proofs of claim are permitted at the discretion of the Court only in certain narrowly defined circumstances.  Although the Andrade Action was commenced more than six (6) months prior to the Petition Date and the General Bar Date was more than six (6) months ago and the Effective Date was more than two (2) months ago, Andrade has failed to request the Court to exercise its discretion to allow Andrade to file the Proposed Class Claims in these chapter 11 cases pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). Instead, Andrade simply filed the Proposed Class Claims on account of the Proposed Class that, importantly, has not been certified.  As a result, the filing of the Proposed Class Claims was fundamentally improper and the claims must be disallowed and expunged.

2.      Nevertheless, even if Andrade were to seek permission from the Court at this late stage of these cases to file class proofs of claim, because the Proposed Class was never certified pre-petition and the Proposed Class members have already received actual or constructive notice of these cases and the General Bar Date, the narrowly defined circumstances under which class proofs of claim have been permitted by bankruptcy courts are not present here.  Indeed, as the District Court for the Southern District of New York has noted, in affirming the bankruptcy court's denial of a request to authorize a class proof of claim under circumstances similar to those here, these facts alone should warrant denial.  *In re Bally Fitness of Greater N.Y., Inc.* ("*In re Bally II*"), 411 B.R. 142, 145 (S.D.N.Y. 2009).

3.      Class treatment of the Proposed Class Claims is also inappropriate because the claims do not fulfill the requirements of Rule 23.  The California state law wage claims asserted in the Complaint and the Proposed Class Claims cannot satisfy either the superiority or the

predominance requirements of Rule 23. As numerous courts have recognized, the "superiority of the class action vanishes when the 'other method available' is bankruptcy, which consolidates all claims in one forum and allows claimants to file proofs of claim without counsel and at virtually no cost." *In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 9 (S.D.N.Y. 2005). And as courts both within and outside of the bankruptcy context have concluded, claims such as Andrade's are often inappropriate for class treatment because "each putative class member's right to recovery is dependent on facts specific to that individual," preventing common issues from predominating. *In re Bally Fitness of Greater N.Y., Inc.* (*"In re Bally I"*), 402 B.R. 616, 622 (Bankr. S.D.N.Y. 2009).

4.    In short, class treatment of the Proposed Class Claims is neither appropriate nor necessary to protect the rights of the members of the Proposed Class; their rights have been amply protected in these cases by the bankruptcy claims process itself. Accordingly, the Proposed Class Claims should be disallowed and expunged.

## **JURISDICTION**

5.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.    The statutory and legal predicates for the relief sought herein are section 502 of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1.

## GENERAL BACKGROUND

7.      On June 17, 2013 (the "Petition Date"), each of the Debtors filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Official Committee of Unsecured Creditors was formed on June 26, 2013.

8.      Upon commencing these chapter 11 cases, the Debtors pursued a bankruptcy auction process to sell substantially all of their assets to Orchard Supply Company, LLC, a wholly-owned subsidiary of Lowe's Companies, Inc. (the "Purchaser"), which acted as their stalking horse purchaser.  On August 20, 2013, the Court entered an order [Docket No. 489], authorizing, among other things, the sale of substantially all of the Debtors' assets to the Purchaser (the "Sale") for $205 million in purchase price proceeds.  The Sale closed on August 30, 2013.  As part of the Sale, the Purchaser assumed significant pre- and post-Petition Date obligations.  Specifically, Schedule 1.3(f) of the final Asset Purchase Agreement by and between the Debtors and the Purchaser listed approximately 1,200 vendors whose prepetition trade liabilities were being assumed by the Purchaser, totaling approximately $50 million.

9.      On December 20, 2013, the Court entered an order [Docket No. 836] (the "Confirmation Order") confirming the Debtors' Modified First Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code (as may be amended, modified, or supplemented from time to time and together with all exhibits and schedules thereto, including the Plan Supplement, the "Plan" ).[3]  On February 24, 2014, the Effective Date of the Plan occurred [*see* Docket No. 918].  Under the Plan and the Confirmation Order, the Liquidation Trustee is to liquidate and distribute all of the Debtors' assets pursuant to and in accordance with the terms of the Plan and the Confirmation Order.

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, a copy of which is attached as Exhibit A to the Confirmation Order.

## PROOFS OF CLAIM AND BAR DATES

10.    On June 18, 2013, the Court entered an order [Docket No. 47] appointing BMC Group, Inc. ("BMC") as claims and noticing agent for the Debtors.  BMC is authorized to receive, maintain, record and otherwise administer the proofs of claim filed in these chapter 11 cases and to maintain the official claims registers for each of the Debtors.

11.    On September 5, 2013, the Court entered an order [Docket No. 540] (the "General Bar Date Order") establishing October 25, 2013 (the "General Bar Date") as the final date and time for filing proofs of claim against the Debtors' estates arising prior to the Petition Date, and approving the form and manner of notice of the General Bar Date.  Pursuant to the General Bar Date Order, holders of claims pursuant to section 503(b)(9) of the Bankruptcy Code were required to file a section 503(b)(9) claim request on or before the General Bar Date, and governmental entities were required to file proofs of claim on or before December 16, 2013. Notice of the aforementioned bar dates was provided by mail [*see* Docket No. 554] and publication (in the *Wall Street Journal* and in the *San Jose Mercury News*) [*see* Docket No. 622] in accordance with the procedures outlined in the General Bar Date Order.  Notice of the General Bar Date was served on all current and former employees of the Debtors, to the extent such employees were employed by the Debtors following their spin-off from Sears Holdings Corp. in December 2011.  In total, 9,386 current and former employees of the Debtors were served with the notice of the General Bar Date Order.

12.    Pursuant to Article VII.C of the Plan and Paragraph 28 of the Confirmation Order, any Claims created by the rejection of executory contracts pursuant to Article VII.A of the Plan were to be filed with the Court and served on the Debtors, the Liquidation Trustee and the GUC Trustee no later than March 26, 2014.  Pursuant to Article II.B of the Plan and Paragraph 30 of

the Confirmation Order, requests for payment of Administrative Claims, together with accompanying documentation, were to be filed with the Court on or before 5:00 p.m. (ET) on March 26, 2014.

## THE PROPOSED CLASS CLAIMS

13.     On October 24, 2013, Andrade's counsel, on behalf of Andrade and "all current and former employees employed by [the] Debtor from November 19, 2008 to the present" (the "Proposed Class"), filed a proof of claim in these chapter 11 cases, which was subsequently designated as Claim Number 984 by BMC, asserting an unsecured claim against Debtor OSH 1 Liquidating Corporation, f/k/a Orchard Supply Hardware Stores Corporation, in the aggregate amount of $4,999,999.00, of which Andrade alleges $1,500,000.00 is entitled to priority pursuant to section 507(a) of the Bankruptcy ("Claim 984").  A copy of Claim 984 is attached hereto as Exhibit A.  Andrade filed Claim 984 on account of a certain First Amended Class Action Complaint and Enforcement Under the Private Attorneys General Act, California Labor Code §§ 2698 *et seq.*, filed on January 23, 2013 in the Superior Court of the State of California for the County of Santa Clara (the "Complaint").  A copy of the Complaint is annexed to Claim 984.

14.     On January 30, 2014, Andrade's counsel, again on behalf of Andrade and the Proposed Class, filed a proof of claim in these chapter 11 cases, which was subsequently designated as Claim Number 1092 by BMC, asserting an administrative claim[4] against the Debtors and their estates in the amount of $524,979.00 ("Claim 1092") on account of the claims alleged in the Complaint.  A copy of Claim 1092 is attached hereto as Exhibit B.

15.     According to the Proposed Class Claims, the Complaint alleges five claims under California law:  (1) unpaid minimum wages; (2) unpaid meal period premiums; (3) unpaid rest

---

[4] Notably, Andrade was not even employed by the Debtors on a post-petition basis.  She voluntarily terminated her employment with the Debtors in December 2011, approximately eighteen (18) months prior to the Petition Date.

period premiums; (3) failure to timely pay wages upon termination; (4) non-compliant wage statements; and (5) unfair competition under California Business & Professions Code § 17200 *et seq*. The Complaint also seeks penalties pursuant to the California Private Attorneys General Act of 2004.

16.    As of the Petition Date, the state court proceedings with respect to the Complaint (the "Andrade Action") were at a preliminary stage; the only substantive document on the docket of the Andrade Action was the Complaint and, immediately following the Petition Date, a suggestion of bankruptcy was filed by the Debtors. No pleadings have been filed in the Andrade Action following the filing of the suggestion. Despite the fact that the Andrade Action had been pending for over six (6) months prior to the Petition Date, Andrade never moved for class certification. No formal discovery has been commenced or completed in the Andrade Action and, upon information and belief, no notification of pending class action has ever been sent to the Proposed Class. In other words, although it was commenced well before the Petition Date, as of the Petition Date, the Andrade Action was in its infancy.

17.    Only recently, on March 25, 2014, did Andrade file in these chapter 11 cases a motion [Docket No. 963] (the "Stay Relief Motion") for relief from the automatic stay. Pursuant to the Stay Relief Motion, Andrade seeks authorization from the Court to proceed with the litigation of the Andrade Action in the Superior Court of the State of California for the County of Santa Clara (the "State Court"), in order to liquidate the Proposed Class Claims in a "more efficient" forum.

18.    The Stay Relief Motion is scheduled to be heard by the Court at the May 28, 2014 omnibus hearing in these cases, with an objection deadline of May 21st for the Liquidation Trustee and the GUC Trustee. Since the issues presented by this Objection will significantly

impact the Court's consideration of, and the issues presented by, the Stay Relief Motion, the Liquidation Trustee requested that Andrade adjourn the Stay Relief Motion to the June 26th omnibus hearing, thereby allowing the Court to first consider and rule upon this Objection and the parties to avoid potentially needlessly briefing the Stay Relief Motion. As of the filing of this Objection, Andrade is not amenable to this proposal, accordingly the Liquidation Trustee anticipates filing an objection to the motion on or before the objection deadline noted above.

19. However, as an initial matter, contrary to what Andrade asserts in the Stay Relief Motion, resolving the class action claims in the Andrade Action would require an enormous commitment of time and resources, including: (a) undertaking the vast amount of discovery needed to litigate a class certification motion, including numerous depositions and voluminous written discovery required by the parties; (b) conducting a hearing on class certification, which for California wage and hour class claims often takes on the complexity of a trial because of its pivotal significance to the future of the case; (c) if a class were ultimately certified, giving notice to all class members and providing the opportunity to "opt out" of the class action, as required by Rule 23; (d) engaging in merits discovery; and (e) a complex and lengthy trial.

**RELIEF REQUESTED**

20. By this Objection, the Liquidation Trustee requests the Court to enter the Proposed Order, pursuant to section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007 and Local Rule 3007-1, disallowing and expunging, in full, the Proposed Class Claims.[5]

**ARGUMENT**

21. Andrade commenced her litigation against the Debtors in the State Court more than six (6) months prior to the Petition Date; however, to date, no class has been certified in the

---

[5] As noted above, the Proposed Order also provides that "[w]ithin seven (7) days of the entry of this Order, Andrade may file an amended proof of claim solely to reflect a single individual claim on Andrade's behalf."

Andrade Action, and Andrade has not filed a motion in these chapter 11 cases for authorization to file the Proposed Class Claims pursuant to Rule 23.  As a result, Andrade's attempt to file the Proposed Class Claims against the Debtors and their estates is fundamentally improper and the claims should be disallowed and expunged.  And even if Andrade were to file such a motion at this late stage of these cases, the Court should deny the motion for the reasons set forth below.

A.     **Andrade Should Not Be Permitted to File Class Proofs of Claim.**

22.     "[B]ankruptcy significantly changes the balance of factors to be considered in determining whether to allow a class action" and renders class-based claims "less desirable in bankruptcy than in ordinary civil litigation."  *In re Bally I*, 402 B.R. at 620-21.  By their very nature, bankruptcies perform many of the functions of a class action:  providing notice to potential claimants, consolidating claims in a single forum, and allowing for the efficient litigation of common issues.  *Id.* at 621.  Unlike class actions, however, bankruptcies allow claimants to file proofs of claim without counsel, at virtually no cost, and are arguably more efficient than class actions.  *Id.*

23.     Moreover, class actions can interfere with the uniform application of bankruptcy bar dates by preserving the claims of class members which failed to assert claims within the time limits applicable to similarly situated creditors.  This impact effectively dilutes the value of claims asserted by timely filers and implicates due process concerns.  *See In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 23 (Bankr. E.D. Pa. 1995) ("an action which expands the bar date for notified creditors may . . . violate due process").  Further, the additional "layers of procedural and factual complexity that accompany class-based claims" siphon estate resources and potentially interfere with the orderly progression of the reorganization.  *In re Bally I*, 402 B.R. at 621.  "[A] bankruptcy case can proceed no faster than its slowest matter . . . and a class

action may 'gum up the works' because until complete, the bankruptcy court cannot determine the entitlement of other creditors." *Id.* (quoting *In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 376 (Bankr. S.D.N.Y. 1997)).

24.     For these and other reasons, courts have repeatedly emphasized that the class proof of claim device should be used "most sparingly." *In re Sacred Heart Hosp. of Norristown*, 177 B.R. at 22; s*ee also In re FirstPlus Fin., Inc.*, 248 B.R. 60, 73 (Bankr. N.D. Tex. 2000) ("In the bankruptcy context, class actions should be rare.").  "There is no absolute right to file a class proof of claim under the Bankruptcy Code." *In re Bally I*, 402 B.R. at 619.  Rather, a movant must seek to have the bankruptcy court exercise its discretion to allow a class proof of claim by applying Rule 23 to the proof of claim.[6]  Bankruptcy courts will exercise their discretion to permit class claims only where the movant has met its burden of demonstrating that that such treatment is appropriate. *See In re United Cos. Fin. Corp.*, 277 B.R. 596, 601 (Bankr. D. Del. 2002) ("The burden of proof is on the claimant to establish each element.").

25.     As set forth above, there is no absolute right to file a class proof of claim in a bankruptcy proceeding.  To date, Andrade has not requested the Court to exercise its discretion to allow Andrade to file the Proposed Class Claims.  Instead, Andrade, on behalf of herself and the Proposed Class, opted to simply file the Proposed Class Claims in spite of not having obtained such authorization.  Consequently, the filing of the Proposed Class Claims was fundamentally improper, and the claims should be disallowed and expunged.

---

[6] The court has the discretion to apply Rule 23 to a class proof of claim by virtue of Bankruptcy Rule 9014, which allows the Court to "direct that one or more of the other rules in Part VII shall apply."  Bankruptcy Rule 7023 adopts Rule 23.

**B.    If Requested, the Court Should Decline to Exercise Its
Discretion to Permit Andrade to File Class Proofs of Claim.**

26.    In response to this Objection, the Liquidation Trustee anticipates that Andrade
will move the Court to exercise its discretion pursuant to Rule 23 to permit Andrade to file the
Proposed Class Claims.  For the following reasons, any such motion should be denied.

27.    "In determining whether to exercise [their] discretionary power [to allow class
proofs of claim], courts primarily look at:  a) whether the class claimant moved to extend the
application of Rule 23 to its proof of claim; b) whether 'the benefits derived from the use of the
class claim device are consistent with the goals of bankruptcy'; and c) whether the claims which
the proponent seeks to certify fulfill the requirements of Rule 23."  *In re Bally I*, 402 B.R. at 620
(quoting *In re Musicland Holding Corp.*, 362 B.R. 644, 651 (Bankr. S.D.N.Y. 2007)).

28.    As noted above, although the Liquidation Trustee anticipates that Andrade will
finally do so in response to this Objection, Andrade has not yet filed a motion for authorization
to file the Proposed Class Claims, despite the fact that more than ten (10) months have passed
since the Petition Date, more than six (6) months have passed since the General Bar Date and
more than two (2) months have passed since the Effective Date.  As Judge Carey noted in
denying a claimant the right to file a class proof of claim under similar circumstances, the most
appropriate time for a creditor to file such a motion, or to otherwise address class proof of claim
issues, is in connection with a debtor's bar date motion.  *In re Building Materials Holding Corp.*,
Case No. 09-12074 (KJC), Transcript of October 7, 2009 Hearing, at pg. 36-38, 51;[7] *see also In
re Musicland Holding Corp.*, 362 B.R. at 655 ("The most propitious time for filing a motion for
class recognition is before a bar date is established, since the bar date is effectively uprooted in
part by an extension of the bar date for a favored class of creditors.") (quoting *In re Sacred Heart*

_____

[7] A copy of this hearing transcript is attached hereto as Exhibit C.

*Hosp. of Norristown*, 177 B.R. at 23).  Here, the Debtors filed their bar date motion [Docket No. 470] (the "Bar Date Motion") on August 16, 2013, and on September 5, 2013, the Court entered the Bar Date Order.  Andrade, who was well aware of the commencement of these cases, failed to object to the Bar Date Motion or otherwise contemporaneously address the issues presented by the Proposed Class Claims.

> **i.     Authorizing the Filing of the Proposed Class Claims
> Would Be Inconsistent With the Goals of Bankruptcy.**

29.     Courts have concluded that the filing of class proofs of claim is consistent with the Bankruptcy Code "in two principal situations:  (i) where a class has been certified pre-petition by a non-bankruptcy court; and (ii) where there has been no actual or constructive notice to the class members of the bankruptcy case and Bar Date." *In re Bally I*, 402 B.R. at 620; *see also In re Musicland Holding Corp.*, 362 B.R. at 654-55; *In re Jamesway Corp.*, 1997 Bankr. LEXIS 825, at \*16 (Bankr. S.D.N.Y. June 11, 1997); *In re Sacred Heart Hosp. of Norristown*, 177 B.R. at 22.  These two factors "are critical.  For this reason, putative members of an uncertified class who received actual notice of the bar date but did not file timely claims are the least favored candidates for class action treatment." *In re Musicland Holding Corp.*, 362 B.R. at 655 (emphasis added).  In addition to these primary factors, courts also consider "whether class certification will adversely affect the administration of the case"—that is, whether permitting the class claims risks "undue delay." *Id.* at 654-55 (quoting *In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 5).

30.     The Proposed Class Claims plainly fail all of these factors.  The State Court has made no certification decision in the Andrade Action; indeed, Andrade never sought such relief prior to the imposition of the automatic stay in these bankruptcy proceedings.  Accordingly, the putative class members could "not have a reasonable expectation that a class claim would be

filed that would protect their rights, or that they did not have to comply with the bar date." *In re Musicland Holding Corp.*, 362 B.R. at 656; s*ee also In re Jamesway Corp.*, 1997 Bankr. LEXIS 825, at *35-36 (Bankr. S.D.N.Y. June 11, 1997) ("No class was pre-certified such that purported class members who did not choose to file a proof of claim should or could have had any reasonable expectation that they need not comply with the Bar Date Order.  As such, this is not a case justifying an exception to the enforcement of the Bar Date Order in accordance with its express and unequivocal terms.").

31.    Moreover, as described above, notice of the General Bar Date was served on all current and former employees of the Debtors, to the extent such employees were employed by the Debtors following their spin-off from Sears Holdings Corp. in 2011, and was published in the *Wall Street Journal* and in the *San Jose Mercury* News.  In addition, the Debtors prominently posted notice of the General Bar Date on the website maintained by BMC, the Debtors' claims and noticing agent.   Thus, actual or constructive notice of the General Bar Date has been provided to all of the members of the Proposed Class.  As courts have recognized, where "the putative unnamed class members have clearly received actual or constructive notice of the bankruptcy case and the bar date, denial of the implementation of the class proof of claim device appears advisable."  *In re Sacred Heart Hosp. of Norristown*, 177 B.R. at 22.[8]

---

[8] That some of the Proposed Class members may not have received actual notice is "irrelevant" as a matter of law.  "[T]he fact that these plaintiffs or other Proposed Class members may not have received a Claim Package that was mailed to them or read published notice of the Bar Date is irrelevant as a matter of due process.  When litigation threatens to deprive individuals of their property, 'notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections' satisfies due process requirements."  *In re Jamesway*, 1997 Bankr. LEXIS 825, at *30 (quoting *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950)).  The appropriate inquiry is whether the Debtors "acted reasonably in selecting means likely to inform persons affected by the Bar Date and these chapter 11 proceedings, not whether each claimant actually received notice."  *Id.*  As in *Jamesway*, "by complying with the terms of the Bar Date Order, mailing a Claim Package to every known creditor and publishing notice of the Bar Date," the Debtors' notices here "satisfy due process."  *Id.* at *31; *see also In re Bally II*, 411 B.R. at 146 (the fact that a "smaller part of the putative class . . . received only notice by publication . . . was still legally adequate").

32.     Although pre-petition certification and notice are the two "critical" factors courts consider in deciding whether to allow class treatment of bankruptcy claims, *In re Musicland Holding Corp*., 362 B.R. at 655, courts have identified the potential for delay or disruption of the bankruptcy proceedings as also "bear[ing] on the exercise of the discretion whether to apply Rule 23." *Id.* at 652.   Indeed, "a pervasive theme" in the "court's exercise of this discretion . . . is avoiding undue delay in the administration of the case." *In re Ephedra Prods. Liab. Litig*., 329 B.R. at 5.   Thus, "a court sitting in bankruptcy may decline to apply Rule 23 if doing so would . . . 'gum up the works' of distributing the estate." *Id.* (quoting *In re Woodward & Lothrop Holdings, Inc*., 205 B.R. at 376).

33.     Allowing Andrade to file the Proposed Class Claims would initiate protracted litigation that threatens to unduly delay the Liquidation Trustee's efforts to make distributions under the Plan in a timely and efficient manner and thereafter close these cases.   Protracted litigation in the Andrade Action would also divert the focus of the Liquidation Trustee while "siphoning the Debtors' resources." *In re Bally I*, 402 B.R. at 621.   Such litigation would require substantial and expensive class certification discovery, followed by class briefing and a hotly contested certification hearing.   If a class were certified, notice and an opportunity to "opt out" would have to be given to the class members, followed by merits discovery and a complex and lengthy trial.   The extensive class proceedings could also disrupt timely distributions to other creditors.   Moreover, the Disputed Claims Reserve established pursuant to the terms of the Plan and the Confirmation Order for the treatment of Disputed Administrative Claims, Priority Tax Claims and Other Priority Claims is not to exceed $3,700,000.00, and this amount does not include any funds on account of the priority and administrative expense amounts asserted in the

Proposed Class Claims.    Thus, substantial delay, distraction, and depletion of the Debtors' estates is a significant possibility if Andrade is allowed to file the Proposed Class Claims.

34.    Courts have consistently rejected class proofs of claim where, like here, no class was certified pre-petition, actual or constructive notice was provided to the putative class members, and treatment of the claims on a class basis threatens to disrupt and delay the bankruptcy proceedings.    The court in *In re Bally I* was presented with a similar request to accept class proofs of claim on behalf of a putative class that, like here, brought claims under California law alleging "unpaid wages, failure to provide meal and rest periods mandated by California law and failure to reimburse business expenses." *In re Bally I*, 402 B.R. at 618-19.    Because no class was certified pre-petition, "[a]ctual or constructive notice ha[d] been given to [the] putative class members," and "class certification would adversely affect the administration of these cases," the court concluded that the movants "failed to demonstrate that the requested relief would . . . be consistent with the goals of bankruptcy" and denied the class proofs of claim. *Id.* at 620-21.    On appeal, the District Court for the Southern District of New York affirmed the decision, noting that "the Bankruptcy Court did not remotely abuse its discretion."    *In re Bally II*, 411 B.R. at 145.

35.    Other courts have reached the same conclusion as the *In re Bally* courts. *See, e.g.*, *In re Musicland Holding Corp.*, 362 B.R. at 656 (denying California wage and hour class proof of claim where class was not certified pre-petition, notice of the bar date was provided to putative class members, and "the class claim would seriously delay the administration of the case"); *In re Jamesway*, 1997 Bankr. LEXIS 825, at *35-36 (denying class proof of claim without considering the elements of Rule 23 where no class was certified pre-petition and most

of the putative class members had received actual notice of the bar date); *In re Sacred Heart Hosp. of Norristown*, 177 B.R. at 23-24 (same).

### ii.    Andrade Could Not Satisfy the Requirements of Rule 23 In Any Event.

36.    The Court need not even reach the issue of whether the Proposed Class Claims can survive scrutiny under Rule 23; it can—and should—deny the claims as inconsistent with the goals of bankruptcy for the reasons set forth above.  *See In re Jamesway*, 1997 Bankr. LEXIS 825, at *36 ("We need not and do not consider whether the plaintiffs can satisfy Rule 23(a) and (b)(1) or (b)(3) herein."); *In re Sacred Heart Hosp. of Norristown*, 177 B.R. at 23-24 (denying class proof of claim without reaching Rule 23 analysis); *In re Musicland Holding Corp.*, 362 B.R. at 654.

37.    For the Court to exercise its discretion to allow the Proposed Class Claims, however, the claims would have to satisfy the requirements of Rule 23.  *See In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 4 ("In exercising [its] discretion, the bankruptcy court first decides under Rule 9014 whether or not to apply Rule 23 . . . [to] the purported class claim; if and only if the court decides to apply Rule 23, does it then determine whether the requirements of Rule 23 are satisfied.").  The Proposed Class Claims cannot satisfy Rule 23 because they fail on their "superiority" and "predominance" requirements.

### a.    *Class Treatment of the Proposed Class Claims is Not Superior*

38.    Among other things, Rule 23(b) requires as a prerequisite to certifying a class that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Courts have frequently recognized that the advantage of class treatment in consolidating the adjudication of common issues "disappears in the context of a bankruptcy." *In re Bally I*, 402 B.R. at 622.  As the court in *In re Ephedra Prods. Liab. Litig.*

16

explained, the "superiority of the class action vanishes when the 'other available method' is bankruptcy, which consolidates all claims in one forum and allows claimants to file proofs of claim without counsel and at virtually no cost." 329 B.R. at 9. Andrade cannot show that class treatment of the Proposed Class claims would be superior.

39.     In fact, class treatment would be inferior to the bankruptcy process already made available to the putative class members. As courts have recognized:

> Bankruptcy provides the same procedural advantages as a class action. In fact, it provides more advantages. Creditors, even corporate creditors, don't have to hire a lawyer, and can participate in the distribution for the price of a stamp. They need only fill out and return the proof of claim sent with the Bar Date Notice. Furthermore, claims are "deemed allowed" under § 502(a) in the absence of an objection, in which case discovery and fact-finding are avoided altogether.

*In re Musicland Holding Corp*., 362 B.R. at 644 n.8 (citations omitted); s*ee also In re Bally I*, 402 B.R. at 622; *In re Ephedra Prods. Liab. Litig*., 329 B.R. at 9. If the Proposed Class Claims were to proceed on a class basis, Andrade's attorneys could seek payment of their fees from the Debtors' estates, necessarily diminishing the distributions available to other creditors. The only real beneficiary in that case—especially in light of the fact that all of the members of the Proposed Class were provided an opportunity to file individual claims—would be Andrade's counsel. *In re Sacred Heart Hosp. of Norristown*, 177 B.R. at 24; *see also In re Musicland Holding Corp*., 362 B.R. at 655 (noting the "irony of . . . paying class counsel, at the expense of the vigilant creditors who observed the bar date"); *In re Ephedra Prods. Liab. Litig*., 329 B.R. at 10. Class claims would be inferior because "the *de facto* expansion of the Bar Date for notified class members who failed to file individual claims in a timely manner will violate due process and prejudice the rights of timely filers." *In re Bally I*, 402 B.R. at 622.

### b. *Common Questions Do Not Predominate Over Individualized Determinations*

40.     Where individualized factual determinations will predominate over common questions of law or fact, courts—including courts in this jurisdiction—refuse to allow class treatment of claims.  *See, e.g.*, *In re W. R. Grace & Co.*, 389 B.R. 373, 379 (Bankr. D. Del. 2008); *In re United Cos. Fin. Corp.*, 277 B.R. at 606-07.  "[I]n most situations when considering the applicability of a class action in a bankruptcy context, . . . 'the claims of the creditors will be sufficiently disparate so that the common question of law or fact will not predominate over the individual issues raised by the claimants.'"  6 Newberg on Class Actions § 20:4 (4th ed. 2002) (quoting 7A Wright, Miller & Kane, Federal Practice & Procedure Civil 2d § 1754).  The Proposed Class Claims are no exception to this general rule.  Indeed, the court in *In re Bally I*, presented with California wage and hour class claims that are largely indistinguishable from those asserted in the Proposed Class Claim, deemed such claims unsuitable for class treatment because "the Court would have to engage in a series of highly disputed mini-trials for each class member to resolve the issues . . . making class treatment untenable and implausible."  *In re Bally I*, 402 B.R. at 622.

41.     These complications are magnified where, as here, additional scrutiny would need be placed on whether, and to what extent, such allegations by the Proposed Class result in priority status under section 507(a)(4) of the Bankruptcy Code for wages, salaries or commissions earned within 180 days prior to the Petition Date or administrative expense claims, each of which have been alleged in the Proposed Class Claims.  For example, Andrade voluntarily terminated her employment with the Debtors in December 2011, and therefore clearly would not be entitled to a priority claim under section 507(a)(4) or an administrative

expense claim, whereas other members of the Proposed Class might have been employed by the Debtors within the 180 days prior to the Petition Date or on a post-petition basis.

42.     Two decisions issued within one week of each other in 2002 by Judge Walrath further support the conclusion that class proofs of claim are inappropriate here.  *See In re United Cos. Fin. Corp.*, 277 B.R. 596; *In re Kaiser Group Int'l*, 278 B.R. 58 (Bankr. D. Del. 2002).  In *In re Kaiser Group Int'l*, Judge Walrath was asked to permit the filing of class proofs of claim and certify a securities fraud class action against the debtors.  After concluding that bankruptcy class claims were not per se barred, Judge Walrath proceeded to analyze whether the requirements of Rule 23(a) and (b) were satisfied by the putative class action.  278 B.R. at 64-67. Finding that common issues would predominate because securities fraud claims are particularly "appropriate" for class resolution, Judge Walrath allowed the class proofs of claim and certified the class.  *Id.* at 67.  Notably, unlike courts in more recent cases discussed above that have considered and rejected employment- and wage-related class proofs of claim, Judge Walrath never addressed the threshold question of whether allowing the class claims in *In re Kaiser Group Int'l* would be inconsistent with the goals of bankruptcy because of notice, lack of pre-petition certification, and the potential to delay and disrupt the bankruptcy proceedings.

43.     More importantly, Judge Walrath's finding of predominance was explicitly based on the unique characteristics of the securities fraud claims in *In re Kaiser Group Int'l.*  278 B.R. at 67.  Indeed, only one week earlier, Judge Walrath denied class claims in *In re United Cos. Fin. Corp.*, where the putative class claims were based on alleged violations of the Equal Credit Opportunity Act.  277 B.R. at 607.  Judge Walrath refused class treatment of the claims in *In re United Cos. Fin. Corp.* specifically because "individualized inquiry renders class certification inappropriate."  *Id.* at 606.  In contrast to the securities fraud claims at issue in *In re Kaiser*

*Group Int'l*, and like the consumer claims at issue in *In re United Cos. Fin. Corp.*, numerous courts have concluded that Andrade's wage claims are especially unsuited to class treatment because "individual questions of fact predominate over common questions." *Id* at 606-07; *see also In re Building Materials Holding Corp.*, Case No. 09-12074 (KJC), Transcript of October 7, 2009 Hearing, at pg. 50-51 ("As debtors' counsel pointed out with respect to this particular situation, it seems to me likely that there would be the countless mini-trials that Judge Walrath mentions in [*In re United Cos. Fin. Corp.*]…").  Likewise, courts that have more recently focused on the threshold question of whether claims like Andrade's are consistent with the goals of bankruptcy, have found they are not and refused to allow class claims on that basis, often without ever reaching the Rule 23 inquiry.

## RESERVATION OF RIGHTS

44.    The Liquidation Trustee reserves any and all rights to amend, supplement or otherwise modify this Objection or the Proposed Order and to file additional objections to the Proposed Class Claims, including, without limitation, on a substantive basis or on the basis that they are not entitled to priority or administrative expense status.  The Liquidation Trustee also reserves any and all rights, claims and defenses with respect to the Proposed Class Claims, and nothing included in or omitted from this Objection or the Proposed Order is intended or shall be deemed to impair, prejudice, waive or otherwise affect any rights, claims, or defenses of the Liquidation Trustee with respect to the Proposed Class Claims.

## NOTICE

45.    The Liquidation Trustee has provided notice of this Objection to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the GUC Trustee; (iii) all

parties that, as of the filing of this Objection, have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002; and (iv) counsel for Andrade.

## **CONCLUSION**

46.     The Andrade Action does not merit allowing class proofs of claim, where no class was certified pre-petition, all of the putative class members received actual or constructive notice of these bankruptcy proceedings and the General Bar Date, and Andrade has not sought relief from the Court to apply Rule 23 to the Proposed Class Claims.  If Andrade were to seek such relief, proceeding with the Andrade Action on a class basis would not be superior to adjudicating the individual claims in these bankruptcy proceedings, but would instead cause considerable and unjustified delay in their orderly resolution.  Moreover, the claims that Andrade seeks to adjudicate on a class-wide basis are rife with issues that would need to be decided on an individualized basis, thereby defeating predominance.

WHEREFORE, for the reasons set forth herein, the Liquidation Trustee respectfully requests that the Court (a) enter the Proposed Order, and (b) grant such other and further relief as may be just and proper.

Dated:  April 25, 2014

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert F. Poppiti, Jr.*
Robert S. Brady (No. 2847)
Robert F. Poppiti, Jr. (No. 5052)
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

Counsel for the Liquidation Trustee